No. 23-435

_____

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JESUS RAMIRO GOMEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Central District of California
Honorable James V. Selna, Judge Presiding

_____

APPELLANT'S OPENING BRIEF

_____

TODD W. BURNS
Burns & Cohan, Attorneys at Law
501 West Broadway, Suite 1510
San Diego, California 92101
Telephone: (619) 236-0244

Counsel for Jesus Ramiro Gomez

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

CUSTODY STATUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CALIFORNIA PENAL CODE §245(a)(1) IS NOT CATEGORICALLY A
"CRIME OF VIOLENCE" BECAUSE THE *MENS REA* NECESSARY TO
CONVICT FOR THAT OFFENSE IS SUBSTANTIVELY LESS
DEMANDING THAN IS REQUIRED UNDER THE FEDERAL
"ELEMENTS CLAUSE" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    II.     *Borden* – To Qualify As A "Crime Of Violence" Under The
         Federal "Elements Clause," A State Offense Must Require *At
         Least* That The Defendant Was "Aware" That There Was A
         "Practical Certainty" Physical Force Would Be Applied To
         Another. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    III.    *Williams* – To Convict For Assault Under California Penal Code
         §245(a)(1), The Prosecution Need Not Show The Defendant Had
         Any Awareness Of A Risk That Force Would Be Applied To
         Another, And A Defendant Can Be Convicted Under That Statute

i

Even If He "Honestly Believed" Force Would Not Be Applied To Another . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

IV.  Because Assault Under California Penal Code §245(a)(1) Does Not Require That A Defendant Intend, Or Be Aware To A Practical Certainty, That Force Will Be Applied To Another, It Is Not A Categorical Match To The Federal "Elements Clause" . . . .  23

V.  This Court's Post-*Borden*, Unpublished Opinion In *Man* Does Not Address Gomez's Argument, And Its Pre-*Borden* Cases Holding That Assault Under §245(a)(1) Categorically Matches The "Elements Clause" Have Been Fatally Undermined By *Borden* And *Begay* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

   A.  This Court's Unpublished Opinion In *Man* Does Not Address The Argument Raised Here, And The Case Law It Cites Has Been Fatally Undermined By *Borden* . . . . . . . . . .  28

   B.  This Court's Post-*Borden* Opinion In *Begay* Also Supports The Conclusion That Assault Under California Penal Code §245(a)(1) Does Not Qualify As A Crime Of Violence Under The Federal "Elements Clause" . . . . . . . . . . . . . . . . .  32

VI.  California Penal Code §245(a)(1) Also Does Not Qualify As An "Aggravated Offense" Under The "Enumerated Offenses Clause" In U.S.S.G. §4B.1(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

VII.  Relief Is Required Under Either The *De Novo* Or Plain-Error Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

CERTIFICATE OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  42

APPENDIX

ii

# TABLE OF AUTHORITIES

*Page*

**FEDERAL CASES**

*Borden v. United States,*
 141 S. Ct. 1817 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Castillo-Cruz v. Holder,*
 581 F.3d 1154 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Gonzales v. Duenas-Alvarez,*
 549 U.S. 183 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Henderson v. United States,*
 568 U.S. 266 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Johnson v. United States,*
 559 U.S. 133 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Leocal v. Ashcroft,*
 543 U.S. 1 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Marks v. United States,*
 430 U.S. 188 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Miller v. Gammie,*
 335 F.3d 889 (9th Cir. 2003) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . . 2, 30

*Molina-Martinez v. United States,*
 578 U.S. 189 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States v. Ameline,*
 409 F.3d 1073 (9th Cir. 2005) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . . 37

*United States v. Bailey,*
 444 U.S. 394 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Begay,*
33 F.4th 1081 (9th Cir. 2022) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Castro,*
71 F.4th 735 (9th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 36

*United States v. Crawford,*
520 F.3d 1072 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Dominguez Benitez,*
542 U.S. 74, 83 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States v. Echavarria-Escobar*
270 F.3d 1265 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Evans-Martinez,*
611 F.3d 635 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Garcia-Jimenez,*
807 F.3d 1079 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Gomez-Leon,*
545 F.3d 777 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*United States v. Gonzalez-Aparicio,*
663 F.3d 419 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Grajeda,*
581 F.3d 1186 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 36

*United States v. Hammons,*
558 F.3d 1100 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*United States v. Hernandez–Rodriguez,*
975 F.2d 622 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Houser,*
130 F.3d 867 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

iv

*United States v. Jaycox,*
    962 F.3d 1066 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39

*United States v. Joseph,*
    716 F.3d 1273 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Linehan,*
    56 F.4th 693, 705 (9th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 35

*United States v. Man,*
    2022 WL 17260489 (9th Cir. 2022) (unpublished) . . . . . . 12, 27, 28, 29, 30

*United States v. Morton,*
    2022 WL 17076203 (9th Cir. 2022) (unpublished) . . . . . . . . . . . . . . . . 28

*United States v. Olano,*
    507 U.S. 725 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*United States v. Park,*
    649 F.3d 1175 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Pineda-Doval,*
    614 F.3d 1019 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

*United States v. Schopp,*
    938 F.3d 1053 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*United States v. Tapia,*
    665 F.3d 1059 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*United States v. United States Gypsum,*
    438 U.S. 422 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Vasquez-Gonzalez,*
    901 F.3d 1060 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Walker,*
    953 F.3d 577 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Wang*,
    944 F.3d 1081 (9th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39

*Voisine v. United States*,
    579 U.S. 686 (2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

**STATE CASES**

*In re Armanda G.*,
    2005 WL 2671505 (Cal. Ct. App. 2005) (unpublished) . . . . . . . . . . . . . 27

*People v. Aznavoleh*,
    210 Cal. App. 4th 1181 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

*People v. Brugman*,
    62 Cal. App. 5th 608 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*People v. Colantuono*,
    7 Cal. 4th 206 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*People v. Flores*,
    157 Cal. App. 4th 216 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*People v. Hayes*,
    142 Cal. App. 4th 175 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*People v. Lopez*,
    2010 WL 780369 (Cal. Ct. App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 26

*People v. Park*,
    56 Cal. 4th 782 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Patzer*,
    2008 WL 4958659 (Cal. Ct. App. 2008) (unpublished) . . . . . . . . . . . . . 26

*People v. Rainville*,
    2017 WL 712603 (Cal. Ct. App. 2017) (unpublished). . . . . . . . . . . . . . 25

*People v. Starling*,
    2003 WL 22906712 (Cal. Ct. App. 2003) (unpublished) . . . . . . . . . . . . 27

*People v. Superior Ct. (Alvarez)*,
    13 Cal. 4th 968 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*People v. Williams*,
    26 Cal. 4th 779 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*People v. Yorba*,
    2008 WL 727693 (Cal. Ct. App. 2008) (unpublished) . . . . . . . . . . . . . . 26


**STATUTES**

18 U.S.C. §924(e)(2)(B)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. §1111(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 32, 33

18 U.S.C. §3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. §3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

21 U.S.C. §841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Armed Career Criminal Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10


**STATE STATUTES**

California Health and Safety Code §11351 . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

California Penal Code §245(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

ALI, Model Penal Code §2.02(2) (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**FEDERAL RULES**

Fed. R. App. P. 4(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Crim. P. 52(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

**ADVISORY GUIDELINES**

U.S.S.G. §4B1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 8

U.S.S.G. §4B1.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**MISCELLANEOUS**

Ninth Cir. Model Crim. Jury Instr. 8.108 . . . . . . . . . . . . . . . . . . . . . . . . . 33

California Criminal Jury Instruction 875 . . . . . . . . . . . . . . . . . . . . . . . . . . 24

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 23-435 |
| | ) | |
| Plaintiff-Appellee, | ) | D.C. No. 8:20-cr-0171-JVS-FWS-5 |
| | ) | Central District of California, |
| v. | ) | Santa Ana |
| | ) | |
| JESUS RAMIRO GOMEZ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

## INTRODUCTION

The district court found that Jesus Gomez is a career offender under the
Sentencing Guidelines, which doubled his advisory sentencing range. That finding
was based in part on the district court's concluding that Gomez's 2013 conviction for
assault under California Penal Code §245(a)(1) is categorically a "crime of violence"
under U.S.S.G. §4B1.2(a)(1)'s "elements clause." That conclusion was erroneous
because: (1) section 245(a)(1) does not require any showing that the defendant
subjectively intended, or was even aware of a risk, that force would be applied to
another person, indeed a conviction can lie under that statute if the defendant
"honestly believed that his act was not likely to result" in force being applied, *People
v. Williams*, 26 Cal. 4ᵗʰ 779, 788 & n.3 (2001); whereas (2) the federal "elements

clause" requires that the defendant be "aware" to a "practical certainty" that force will be applied to another. *Borden v. United States*, 141 S. Ct. 1817, 1823 (2021).

Notably, this Court's central opinion since *Borden* holds that the lowest *mens rea* for murder under 18 U.S.C. §1111(a) – "depraved heart" – qualifies under the federal "elements clause" because to establish that *mens rea* the prosecution must show a defendant acted with an "awareness of" a "*very high degree of risk* of injury to" another person. *United States v. Begay*, 33 F.4th 1081, 1093 (9th Cir. 2022) (*en banc*)(emphasis added). In one respect, this "depraved heart" *mens rea* is more stringent than what was approved in *Borden* because it requires that the prosecution show the defendant was aware of a risk of "injury to" another, not just that the defendant was aware that some force would be applied to another. Setting that aside, under *Borden* and *Begay* assault under California Penal Code §245(a)(1) doesn't qualify under the federal "elements clause" because: (1) section 245(a)(1) doesn't require a showing that the defendant was aware of *any* risk that force would be applied to another; much less (2) that he was "aware of" a "very high degree of risk" (*Begay*) or a "practical certainty" (*Borden*) that force would be applied to another.

Accordingly, this Court's prior case law holding that §245(a)(1) is a categorical match to the federal "elements clause" has been fatally undermined by *Borden* and *Begay*. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (*en banc*); *see*

*also United States v. Linehan*, 56 F.4th 693, 705 (9th Cir. 2022) (citing *Borden* and *Begay* and stating that to qualify under the elements clause "[t]he underlying offense" must have "a heightened *mens rea* – knowledge or intent, or *at the very least* extreme recklessness") (emphasis added). Furthermore, that prior case law did not address the *mens rea* thresholds set out in *Borden* or *Begay*, it instead focused on simplistic *mens rea* labels used by the California Supreme Court in *Williams*. *See, e.g., United States v. Vasquez-Gonzalez*, 901 F.3d 1060, 1067 (9th Cir. 2018) (stating that "[t]he California Supreme Court expressly rejected the conclusion that the *mens rea* for assault could be satisfied by negligent or reckless conduct") (citing *Williams*, 26 Cal. 4th at 788). As explained in detail below, those labels are based on the California legislature's understanding of mental states in 1872, which is not comparable to modern mental states set out in the Model Penal Code and relied on by the United States Supreme Court when construing the federal "elements clause." *See Borden*, 141 S. Ct. at 1823, 1826-27.

Thus it is imperative that, when conducting the categorical analysis in this case, the Court eschew reliance on *mens rea* labels and instead consider the substance of what is required to convict of assault under §245(a)(1), as explained by the California Supreme Court in *Williams*. That analysis shows, decisively, that §245(a)(1) is not a categorical match to the federal "elements clause," because the former punishes a

wider range of conduct than is encompassed in the latter. Consequently, the district court erred when it found Gomez is a career offender.

## JURISDICTION

Gomez pleaded guilty to one count of distributing 109 grams of methamphetamine. *See* 2-ER-46; CR 291; 21 U.S.C. §841(a)(1).[1] The district court asserted jurisdiction under 18 U.S.C. §3231.

On March 13, 2023, the district court imposed a 188-month custodial sentence and entered its judgment. *See* 1-ER-2-6; CR 432-33. Gomez timely filed a notice of appeal on March 17, 2023. *See* 2-ER-126; CR 435; Fed. R. App. P. 4(b)(1)(A). This Court has jurisdiction under 28 U.S.C. §1291.

## CUSTODY STATUS

Gomez is serving his 188-month custodial sentence and his projected release date is November 11, 2034.

## ISSUE PRESENTED

Whether assault under California Penal Code §245(a)(1) – which requires no showing of a subjective intent, or even awareness of a risk, that force will be applied to another – is a categorical match to the federal "elements clause," which requires,

---

[1] ER denotes the excerpts of record, CR the district court clerk's record.

at a minimum, that the defendant be "aware" that it is "practically certain," or that there is a "very high degree of risk," that force will be applied to another.[2]

## STATEMENT OF THE CASE

Gomez is one of twelve defendants charged in a forty-two count superseding indictment. *See* 2-ER-62-111. He was named in the first and eighth counts, which allege that he conspired to distribute, and distributed, more than 50 grams of methamphetamine. *See id.* at 63-67, 74. Both counts were based on Gomez's having sold 109 grams of methamphetamine to an undercover agent on October 27, 2020. *See id.* at 66, 74.

On May 20, 2022, Gomez pleaded guilty to the distribution offense charged in count 8. *See* 2-ER-46; CR 291.

On August 1, 2022, the probation officer filed a report asserting that Gomez is a career offender under U.S.S.G. §4B1.1. *See* Presentence Report (PSR) ¶40 (CR 340).[3] The career offender provision substantially increases a defendant's advisory sentencing range if: (1) he was eighteen years or older at the time of the instant offense; (2) the instant offense is a felony "crime of violence" or a "controlled

---

[2]    In light of the issue presented, the Appendix has copies of California Penal Code §245 and U.S.S.G. §§4B1.1 and 4B1.2.

[3]    The initial PSR was filed on August 1, 2022 (CR 340), and a revised version, with minor changes not relevant here, was filed on December 14, 2022 (CR 392). The revised version will be filed under seal with this Court.

substance offense;" and (3) he has at least two prior felony convictions of either a "crime of violence" or a "controlled substance offense." *See* U.S.S.G. §4B1.1(a). Gomez does not dispute that his "instant offense" (for distributing methamphetamine) is a controlled substance offense. Nor does he dispute that his August 6, 2015 conviction for possessing cocaine for sale under California Health and Safety Code §11351 qualifies as a predicate "controlled substance offense." PSR ¶40(b); U.S.S.G. §4B1.2(b).

Gomez does, however, dispute that the other predicate conviction the PSR relied on to find he is a career offender is a "crime of violence." That February 15, 2013 conviction was for assault with a deadly weapon under California Penal Code §245(a)(1), which was based on the then-eighteen-year-old Gomez interceding in a fight to protect a friend who was being beaten by another man. *See* 2-ER-40-41; PSR ¶49. The Guidelines define "crime of violence" as follows:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. §5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. §4B1.2. The definition in subsection (a)(1) is called the "elements clause," subsection (a)(2) is called the "enumerated offenses clause." The PSR did not say on which subsection it relied, but the government argued that Gomez's 2013 assault conviction qualifies as a predicate under §4B1.2(a)(1)'s "elements clause." 2-ER-20 (citing "elements clause" cases).

The district court agreed. *See* 1-ER-8. As a consequence, it found that Gomez's Guidelines offense level rose from 30 to 37. *See id.*; *see also* PSR ¶¶40-41; U.S.S.G. §4B1.1. Taking into account a three-level downward adjustment for acceptance of responsibility, that seven-level upward swing more-than-doubled Gomez's Guidelines range, raising it from 130-162 months to 262-327 months. *See* 1-ER-8-9.

After finding that range applied, the court considered the other 18 U.S.C. §3553(a) sentencing factors and varied downward, imposing a sentence of 188 months. *See* 1-ER-8-11; 2-ER-112-20.

## SUMMARY OF ARGUMENT

Assault under California Penal Code §245(a)(1) is not a categorical match to the federal "elements clause" because: (1) section 245(a)(1) requires no showing of a subjective intent, or even awareness of a risk, that force will be applied to another; whereas (2) the federal "elements clause" requires that the defendant be "aware" that it is "practically certain," or that there is a "very high degree of risk," that force will

7

be applied to another. Accordingly, Gomez's 2013 conviction for assault under §245(a)(1) does not qualify as a "crime of violence" under the Guidelines' "career offender" provision, *see* U.S.S.G. §§4B1.1 and 4B1.2(a)(1), and the district court erred when it applied that provision and doubled Gomez's Guidelines range.

## STANDARD OF REVIEW

This Court generally reviews *de novo* a district court's "interpretation of the Sentencing Guidelines and its determination that a defendant qualifies as a career offender" under U.S.S.G. §4B1.1. *United States v. Crawford*, 520 F.3d 1072, 1077 (9th Cir. 2008). Gomez failed to object to the district court's finding that his California assault conviction qualified as a career offender predicate, however, and failing to object normally results in plain-error review. *See United States v. Joseph*, 716 F.3d 1273, 1276 (9th Cir. 2013). But when an "'appeal presents a pure question of law and there is no prejudice to the opposing party' that resulted from a defendant's failure to object," this Court may apply *de novo* review. *Id.* at 1276 n.4 (quoting *United States v. Gonzalez-Aparicio*, 663 F.3d 419, 426 (9th Cir. 2011)).

Here, the issue presented is purely legal and "the government is not prejudiced by [the] requirement that the district court correctly calculate the Guidelines sentencing range before it imposes a sentence." *United States v. Evans-Martinez*, 611 F.3d 635, 642 (9th Cir. 2010). Accordingly, this Court should apply *de novo* review. *See also United States v. Echavarria-Escobar*, 270 F.3d 1265, 1267-68 (9th Cir. 2001)

(applying *de novo* review to "a district court's construction and interpretation of the Sentencing Guidelines," though no objection was made in the district court). But even if the Court applies plain-error review, relief is warranted.

**CALIFORNIA PENAL CODE §245(a)(1) IS NOT CATEGORICALLY A "CRIME OF VIOLENCE" BECAUSE THE *MENS REA* NECESSARY TO CONVICT FOR THAT OFFENSE IS SUBSTANTIVELY LESS DEMANDING THAN IS REQUIRED UNDER THE FEDERAL "ELEMENTS CLAUSE"**

## I.    Introduction

As mentioned, in 2013 Gomez was convicted under California Penal Code §245(a)(1), which states:

> Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment.

California calls this a "wobbler" offense, meaning it can be punished as a misdemeanor or a felony; Gomez's conviction was punished as a felony. *See* PSR ¶49.

Under California law, "assault" is defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Penal Code §240. Thus, assault is considered an "incipient or inchoate battery; a battery is a consummated assault." *People v. Williams*, 26 Cal. 4ᵗʰ 779 (2001). To convict for assault, the prosecution must show, *inter alia*, that the defendant had

"actual knowledge of the facts sufficient to establish that the defendant's act by its nature will probably and directly result in injury to another." *Id.* at 784. "He, however, *need not be subjectively aware of the risk* that a battery might occur." *Id.* at 787 (emphasis added).

The question here is whether that level of intent is sufficient to render §245(a)(1) a "crime of violence" under U.S.S.G. §4B1.2(a)(1)'s "elements clause."[4] To answer that question, courts apply the categorical approach. *See United States v. Castro*, 71 F.4th 735, 738 (9th Cir. 2023). "Under that by-now familiar method, applicable in several statutory contexts, the facts of a given case are irrelevant. The focus is instead on whether the elements of the statute of conviction meet the federal standard. Here, that means asking whether [an offense under California Penal Code §245(a)(1)] necessarily involves the defendant's 'use, attempted use, or threatened use of physical force against the person of another.'" *Borden v. United States*, 141 S. Ct. 1817, 1822 (2021) (quoting the "elements clause" in 18 U.S.C. §924(e)(2)(B)(i), which applies under the Armed Career Criminal Act). "If any – even the least culpable – of the acts criminalized" by §245(a)(1) "do not entail [the]

---

[4]     As mentioned above, U.S.S.G. §4B1.2(a)'s definition of "crime of violence" also includes an "enumerated offenses clause," and one of those is "aggravated assault." In the district court, the government didn't rely on the "aggravated assault" definition of "crime of violence," nor is there any indication the district court applied it. At any rate, as explained in Section VI  below, assault under California Penal Code §245(a)(1) doesn't qualify as an "aggravated assault" under U.S.S.G. §4B1.2(a)(2)'s "enumerated offenses clause."

kind of force" necessary to qualify under the Guidelines' "elements clause," then §245(a)(1) "does not categorically match the federal standard, and so cannot serve as" a career offender predicate.[5] *Id.* at 1822.

As will be explained below, there is not a categorical match here because: (1) in *Borden*, the Supreme Court held that under the "elements clause," a predicate offense must require "not only a substantial degree of force, but also a purposeful or knowing mental state – a deliberate choice of wreaking harm on another, *rather than mere indifference to risk,*" *id.* at 1830 (emphasis added); but (2) assault under California Penal Code §245(a)(1) doesn't require that the defendant intended that force be applied to another, or even that he was "aware of the risk that" force might be applied. *Williams*, 26 Cal. 4th at 787. These points, and others, are addressed below, as follows.

First, Gomez discusses the Supreme Court's opinion in *Borden*, which, for the first time, clearly defined the level of intent required with respect to use of force under the "elements clause."

---

[5] Though sometimes the terms it defines vary slightly (*e.g.*, "crime of violence," "violent felony"), the "elements clause" appears in several criminal statutes and the Guidelines in language that is identical, or nearly identical. Consequently, case law across those contexts is interchangeable, and is cited as such throughout this brief. *See, e.g., Borden*, 141 S. Ct. at 1824; *United States v. Walker*, 953 F.3d 577, 579 (9th Cir. 2020); *United States v. Park*, 649 F.3d 1175, 1177 (9th Cir. 2011).

Second, Gomez discusses the California Supreme Court's opinion in *Williams*, that court's most recent opinion explaining the level of intent necessary to convict for assault under California Penal Code §245(a)(1), and the touchstone of this Court's prior categorical analyses with respect to assault under §245. *See, e.g., United States v. Vasquez-Gonzalez*, 901 F.3d 1060, 1067 (9th Cir. 2018).

Third, Gomez relies on *Borden* and *Williams* to explain why the *mens rea* requirement with respect to the use of force under §245(a)(1) is not a categorical match to the level of intent required under the federal "elements clause." He also summarizes California cases in which courts have upheld §245(a) convictions based on a *mens rea* showing lower than is required under the "elements clause."

Fourth, Gomez discusses this Court's post-*Borden*, unpublished opinion in *United States v. Man*, 2022 WL 17260489 (9th Cir. 2022) (unpublished). That opinion is not even persuasive because it doesn't address Gomez's argument here, which focuses on the actual *mens rea* requirements explicated in *Williams* and *Borden*, and this Court's *en banc* opinion in *Begay*, rather than relying on simplistic *mens rea* labels like "recklessness." Gomez also explains why this Court's pre-*Borden* case law holding that §245(a)(1) is a categorical match to the "elements clause" has been fatally undermined by *Borden* and *Begay*.

Finally, Gomez explains why relief is warranted here, even if the Court applies plain-error review.

**II.** ***Borden* – To Qualify As A "Crime Of Violence" Under The Federal "Elements Clause," A State Offense Must Require *At Least* That The Defendant Was "Aware" That There Was A "Practical Certainty" Physical Force Would Be Applied To Another**

As mentioned, *Borden* addressed the *mens rea* for the "elements clause," which requires that an offense "has as an element the use, attempted use, or threatened use of physical force against the person of another."  In the controlling plurality opinion in *Borden*, the Supreme Court framed the question presented as "whether a criminal offense" can qualify under the elements clause "if it requires only a *mens rea* of recklessness – a less culpable mental state than purpose or knowledge."[6] *Borden*, 141 S. Ct. at 1821-22.  The Court held that a "reckless offense cannot so qualify," thus a Tennessee statute that prohibits "reckless aggravated assault" doesn't qualify.  *Id.* There are two key, and related, aspects to *Borden*.

First, the Court held that "'use of force' denotes volitional conduct.  And the [definition's] pairing of volitional action with the word 'against' supports that word's oppositional, or targeted, definition."  *Id.* at 1826.  Thus, "[t]he phrase 'against

---

[6]     Justice Thomas concurred in the judgment but concluded that the "elements clause" requires a showing of an "intentional act[] designed to cause harm."  *Id*. at 1835 (Thomas, J., concurring) (quoting *Voisine v. United States*, 579 U.S. 686, 713 (2016) (Thomas, J., dissenting)).  That is a more elevated *mens rea* than required by the plurality opinion in *Borden*, thus the plurality opinion is binding as the "logical subset of Justice Thomas's concurrence."  *United States v. Begay*, 33 F.4th 1081, 1100 n.2 (9th Cir. 2022) (*en banc*) (Ikuta, J., dissenting); *see also Marks v. United States*, 430 U.S. 188 (1977).

another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." *Id.* at 1825. The Court emphasized that this "*mens rea* requirement . . . does not come from the word 'use.' It instead comes from [the] modifying language . . . 'against the person of another.' That phrase . . . is not window dressing: It is the 'critical' text for deciding the level of *mens rea* needed. . . . As we have explained, 'against the person of another,' when modifying the 'use of physical force,' introduces that action's conscious object." *Id.* at 1833 (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004)).

That leads to the second key aspect of *Borden*. The Court's conclusion that the force involved must have been targeted led to its determination of the requisite *mens rea* for the "elements clause." That is, the Court didn't just say that recklessness is not enough, it said what *is* required. Specifically, it said that "[t]he 'against' phrase indeed sets out a mens rea requirement – of purposeful or knowing conduct." *Id.* at 1828. Later in the opinion, the court reiterated this point, stating that offenses that qualify under the federal elements clause "are best understood to involve not only a substantial degree of force, but also a purposeful or knowing mental state – a deliberate choice of wreaking harm on another, rather than mere indifference to risk." *Id.* at 1830.

The Court also explained what it meant by purposeful or knowing, using the definitions of those terms in the Model Penal Code. *See id.* at 1823-24, 1826-27;

*see also Voisine v. United States*, 579 U.S. 686, 691-92 (2016) (relying on Model Penal Code definitions to nail-down categorical analysis). The Court began its opinion by describing those mental states:

> Purpose and knowledge are the most culpable levels in the criminal law's mental-state "hierarchy." *United States v. Bailey*, 444 U.S. 394, 404 (1980). A person acts purposefully when he "consciously desires" a particular result. *Ibid.* (internal quotation marks omitted); *see* ALI, Model Penal Code §2.02(2)(a) (1985). He acts knowingly when "he is aware that [a] result is practically certain to follow from his conduct," whatever his affirmative desire. *Bailey*, 444 U.S., at 404 (internal quotation marks omitted); *see* Model Penal Code § 2.02(2)(b)(ii). We have characterized the distinction between the two as "limited," explaining that it "has not been considered important" for many crimes.[7] *Bailey*, 444 U.S. at 404 (internal quotation marks omitted); *see* Model Penal Code, Comment 2, pp. 233-234 (calling the distinction "narrow" and often "inconsequential"). A person who injures another knowingly, even though not affirmatively wanting the result, still makes a deliberate choice with full awareness of consequent harm. *See Bailey*, 444 U.S. at 403-404.

*Borden*, 141 S. Ct. at 1823.

After it announced its holding with respect to the requisite *mens rea* for the "elements clause," the Court came back to the purposeful and knowing mental states and explained what the federal "elements clause" requires in some hypothetical situations:

---

[7] The Court explained that the difference between purpose and knowledge may matter, for example, with respect to inchoate crimes like conspiracy, attempt, or aiding and abetting. *See Borden*, 141 S. Ct. at 1823 n.3.

15

> Purposeful conduct is obvious. Suppose a person drives his car straight at a reviled neighbor, desiring to hit him. The driver has, in the statute's words, "use[d] . . . physical force against the person of another." The same holds true for knowing behavior. Say a getaway driver sees a pedestrian in his path but plows ahead anyway, knowing the car will run him over. That driver, too, fits within the statute: Although he would prefer a clear road, he too drives his car straight at a known victim. Or said otherwise, both drivers (even though for different reasons) have consciously deployed the full force of an automobile at another person. *See United States v. United States Gypsum*, 438 U.S. 422, 445 (1978) (explaining that the law thus views both as "intend[ing]" the result).

*Borden*, 141 S. Ct. at 1826-27. Blending this language with the language in the previous block quote, the getaway car driver is said to have acted "knowingly" because "he is *aware* that [a] result is *practically certain to follow from his conduct*," *id.* at 1823, even if he doesn't desire that result (*i.e.*, it's not his "purpose"), and would actually "prefer a clear road."

To crystallize the *mens rea* required under the "elements clause," it is also useful to consider what the Court said is not enough, again keying in on mental states defined in the Model Penal Code. Specifically, building off its sentence that the drivers in the purposeful and knowingly hypotheticals discussed above both "consciously deployed the full force of an automobile at another person," the Court said:

> But that is not so of a reckless (or a negligent) actor. Imagine a commuter who, late to work, decides to run a red light, and hits a pedestrian whom he did not see. The commuter has consciously disregarded a real risk, thus endangering others.

16

*Borden*, 141 S. Ct. at 1827. To emphasize, even consciously disregarding a "real risk" that physical force will be applied to another is not enough to satisfy the "elements clause."

To sum up, under *Borden*, to satisfy the "elements clause" a state offense must categorically require that the defendant act with *at least* an *awareness* that his conduct is *practically certain* to result in force being applied to another. As discussed next, assault under California Penal Code §245(a)(1) doesn't require awareness of a risk that force will be applied to a person, much less awareness of a practical certainty that force will be applied.

## III. *Williams* – To Convict For Assault Under California Penal Code §245(a)(1), The Prosecution Need Not Show The Defendant Had Any Awareness Of A Risk That Force Would Be Applied To Another, And A Defendant Can Be Convicted Under That Statute Even If He "Honestly Believed" Force Would Not Be Applied To Another

In *Williams*, the defendant was convicted of assault with a firearm under California Penal Code §245,[8] based on his firing a "warning shot" at the truck of a man with whom he had a domestic dispute, Gregory King. 26 Cal. 4th at 782-83. Although Williams testified that he didn't intend to hit King when he fired his shotgun, he admitted that "King's truck was parked between him and King, and that

---

[8]     Although the defendant in *Williams* was convicted for assault with a firearm, the discussion and holding in that case applies equally to the *mens rea* for the use of force under §245(a)(1).

he saw King crouched approximately a foot and a half away from the rear fender well of the truck." *Id.* Williams "did not hit King," but "he did hit the rear tire of King's truck. The shotgun pellets also left marks on the truck's rear wheel well, its undercarriage, and its gas tank." *Id.* at 783.

The trial court instructed the jurors that to convict Williams they had to find he "willfully and unlawfully committed an act that by its nature would probably and directly result in the application of physical force on another person." *Id.* The Court of Appeal reversed, finding that the instruction allowed the jury to convict if "under an objective view of the facts . . . an application of force on another person was reasonably foreseeable." *Id.* at 784. The Court of Appeal held that assault instead "requires either a *desire to cause* an application of physical force *or substantial certainty* that such an application would result." *Id.* at 784 (emphasis added). Notably, that is close to what *Borden* held is required under the federal "elements clause," the difference being that *Borden* held that at a minimum a defendant must be "practically certain" that force would be applied to a person, 141 S. Ct. at 1823, rather than "substantially certain."

The California Supreme Court reversed, holding that assault requires only a showing of "actual knowledge of the facts sufficient to establish that the defendant's act by its nature will probably and directly result in injury to another." *Id.* at 784.

18

Before saying more about that holding, there are three things to note about how the California Supreme Court got there.

First, the court said that "since its initial enactment in 1872," the California assault statute "had define[d] assault as 'an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another," and "[o]ver the decades, [the court had] struggled to fit this 1872 definition of assault into our constantly evolving framework of criminal mental states." *Id.* at 784; *see also United States v. Grajeda*, 581 F.3d 1186, 1193 (9th Cir. 2009) ("[t]he mens rea required for assault under California law has been the subject of a long, tortured, and ongoing set of explanations in the California courts"). In light of this, and as discussed further below, when courts apply the categorical approach they should be wary of simple comparisons between *mens rea* labels required under federal law (which, in the categorical approach context, the Supreme Court usually pegs to the Model Penal Code) and *mens rea* labels the California courts apply to §245, because the California labels are not necessarily consistent with more modern *mens rea* labels. This Court should, therefore, eschew reliance on labels and instead look closely at how *Williams* describes the necessary *mens rea* for assault under §245(a).

Second, in defining the *mens rea* necessary to convict for assault under §245(a), the court in *Williams* (a) noted that assault has long been characterized as an attempted battery, and (b) considered three potential meanings of "attempt" that the

California legislature could have had in mind when it enacted the statutory language in 1872. The court settled on a definition that requires "an intent to commit some act which would be indictable, if done, either from its own character or that of its natural and probable consequences." *Id.* at 785-86, 787. The court then noted that this "definition requires only an intent to commit the act – and not a specific intent to obtain some further objective – and focuses on the objective nature of that act." *Id.* at 786.

Third, the court stated that while an assault is considered an attempted battery, and attempts are usually "specific intent" offenses, assault under §245(a) is not that kind of "attempt" offense. The court explained:

> [C]riminal attempt and assault require different mental states. Because the act constituting a criminal attempt "need not be the last proximate or ultimate step toward commission of the substantive crime," criminal attempt has always required "a specific intent to commit the crime." [Citation omitted.] In contrast, the crime of assault has always focused on the nature of the act and not on the perpetrator's specific intent. An assault occurs whenever "'[t]he next movement would, at least to all appearance, complete the battery.'" [Citation omitted.] Thus, assault "lies on a definitional . . . continuum of conduct that describes its essential relation to battery: An assault is an incipient or inchoate battery; a battery is a consummated assault." [Citation omitted.] As a result, a specific intent to injure is not an element of assault because the assaultive act, by its nature, subsumes such an intent.

*Williams*, 26 Cal. 4th at 786.

Based on this reasoning, the court in *Williams* held that to commit an assault under §245, a defendant (a) must intend to do an act that if "completed" would be a

battery, but (b) the prosecution need not show the defendant had any intent, or knowledge of risk, that force would be applied to another person – the nature of the intentional act stands in for *any* showing of intent with respect to the application of force. *See also id.* at 785 ("[t]he pivotal question is whether the defendant intended to commit an act likely to result in such physical force, *not whether he or she intended a specific harm*") (quoting *People v. Colantuono*, 7 Cal. 4th 206, 218 (1994) (emphasis added)). The court in *Williams* went on to explain:

> Based on the 1872 definition of attempt, a defendant is only guilty of assault if he intends to commit an act "which would be indictable [as a battery], if done, either from its own character or that of its natural and probable consequences." [Citation omitted.] Logically, a defendant cannot have such an intent unless he actually knows those facts sufficient to establish that his act by its nature will probably and directly result in physical force being applied to another, i.e., a battery. [Citation omitted.] In other words, a defendant guilty of assault must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct. *He may not be convicted based on facts he did not know but should have known. He, however, need not be subjectively aware of the risk that a battery might occur.*

*Williams*, 26 Cal. 4th at 787-88 (emphasis added). The court then gave an example of its holding in action:

> [A] defendant who *honestly believes that his act was not likely to result in a battery is still guilty of assault* if a reasonable person, viewing the facts known to defendant, would find that the act would directly, naturally and probably result in a battery.

*Id.* at 788 n.3 (emphasis added).

21

Before turning to comparing what is required under *Borden* versus what suffices under *Williams* – the categorical analysis – there is a final point that bears making. As mentioned above, given that *Williams* was construing the *mens rea* required for assault under §245 by looking to what the California legislature intended in 1872, and how *mens rea* concepts were viewed at that time, it is perilous to rely on one-word *mens rea* labels when doing the categorical analysis required here. The following excerpt from *Williams* invites the unwary into that pitfall:

> Likewise, mere recklessness or criminal negligence is still not enough . . . because a jury cannot find a defendant guilty of assault based on facts he should have known but did not know . . . .

*Williams*, 26 Cal. 4th at 788. This statement came toward the end of *Williams*, and thus cannot be read to render irrelevant all that came before it with respect to the *mens rea* required to convict under §245. Furthermore, when it said this the court in *Williams*: (1) noted that the statement was based on case law reaching back to at least 1951, which in turn "relied on even older case law;" and (2) explained that it was referring to "'recklessness' in its historical sense as a synonym for criminal negligence, rather than its more modern conception as a subjective appreciation of the risk of harm to another." *Id.* at 788 n.4; *see also People v. Brugman*, 62 Cal. App. 5th 608, 622-23 (2021) (recognizing the archaic use of "recklessness" in *Williams*, as a "synonym for criminal negligence"); *People v. Aznavoleh*, 210 Cal. App. 4th 1181, 1189 n.4 (2013) (same).

Accordingly, when conducting the categorical analysis here, the Court should eschew resort to *mens rea* labels and instead compare the substance of (a) the *mens rea* for the use force under *Borden*, versus (b) what *Williams* makes clear will suffice to convict under §245(a)(1).

## IV. Because Assault Under California Penal Code §245(a)(1) Does Not Require That A Defendant Intend, Or Be Aware To A Practical Certainty, That Force Will Be Applied To Another, It Is Not A Categorical Match To The Federal "Elements Clause"

In light of what has already been said, it is obvious that assault under California Penal Code §245(a)(1) is not categorically encompassed within the federal "elements clause." Put simply: (1) under *Borden*, the federal "elements clause" requires a showing, at least, that the defendant was "aware" to a "practical certainty" that force would be applied to a person; whereas (2) California Penal Code §245(a)(1) doesn't require any showing with respect to the defendant's awareness of a risk that force would be applied to another – indeed, a person can be convicted under that statute even if he "*honestly believe[d]* that his act was not likely to" result in force being applied to another. *Williams*, 26 Cal. 4th at 788 n.3 (emphasis added). Put simply, the federal "elements clause" requires an elevated showing of intent – or awareness – with respect to whether force would be applied, California Penal Code §245(a)(1) requires no showing in that regard.

23

That should be the end of the matter. However, when applying the categorical approach in the "enumerated offenses clause" context – rather than the "elements clause" context – courts are "require[d to find there is] a realistic probability, not a theoretical possibility, that the state would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). It is not clear if that command applies here because the California Supreme Court has defined the intent that is required under §245, and California's model jury instructions are in accord. *See, e.g., Johnson v. United States*, 559 U.S. 133, 138 (2010) ("we are . . . bound by the [state] Supreme Court's interpretation of state law"); *United States v. Vasquez-Gonzalez*, 901 F.3d 1060, 1067 n.6 (9th Cir. 2018) (same); California Criminal Jury Instruction (CALCRIM) 875; *People v. Flores*, 157 Cal. App. 4th 216 (2007) (approving CALCRIM 875). At any rate, California case law is replete with examples of convictions being affirmed based on proof of a lesser intent than is required by *Borden*.

For example, in *People v. Aznavoleh*, the defendant intentionally ran a red light. 210 Cal. App. 4th 1181, 1183 (2013). His conviction under §245(a)(1) was upheld because even if he did not intend to hurt anyone, and was not even "subjectively aware of the prospect of such a consequence," a "reasonable person" would have recognized that the defendant's intentional act would likely result in harm to another. *Id.* at 1189-90. In *Borden*, the Supreme Court cited exactly that sort of

24

conduct as an example of what cannot qualify under the "elements clause." 141 S. Ct. at 1827 (giving example of "a commuter who, late to work, decides to run a red light, and hits a pedestrian whom he did not see").

Similarly, in *People v. Rainville*, 2017 WL 712603, *1 (Cal. Ct. App. 2017) (unpublished),[9] the defendant drove through her neighbor's backyard while severely intoxicated but nobody was injured. The court held that to convict for assault under §245(a)(1), the prosecution was not required to show the defendant was aware that her intentional conduct placed another in harm's way because "[t]he crime does not require any intent to cause an application of physical force to another person, *or a substantial certainty* that an application of force will result. . . . Nor does assault require a *subjective awareness of the risk* that an injury might occur." *Id.* at *3 (emphasis added).

As another example, a defendant was convicted of violating §245(a) when he drove a Jeep with a trailer in a holiday parade at approximately 8 to 10 miles per hour, he was told to turn right by a police officer, he instead drove at the officer, and the officer responded by jumping out of the way and then grabbing onto the Jeep. *See*

---

[9]     When determining the scope of conduct criminalized by a California statute under the categorical approach, federal courts consider unpublished California court decisions. *See Castillo-Cruz v. Holder*, 581 F.3d 1154, 1161 n.9 (9th Cir. 2009).

*People v. Patzer*, 2008 WL 4958659, *1-2 (Cal. Ct. App. 2008) (unpublished).[10] The trial court instructed the jury to apply a "reasonable person" standard with regard to whether the defendant's actions were likely to result in the application of physical force to another. *See id.* at *2. The appellate court affirmed, concluding that "[t]he jury's function was to decide whether a reasonable person in defendant's situation would realize that the act by its nature might result in the application of force to someone. *Even if defendant might not have realized the risk of battery*, the jury found that a reasonable person would have." *Id.* at *5 (emphasis added).

Consistent with *Williams* and the model jury instructions, there are countless other examples in which the prosecution was not required to, and did not, show that the defendant knowingly or purposefully used physical force against the person of another, as those terms are used in *Borden*.[11]

---

[10]    The defendant in *Patzer* was convicted of a misdemeanor. As mentioned above, section 245(a) is a "wobbler" under California law, meaning it can be punished as either a misdemeanor or a felony. *See People v. Park*, 56 Cal. 4th 782, 790 (2013). The elements, however, remain the same. *See People v. Superior Ct. (Alvarez)*, 14 Cal. 4th 968, 975-76 (1997).

[11]    *See, e.g., People v. Lopez*, 2010 WL 780369, *5 (Cal. Ct. App. 2010) (evidence that a driver "was weaving his truck to avoid hitting [a tire deflation device] and did not intend to run over or frighten [the victim]," was "irrelevant to the objective determination of whether a reasonable person would realize that the act by its nature would directly and probably result in the application of force"); *People v. Yorba*, 2008 WL 727693 (Cal. Ct. App. 2008) (unpublished) (finding that speeding through a red light during a police chase constituted assault under §245(a)(1)); *People v. Hayes*, 142 Cal. App. 4th 175 (2006) (upholding an assault conviction where the

**V.** **This Court's Post-*Borden*, Unpublished Opinion In *Man* Does Not Address Gomez's Argument, And Its Pre-*Borden* Cases Holding That Assault Under §245(a)(1) Categorically Matches The "Elements Clause" Have Been Fatally Undermined By *Borden* And *Begay***

In the district court, the government relied on *United States v. Man*, 2022 WL 17260489 (9ᵗʰ Cir. 2022) (unpublished), to support its assertion that §245(a)(1) is categorically a crime of violence under the federal "elements clause." In addition to that opinion being non-binding on this panel, it is unpersuasive because it did not address Gomez's argument. And a review of *Man*, and the pre-*Borden* case law it cites, shows that *Borden* and this Court's *en banc* opinion in *Begay* have fatally undermined this Court's earlier case law holding that assault under §245(a)(1) is a categorical match to the federal "elements clause."

Below, Gomez first discusses *Man* and the pre-*Borden* Ninth Circuit case law it cites. Then he discusses this Court's *en banc* opinion in *Begay*.

---

defendant, in resisting arrest, kicked a large ashtray that fell on the arresting officer); *In re Armanda G.*, 2005 WL 2671505 (Cal. Ct. App. 2005) (unpublished) (determining that a minor who was shooting a BB gun at a tree in the dark in a place where he knew others were around committed an assault under §245(a)); *People v. Starling*, 2003 WL 22906712, *7 (Cal. Ct. App. 2003) (unpublished) ("trying to drive a pickup truck at 30 to 34 miles per hour, downhill, at night, through a nine-foot gap between a car and the curb . . . would lead a reasonable person to realize Starling would collide with one of the patrol cars as a result of his conduct").

27

### A. This Court's Unpublished Opinion In *Man* Does Not Address The Argument Raised Here, And The Case Law It Cites Has Been Fatally Undermined By *Borden*

In *Man*, 2022 WL 17260489, *1, this Court noted that it had previously "held that assaults under sections 245(a)(1) and 245(a)(2) of the California Penal Code are categorically 'crimes of violence,' as that term is used in the United States Sentencing Guidelines ('U.S.S.G.')." The Court then addressed Man's argument that its case law had been fatally undermined because §245(a) "requires only a mens rea of recklessness," but *Borden* holds that recklessness does not suffice under the federal "elements clause." *Id.* The Court rejected that argument, stating that "we have previously held that section 245 offenses are crimes of violence – and thus, violent felonies – precisely because the statute requires a mens rea greater than recklessness." *Id.* For this, the Court cited *Vasquez-Gonzalez*, which stated that "[t]he California Supreme Court expressly rejected the conclusion that the mens rea for assault could be satisfied by negligent or reckless conduct."[12] 901 F.3d at 1067 (citing *Williams*, 26 Cal. 4th at 788).

*Man* is not persuasive because it doesn't address Gomez's argument here, which focuses on the substantive descriptions of the requisite *mens rea* in *Borden* and

---

[12] Incidentally, in *United States v. Morton*, 2022 WL 17076203 (9th Cir. 2022) (unpublished), the Court used language identical to that quoted from *Man*.

*Williams*. Furthermore, none of this Court's case law precludes a three-judge panel from holding – correctly, in light of *Borden* – that California Penal Code §245(a)(1) is not a categorical match to the federal "elements clause." Those points are addressed below.

First, Gomez is not making Man's simplistic argument that (a) the federal "elements clause" requires more than recklessness, and (b) section 245(a)(1) requires only recklessness. As explained above, Gomez eschews reliance on one-word labels such as "recklessness" because they can mean different things in different contexts, and when used by different courts, especially after the passage of 150 years since the language of §245 was enacted. Gomez instead focuses on the substantive *mens rea* in both contexts, as explained at length by the courts in *Williams* and *Borden*. And, as shown above, that in-depth analysis makes clear that there is not a categorical match.

Second, none of this Court's case law precludes a three-judge panel from announcing that holding. And to the extent that the summary conclusion stated in *Man* could be read to suggest otherwise, that is incorrect. That is apparent when one considers this Court's opinion in *Vasquez-Gonzalez*, which was cited by the panel in *Man* and is this Court's last pre-*Borden* treatment of the issue presented here.[13]

---

[13]    The Court in *Vasquez-Gonzalez* also cited the same case law that was string-cited in *Man*. *Compare Man*, 2022 WL 17260489, *1, *with Vasquez-Gonzalez*, 901 F.3d at 1067. This supports that the key case with respect to this Court's pre-*Borden*

In *Vasquez-Gonzalez*, the Court began by noting that it had previously held that assault under California Penal Code §245(a) qualifies as a crime of violence under the federal "elements clause," but intervening case law required it to "revisit the question to determine whether [its] past holdings [were] still valid." 901 F.3d at 1066. The Court held that its prior holdings were still valid, but there are several things to note about *Vasquez-Gonzalez* that show that (a) the Court in that case didn't do a categorical analysis based on the *mens rea* threshold subsequently found by *Borden* in 2021, and (b) its bottom-line holding has been fatally undermined by *Borden*, and thus is no longer binding on a three-judge panel of this Court. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (*en banc*).

First, in *Vasquez-Gonzalez* the defendant "argue[d] that the *mens rea* requirements for [section 245(a) and the federal elements clause] are not a categorical match" because the federal elements clause "requires an intentional use of force and the California statute can be satisfied by unintentional conduct." 901 F.3d at 1066. The Court expanded on this, stating that "Vasquez argues that §245(a)(1) can be satisfied by negligent, and therefore unintentional, conduct." *Id.* at 1067. That is not Gomez's argument. Instead, as already explained, he eschews simple labels and focuses on the *mens rea* requirements as explained in *Williams* and *Borden*.

---

treatment of the issue presented here is *Vasquez-Gonzalez*, which effectively superseded the other cases cited in *Man*.

30

Second, and relatedly, in rejecting Gomez's "unintentional conduct"/"negligence" argument, the Court in *Vasquez-Gonzalez* did not in any way address the *mens rea* later described in detail in *Borden*. Instead, the Court in *Vasquez-Gonzalez* said:

> Section 245(a)(1) is an assault statute, and the Supreme Court of California has expressly stated that the mens rea for assault in California requires more than negligent conduct. *People v. Williams*, 26 Cal. 4th 779, 788 (2001) ("mere recklessness or criminal negligence is still not enough"). Instead, assault in California requires an intent to commit a battery. *Id*. at 787 (A "defendant is only guilty of assault if he intends to commit an act which would be indictable as a battery . . . ." (internal quotation marks and alterations omitted)).

*Vasquez-Gonzalez*, 901 F.3d at 1067. The court reiterated this point later, citing the same portion of *Williams* and stating, "As explained above, however, the California Supreme Court expressly rejected the conclusion that the *mens rea* for assault could be satisfied by negligent or reckless conduct." *Id.* (citing *Williams*, 26 Cal. 4th at 788). Again, Gomez's argument does not focus on these labels, it focuses on the substantive *mens rea* descriptions in *Borden* and *Williams*.

Finally, the Court in *Vasquez-Gonzalez* said, "The essential question is whether assault in California can be committed accidently or whether it requires an intentional use of force. As defined in California, assault 'requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another.'" *Id.* at 1068

31

(citing *Williams*, 26 Cal. 4th at 788). There is no doubt that *Williams* said that the conduct involved must have been intentional, and, of course, it must have been forceful in nature, meaning that if it was "completed" – or applied to a person – it would amount to a battery. But that doesn't address the key difference between assault under §245, as explicated in *Williams*, and the "elements clause," as explicated in *Borden*: the former doesn't require any showing of the defendant's subjective awareness of a risk that force will be applied; the latter requires that the defendant be aware that there is a "practical certainty" that force will be applied. That distinction turns on the "against the person of another" language in the "elements clause," which has no parallel in §245(a)(1).

**B.** **This Court's Post-*Borden* Opinion In *Begay* Also Supports The Conclusion That Assault Under California Penal Code §245(a)(1) Does Not Qualify As A Crime Of Violence Under The Federal "Elements Clause"**

This Court's post-*Borden en banc* opinion in *Begay* also supports that assault under California Penal Code §245(a) does not qualify as a "crime of violence" under the federal "elements clause."

In *Begay*, the defendant argued that second degree murder, 18 U.S.C. §1111(a), is not a "crime of violence" under the federal "elements clause." 33 F.4th at 1085. Specifically, he argued that second-degree murder under §1111(a) "can be committed

recklessly and therefore," under *Borden*, "does not constitute a crime of violence." *Id.* at 1085. The Court disagreed.

The Court began its analysis by refuting the defendant's claim that second degree murder has a *mens rea* of simple recklessness. Instead, federal law defines "murder" as "the unlawful killing of a human being with malice aforethought," 18 U.S.C. §1111(a), which means "to kill *either* deliberately and intentionally *or* recklessly with *extreme disregard for human life.*" *Begay*, 33 F.4th at 1091 (quoting Ninth Cir. Model Crim. Jury Instr. 8.108 (emphasis added), and citing *United States v. Houser*, 130 F.3d 867, 871 (9th Cir. 1997)). The Court noted that it had also "described malice aforethought as 'a callous and wanton disregard of human life,' and 'extreme indifference to the value of human life.'" *Begay*, 33 F.4th at 1091 (quoting *United States v. Pineda-Doval*, 614 F.3d 1019, 1037 (9th Cir. 2010) (emphasis added) (internal quotation marks omitted)). The court explained that this *mens rea* is often referred to as "depraved heart (i.e., reckless indifference)," and said it would focus its "elements clause" categorical analysis on that mental state "because it encompasses the least culpable conduct criminalized by §1111(a)." *Id.*

The Court noted that this analysis was not precluded by *Borden*, because in that case the Supreme Court left open the issue of whether the "depraved heart"/"extreme recklessness" *mens rea* was a categorical match to the "elements clause." *See Begay*,

33

33 F.4th at 1086, 1092 (citing *Borden*, 141 S. Ct. at 1825 n.4). The Court then expanded on what must be shown to establish the "depraved heart" *mens rea*:

> As we explained in *Pineda-Doval*, malice aforethought requires a *quantum of risk that is very high* and also requires that the nature of the risk concern injury to others. *See* 614 F.3d at 1038 (explaining that malice aforethought requires conduct creating "*a very high degree* of risk of injury to other persons" and that the defendant "*be aware* of that risk" (internal quotation marks omitted)).

*Begay*, 33 F.4th at 1093 (emphasis added). It is also worth quoting *Pineda-Doval*, which makes clear that the defendant's awareness of the risk is a central component of the "depraved heart"/"extreme recklessness" *mens rea*:

> To act with this type of malice aforethought, a defendant's conduct must create a "*very high degree of risk*" of injury to other persons, *he must be aware of that risk*, and he cannot have a justifiable reason for taking that risk. . . . It is this aspect of malice aforethought – *an awareness of an extreme risk* – that the Ninth Circuit has tried to capture when it has described malice aforethought as "a callous and wanton disregard of human life," *Houser*, 130 F.3d at 871, and "an extreme indifference to the value of human life," *Hernandez–Rodriguez*, 975 F.2d at 627 . . . .

*Pineda-Doval*, 614 F.3d at 1038 (emphasis added). This requirement of "awareness" of an "extreme" or "very high degree of risk" is consistent with the *mens rea Borden* required under the "elements clause," which, to reiterate, requires a defendant be "aware" that his conduct is "practically certain" to result in force being applied to another.

Accordingly, under *Borden* and *Begay* it is evident that assault under California Penal Code §245(a)(1) is not a categorical match to the federal "elements clause" because: (1) to qualify under that clause, an offense must require, at a minimum, that the defendant was *aware* of a "a very high degree of risk" (*Begay*) or a "practical certainty" (*Borden*) that force would be applied to another; but (2) the California Supreme Court in *Williams* made clear that a defendant's awareness of such a risk need not be shown to convict under §245(a)(1), and, indeed, a conviction can lie under that statute if the defendant "honestly believed that his act was not likely to result" in force being applied. *Williams*, 26 Cal. 4th at 788 n.3; *see also United States v. Linehan*, 56 F.4th 693, 705 (9th Cir. 2022) (stating that "[t]he underlying offense" must have "a heightened *mens rea* – knowledge or intent, or at the very least extreme recklessness").

## VI. California Penal Code §245(a)(1) Also Does Not Qualify As An "Aggravated Offense" Under The "Enumerated Offenses Clause" In U.S.S.G. §4B.1(a)(2)

As mentioned above, U.S.S.G. §4B1.2(a)'s definition of crime of violence includes enumerated offenses, in addition to the "elements clause," and one of those enumerated offenses is "aggravated assault." But the government did not rely on the "aggravated assault" provision in the district court, nor is there any indication the district court applied it. Furthermore, this Court has never held that California Penal

Code §245(a)(1) qualifies as an "aggravated assault" under U.S.S.G. §4B1.2(a)(2)'s "enumerated offenses clause." *See, e.g., United States v. Grajeda*, 581 F.3d 1186, 1190 (9ᵗʰ Cir. 2009) (declining to decide the issue in context of "elements clause" in U.S.S.G. §2L1.2). It does not, for the same reason that §245(a)(1) does not categorically qualify under the "elements clause."

Applying the "enumerated offenses clause" also requires applying the categorical approach, though the question becomes whether §245(a)(1) is a categorical match to a generic federal definition of "aggravated assault." *See United States v. Castro*, 71 F.4th 735, 738 (9ᵗʰ Cir. 2023). That generic federal definition includes an elevated *mens rea*, specifically knowledge or purpose, consistent with how those mental states are defined in the Model Penal Code. *See United States v. Garcia-Jimenez*, 807 F.3d 1079, 1085-87 (9ᵗʰ Cir. 2015). For the reasons already given, that means §245(a)(1) is not a categorical match to the generic federal "aggravated assault" offense.

Thus, should the government seek to fall back on the "enumerated offenses clause," it will lose for the same reason it loses on the elements clause.

## VII. Relief Is Required Under Either The *De Novo* Or Plain-Error Standards

As mentioned above, *de novo* review should apply because the issue presented is purely legal and the government will not be unfairly prejudiced by applying that

standard.  And, for the reasons already given, the Court should reverse and remand for resentencing.  *See, e.g., United States v. Gomez–Leon*, 545 F.3d 777, 782-83 (9th Cir. 2008) ("[w]e must reverse if the district court committed a significant procedural error, such as incorrectly calculating the advisory Guidelines' sentencing range").  But even if the Court applies plain-error review, reversal is warranted.

For plain-error review to result in reversal, "[t]here must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'"  *United States v. Olano*, 507 U.S. 725, 732 (1993) (quoting Fed. R. Crim. P. 52(b)).  "Moreover, Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals," discretion a court should exercise when the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *Id.* (quotation and citation omitted).

With respect to the first two prongs of the plain-error test, the question of whether there is error that is plain is assessed under presently applicable case law.  *See Henderson v. United States*, 568 U.S. 266 (2013).  Under *Borden* and *Begay*, it is evident that the error here is plain.

With respect to the third prong of plain-error review, Gomez "must establish 'that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding.'"  *United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir.

2005) (*en banc*) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). "When a defendant is sentenced under an incorrect Guidelines range – whether or not the defendant's ultimate sentence falls within the correct range – the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016). Furthermore, when the district court "downwardly departed from the [erroneous] Guidelines range," that is convincing evidence that it "may well have considered a lighter sentence" if it had correctly calculated the range. *United States v. Jaycox*, 962 F.3d 1066, 1071 (9th Cir. 2020)

Through this lens, it is evident that Gomez's substantial rights were affected. The career offender provision more-than doubled Gomez's Guidelines range, from 130-162 months to 262-327 months. *See* 1-ER-8-9. The fact that the court varied downward from that range, to 188 months, *see id.* at 11, shows there is a reasonable probability that, if faced with a range one-half the length, the court would have imposed a lower sentence.

Finally, the Court must consider whether the district court's error seriously affects the fairness, integrity, or public reputation of judicial proceedings, such that the Court may exercise its discretion to remedy the error. *See United States v. Wang*, 944 F.3d 1081, 1091 (9th Cir. 2019). This Court has "regularly deemed the fourth

prong of the plain error standard to have been satisfied where . . . the sentencing court committed a legal error that may have increased the length of a defendant's sentence." *United States v. Tapia*, 665 F.3d 1059, 1063 (9th Cir. 2011) (citations omitted). Furthermore, the Court has remarked that "there is little reason not to correct plain sentencing errors when doing so is so simple a task[.]" *Id.* Accordingly, the fourth prong is satisfied here and the Court should reverse and remand for resentencing. *See, e.g., Jaycox*, 962 F.3d at 1071 (reversing under plain-error standard when an erroneous sentencing enhancement raised the sentencing range from 5-20 years to 15-40 years); *Wang*, 944 F.3d at 1090 (exercising discretion to correct plain error when Guidelines error increased range from 24-30 months to 46-57 months); *United States v. Schopp*, 938 F.3d 1053, 1069 (9th Cir. 2019) (applying plain-error standard and reversing when the district court incorrectly imposed a sentencing enhancement); *United States v. Hammons*, 558 F.3d 1100, 1106 (9th Cir. 2009) (holding that sentencing court "committed plain error by failing to . . . calculate the app[licable] guideline range" and remanding for resentencing).

## CONCLUSION

For the foregoing reasons, the Court should reverse Gomez's sentence and remand for re-sentencing.

Respectfully submitted,

Dated: August 9, 2023

*/s/ Todd W. Burns*
TODD W. BURNS
Burns & Cohan, Attorneys at Law
501 West Broadway, Suite 1510
San Diego, California 92101
Telephone: (619) 236-0244

Attorneys for Jesus Gomez

## CERTIFICATE OF RELATED CASES

Counsel for Mr. Gomez is not aware of any related cases pending on appeal.

Respectfully submitted,


Dated: August 9, 2023                   */s/ Todd W. Burns*_____
                                    TODD W. BURNS
                                      Burns & Cohan, Attorneys at Law

**CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. 32(A)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NUMBER 23-435**

I certify that: (check appropriate options(s))

X   1.          Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit
                Rule 32-1, the attached opening appeal brief is

                Proportionately spaced, has a typeface of 14 points or more and contains
                 9,986  words (opening, answering, and the second and third briefs
                filed in cross-appeals must NOT exceed 14,000 words; reply briefs must
                NOT exceed 7,000 words),


 August 9, 2023          /s/ Todd W. Burns
Date                    TODD W. BURNS
                        Burns & Cohan, Attorneys at Law


42

# APPENDIX

West's Annotated California Codes
  Penal Code (Refs & Annos)
    Part 1. Of Crimes and Punishments (Refs & Annos)
    Title 8. Of Crimes Against the Person
      Chapter 9. Assault and Battery (Refs & Annos)

West's Ann.Cal.Penal Code § 245

## § 245. Assault with deadly weapon or force likely to produce great bodily injury; punishment

Effective: January 1, 2012

Currentness

(a)(1) Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment.

(2) Any person who commits an assault upon the person of another with a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not less than six months and not exceeding one year, or by both a fine not exceeding ten thousand dollars ($10,000) and imprisonment.

(3) Any person who commits an assault upon the person of another with a machinegun, as defined in Section 16880, or an assault weapon, as defined in Section 30510 or 30515, or a .50 BMG rifle, as defined in Section 30530, shall be punished by imprisonment in the state prison for 4, 8, or 12 years.

(4) Any person who commits an assault upon the person of another by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment.

(b) Any person who commits an assault upon the person of another with a semiautomatic firearm shall be punished by imprisonment in the state prison for three, six, or nine years.

(c) Any person who commits an assault with a deadly weapon or instrument, other than a firearm, or by any means likely to produce great bodily injury upon the person of a peace officer or firefighter, and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer or firefighter is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for three, four, or five years.

# APPX-2

(d)(1) Any person who commits an assault with a firearm upon the person of a peace officer or firefighter, and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer or firefighter is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for four, six, or eight years.

(2) Any person who commits an assault upon the person of a peace officer or firefighter with a semiautomatic firearm and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer or firefighter is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for five, seven, or nine years.

(3) Any person who commits an assault with a machinegun, as defined in Section 16880, or an assault weapon, as defined in Section 30510 or 30515, or a .50 BMG rifle, as defined in Section 30530, upon the person of a peace officer or firefighter, and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for 6, 9, or 12 years.

(e) When a person is convicted of a violation of this section in a case involving use of a deadly weapon or instrument or firearm, and the weapon or instrument or firearm is owned by that person, the court shall order that the weapon or instrument or firearm be deemed a nuisance, and it shall be confiscated and disposed of in the manner provided by Sections 18000 and 18005.

(f) As used in this section, "peace officer" refers to any person designated as a peace officer in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2.

**Credits**

(Enacted in 1872. Amended by Code Am.1873-74, c. 614, p. 428, § 22; Stats.1921, c. 89, p. 86, § 1; Stats.1933, c. 847, p. 2216, § 1; Stats.1961, c. 802, p. 2067, § 1; Stats.1965, c. 1271, p. 3145, § 3; Stats.1965, c. 1985, p. 4510, § 2; Stats.1966, 1st Ex.Sess., c. 21, p. 308, § 4, eff. April 18, 1966; Stats.1968, c. 1222, p. 2321, § 57; Stats.1970, c. 796, p. 1510, § 1; Stats.1972, c. 618, p. 1138, § 114; Stats.1976, c. 420, p. 1018, § 3; Stats.1976, c. 1126, p. 5042, § 7; Stats.1976, c. 1138, p. 5058, § 5; Stats.1976, c. 1139, p. 5105, § 152.5, operative July 1, 1977; Stats.1980, c. 1340, p. 4719, § 3.2, eff. Sept. 30, 1980; Stats.1982, c. 136, p. 437, § 1, eff. March 26, 1982, operative April 25, 1982; Stats.1982, c. 142, p. 469, § 1.2; Stats.1983, c. 1092, § 253, eff. Sept. 27, 1983, operative Jan. 1, 1984; Stats.1989, c. 18, § 1; Stats.1989, c. 1167, § 1; Stats.1993, c. 369 (A.B.1344), § 1; Stats.1999, c. 129 (S.B.23), § 1; Stats.2004, c. 494 (A.B.50), § 1; Stats.2010, c. 178 (S.B.1115), § 53, operative Jan. 1, 2012; Stats.2011, c. 15 (A.B.109), § 298, eff. April 4, 2011, operative Jan. 1, 2012; Stats.2011, c. 39 (A.B.117), § 11, eff. June 30, 2011, operative Jan. 1, 2012; Stats.2011, c. 183 (A.B.1026), § 1.)

West's Ann. Cal. Penal Code § 245, CA PENAL § 245
Current with Ch. 1 of 2023-24 1st Ex.Sess., and urgency legislation through Ch. 101 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

# APPX-3

<div style="border:1px solid black">

United States Code Annotated

   Federal Sentencing Guidelines (Refs & Annos)

      Chapter Four. Criminal History and Criminal Livelihood (Refs & Annos)

         Part B. Career Offenders and Criminal Livelihood

</div>

USSG, § 4B1.1, 18 U.S.C.A.

## § 4B1.1. Career Offender

Currentness

**(a)** A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

**(b)** Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A career offender's criminal history category in every case under this subsection shall be Category VI.

| | Offense Statutory Maximum | Offense Level[*] |
|---|---|---|
| (1) | Life | 37 |
| (2) | 25 years or more | 34 |
| (3) | 20 years or more, but less than 25 years | 32 |
| (4) | 15 years or more, but less than 20 years | 29 |
| (5) | 10 years or more, but less than 15 years | 24 |
| (6) | 5 years or more, but less than 10 years | 17 |
| (7) | More than 1 year, but less than 5 years | 12. |

**(c)** If the defendant is convicted of 18 U.S.C. § 924(c) or § 929(a), and the defendant is determined to be a career offender under subsection (a), the applicable guideline range shall be determined as follows:

**(1)** If the only count of conviction is 18 U.S.C. § 924(c) or § 929(a), the applicable guideline range shall be determined using the table in subsection (c)(3).

**(2)** In the case of multiple counts of conviction in which at least one of the counts is a conviction other than a conviction for 18 U.S.C. § 924(c) or § 929(a), the guideline range shall be the greater of--

# APPX-4

**(A)** the guideline range that results by adding the mandatory minimum consecutive penalty required by the 18 U.S.C. § 924(c) or § 929(a) count(s) to the minimum and the maximum of the otherwise applicable guideline range determined for the count(s) of conviction other than the 18 U.S.C. § 924(c) or § 929(a) count(s); and

**(B)** the guideline range determined using the table in subsection (c)(3).

**(3)** Career Offender Table for 18 U.S.C. § 924(c) or § 929(a) Offenders

| § 3E1.1 Reduction | Guideline Range for the 18 U.S.C. § 924(c) or § 929(a) Count(s) |
|---|---|
| No reduction | 360-life |
| 2-level reduction | 292-365 |
| 3-level reduction | 262-327. |

### CREDIT(S)

(Effective November 1, 1987; amended effective January 15, 1988; November 1, 1989; November 1, 1992; November 1, 1994; November 1, 1995; November 1, 1997; November 1, 2002; November 1, 2011; August 1, 2016.)

Footnotes

\*    If an adjustment from § 3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by the number of levels corresponding to that adjustment.

Federal Sentencing Guidelines, § 4B1.1, 18 U.S.C.A., FSG § 4B1.1
As amended to 3-15-22.

---

**End of Document**                                   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# APPX-5

United States Code Annotated
  Federal Sentencing Guidelines (Refs & Annos)
    Chapter Four. Criminal History and Criminal Livelihood (Refs & Annos)
      Part B. Career Offenders and Criminal Livelihood

USSG, § 4B1.2, 18 U.S.C.A.

## § 4B1.2. Definitions of Terms Used in Section 4B1.1

Currentness

**(a)** The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--

**(1)** has as an element the use, attempted use, or threatened use of physical force against the person of another, or

**(2)** is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

**(b)** The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

**(c)** The term "two prior felony convictions" means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (i.e., two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a), (b), or (c). The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere.

**CREDIT(S)**

(Effective November 1, 1987; amended effective January 15, 1988; November 1, 1989; November 1, 1991; November 1, 1992; November 1, 1995; November 1, 1997; November 1, 2000; November 1, 2002; November 1, 2004; November 1, 2007; November 1, 2009; November 1, 2015; August 1, 2016.)

Federal Sentencing Guidelines, § 4B1.2, 18 U.S.C.A., FSG § 4B1.2
As amended to 3-15-22.

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

# APPX-6