No. 23-435

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

JESUS RAMIRO GOMEZ,
*Defendant-Appellant.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA*
*DISTRICT COURT NO. SA CR 20-171-JVS*

## GOVERNMENT'S ANSWERING BRIEF

E. MARTIN ESTRADA
United States Attorney

BRAM M. ALDEN
Assistant United States Attorney
Chief, Criminal Appeals Section

ROBERT J. KEENAN
Assistant United States Attorney
Santa Ana Section

UNITED STATES ATTORNEY'S OFFICE
411 W. Fourth Street
Suite 8000
Santa Ana, CA 92701
Telephone: (714) 338-3597
E-Mail: rob.keenan@usdoj.gov

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**DESCRIPTION**                                                                **PAGE**

I. INTRODUCTION ............................................................ 1

II. ISSUE PRESENTED ....................................................... 2

III. JURISDICTION, TIMELINESS, AND BAIL STATUS ................. 3

IV. STATEMENT OF THE CASE ........................................... 3

    A. Offense Conduct ..................................................... 3

    B. The Indictment and Defendant's Guilty Plea ......................... 4

    C. Sentencing ......................................................... 5

V. SUMMARY OF ARGUMENT ............................................. 8

VI. ARGUMENT ............................................................ 9

    A. Standard of Review ................................................. 9

    B. The District Court Did Not Err When It Concluded That Assault With A Deadly Weapon Under § 245(a)(1) Is A Crime of Violence .......................................... 12

        1. The Guidelines' Career Offender Provision ................. 12

        2. This Court's Binding Precedent Holds That an Assault Under § 245(a)(1) Is a Crime of Violence ....... 14

        3. *Borden* Is Not Irreconcilable With This Court's Precedent Holding That Assault With a Deadly Weapon Under § 245(a)(1) Is a Crime of Violence ...... 24

        4. Assault With a Deadly Weapon Under § 245(a)(1) Is Also a Crime of Violence Under the Enumerated-Offenses Clause ....................................... 36

VII. CONCLUSION ......................................................... 39

# TABLE OF AUTHORITIES

**DESCRIPTION**                                              **PAGE(S)**

## Federal Cases

*Borden v. United States,*
141 S. Ct. 1817 (2021) ............................................................... passim

*Davis v. United States,*
140 S. Ct. 1060 (2020) ........................................................... 11

*Fernandez–Ruiz v. Gonzales,*
466 F.3d 1121 (9th Cir. 2006) ................................... 17, 21, 29

*Gonzalez v. Arizona,*
677 F.3d 383 (9th Cir. 2012) ................................................. 24

*Greer v. United States,*
141 S. Ct. 2090 (2021) ........................................................... 11

*Hart v. Massanari,*
266 F.3d 1155 (9th Cir. 2001) ............................................... 24

*Henderson v. United States,*
568 U.S. 266 (2013) .......................................................... 9, 11

*Johnson v. United States,*
520 U.S. 461 (1997) ............................................................... 10

*Lair v. Bullock,*
697 F.3d 1200 (9th Cir. 2012) ............................................... 25

*Leocal v. Ashcroft,*
543 U.S. 1 (2004) ................................................... 16, 17, 21

*Miller v. Gammie,*
335 F.3d 889 (9th Cir. 2003) ............................... 12, 25, 30, 32

*Musacchio v. United States,*
577 U.S. 237 (2016) ............................................................... 11

## TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                    **PAGE(S)**

*Paz-Negrete v. Garland,*
　2023 WL 4404348 (9th Cir. 2023) ....................................... 26

*Puckett v. United States,*
　556 U.S. 129 (2009) ........................................................ 9

*Sanchez v. Mayorkas,*
　141 S. Ct. 1809 (2021) .................................................... 12

*Sessions v. Dimaya,*
　138 S. Ct. 1204 (2018) .................................................... 22

*Taylor v. United States,*
　495 U.S. 575 (1990) ................................................... 13, 14

*United States v. Begay,*
　33 F.4th 1081 (9th Cir. 2022) ................................. 12, 28, 35

*United States v. Casarez-Bravo,*
　181 F.3d 1074 (9th Cir. 1999) ................................... 10, 12

*United States v. Castro,*
　71 F.4th 735 (9th Cir. 2023) .................................... 13, 14

*United States v. Charles,*
　581 F.3d 927 (9th Cir. 2009) ................................... 10, 12

*United States v. Davis,*
　825 F.3d 1014 (9th Cir. 2016) ...................................... 28

*United States v. Garcia-Jimenez,*
　807 F.3d 1079 (9th Cir. 2015) ................................... 37, 38

*United States v. Gnirke,*
　775 F.3d 1155 (9th Cir. 2015) ...................................... 26

*United States v. Gomez-Hernandez,*
　680 F.3d 1171 (9th Cir. 2012) ...................................... 36

iii

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                            **PAGE(S)**

*United States v. Grajeda,*
581 F.3d 1186 (9th Cir. 2009) .......................................................... passim

*United States v. Heron-Salinas,*
566 F.3d 898 (9th Cir. 2009) .................................................... 15, 20, 33

*United States v. Jimenez-Arzate,*
781 F.3d 1062 (9th Cir. 2015) ....................................................... 21, 22

*United States v. Lindsey,*
634 F.3d 541 (9th Cir. 2011) ........................................................ 24, 25

*United States v. Lo,*
447 F.3d 1212 (9th Cir. 2006) .............................................................. 10

*United States v. Man,*
2022 WL 17260489 (9th Cir. 2022) ................................................... 25

*United States v. McAdory,*
935 F.3d 838 (9th Cir. 2019) ............................................................... 10

*United States v. Morton,*
2022 WL 17076203 (9th Cir. 2022) ................................................... 26

*United States v. Olano,*
507 U.S. 725 (1993) ............................................................................... 9

*United States v. Sanchez,*
2021 WL 5985019 (9th Cir. 2021) ..................................................... 26

*United States v. Vasquez-Gonzalez,*
901 F.3d 1060 (9th Cir. 2018) ...................................................... passim

*United States v. Zhou,*
838 F.3d 1007 (9th Cir. 2016) ............................................................. 11

iv

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                          **PAGE(S)**

## State Cases

*People v. Aguilar*,
  16 Cal. 4th 1023 (1997) ................................................................ 14

*People v. Aznavoleh*,
  210 Cal. App. 4th 1181 (2012) ................................................ 21, 22

*People v. Colantuono*,
  7 Cal. 4th 206 (1994) ........................................................... passim

*People v. Conley*,
  63 Cal. 4th 646 (2016) ............................................................... 18

*People v. Williams*,
  26 Cal. 4th 779 (2001) ......................................................... passim

*People v. Wyatt*,
  48 Cal. 4th 776 (2010) .......................................................... 22, 35

## Federal Statutes

18 U.S.C. § 16 ................................................................ 15, 22, 27, 29

18 U.S.C. § 841(c) ....................................................................... 13

18 U.S.C. § 924(c)(3) ........................................................ 27, 28, 30

18 U.S.C. § 3231 .......................................................................... 3

18 U.S.C. § 3553 ....................................................................... 6, 7

18 U.S.C. § 3742(a) ...................................................................... 3

21 U.S.C. § 841(a)(1) ................................................................. 4, 5

21 U.S.C. § 846 ............................................................................ 4

26 U.S.C. § 5845(a) ..................................................................... 13

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                    **PAGE(S)**

28 U.S.C. § 1291...................................................................3

**State Statutes**

Cal. Pen. Code § 240................................................14, 15, 31

Cal. Pen. Code § 245........................................................ passim

**Federal Rules**

Fed. R. App. P. 4(b)(1)(A)(i)................................................3

Fed. R. Crim. P. 52(b) ..........................................................9

USSG § 2L1.2...................................................................16

USSG § 4B1.1 ..............................................................5, 13

USSG § 4B1.2 ............................................................ passim

No. 23-435

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JESUS RAMIRO GOMEZ,

*Defendant-Appellant.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA DISTRICT COURT NO. SA CR 20-171-JVS*

## GOVERNMENT'S ANSWERING BRIEF

# I

# INTRODUCTION

Defendant Jesus Ramiro Gomez pleaded guilty to distributing methamphetamine. At sentencing, the district court determined that defendant was a career offender. Although he did not object below, defendant now argues that his prior conviction for assault with a deadly weapon—not a firearm, in violation of California Penal Code § 245(a)(1),

is not a categorical crime of violence and thus could not serve as a career offender predicate.

Defendant acknowledges that this Court has held in several published opinions that an assault under Penal Code § 245(a)(1) is categorically a crime of violence, but argues that *Borden v. United States*, 141 S. Ct. 1817 (2021), requires a different result. However, this Court has repeatedly rejected the same argument because *Borden* is entirely consistent with (and certainly not clearly irreconcilable with) this Court's precedent. It should do so here again and affirm defendant's sentence.

## II

## ISSUE PRESENTED

Whether the district court plainly erred when it determined that defendant is a career offender based on his prior conviction for violation of California Penal Code Section 245(a)(1) (assault with a deadly weapon), which, under this Court's well-established law, categorically constitutes a "crime of violence" under USSG § 4B1.2.

# III

# JURISDICTION, TIMELINESS, AND BAIL STATUS

The district court's jurisdiction rested on 18 U.S.C. § 3231.  This Court's jurisdiction rests on 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

On March 14, 2023, the district court (the Honorable James V. Selna, Senior United States District Judge) entered the judgment.  (1-ER-2–6; CR 433.)[1]  On March 17, 2023, defendant filed a timely notice of appeal.  (2-ER-126–31.)  *See* Fed. R. App. P. 4(b)(1)(A)(i).

Defendant is in custody serving the sentence imposed in this case.

# IV

# STATEMENT OF THE CASE

## A.    Offense Conduct

Defendant sold a quarter-pound (*i.e.*, 110 grams) of pure methamphetamine to an undercover agent ("UC Agent") and confidential informant in exchange for $1,400.  (PSR ¶¶ 22–23; 2-ER-51.)  The transaction took place at the apartment of a co-defendant,

---

[1] "AOB" refers to Appellant's Opening Brief and is followed by applicable page numbers.  "PSR" refers to the Presentence Investigation Report and is followed by applicable paragraph references.  "CR" refers to the Clerk's Record in the district court and is followed by the docket number.

3

Spencer Amorde, who introduced defendant to the UC Agent, and the UC Agent separately paid Amorde $300 for the introduction. (PSR ¶¶ 22, 24.)

During the transaction, defendant told the UC Agent that he was able to sell pound quantities of methamphetamine and had 40 pounds at his residence. (PSR ¶ 24.) Defendant exchanged cellphone numbers with the informant (PSR ¶ 24) so he could deal directly with him in the future, without having to work through Amorde.

## B.    The Indictment and Defendant's Guilty Plea

The operative First Superseding Indictment charged defendant with conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846 (count one); and distribution of at least 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (count eight). (2-ER-63–67, 74.) As to defendant, both counts related solely to the above-described drug deal; defendant was not involved in the other deals alleged in the conspiracy count. (2-ER-66, 74.)

Pursuant to a plea agreement, defendant pleaded guilty to the distribution count (count eight). (CR 291, 459.) In the plea agreement, the government agreed to dismiss the conspiracy count and to

4

recommend a low-end Guideline sentence. (2-ER-47–48.) The parties had no agreement as to whether defendant qualified as a "career offender." (2-ER-52–53.) The plea agreement expressly left that issue open. (*Id*.)

## C.   Sentencing

In its Pre-Sentence Report, the Probation Office concluded that defendant was a "career offender" under USSG §§ 4B1.1 and 4B1.2 based on two qualifying prior felony convictions—a 2013 conviction for assault with a deadly weapon in violation of California Penal Code § 245(a)(1), and a 2015 conviction for possession of cocaine for sale. (PSR ¶¶ 40–41, 49, 53.) The career offender designation increased defendant's total offense level from level 27 to level 34. (PSR ¶¶ 41, 44.) The designation did not increase his criminal history category because he was already in Category VI based on his 15 criminal history points.[2] (PSR ¶¶ 59–60.)

---

[2] Defendant's other felony convictions were for multiple burglaries. (PSR ¶¶ 51–52.) Defendant also had prior misdemeanor convictions for driving without a license or on a suspended/revoked license, misappropriation of lost property, cocaine possession, possession of nitrous oxide, and two DUI offenses. (PSR ¶¶ 50, 54–58.)

Because defendant's criminal history made him ineligible for "safety-valve" relief under 18 U.S.C. § 3553(f), the mandatory-minimum sentence was 120 months' imprisonment. (PSR ¶ 106.) The Guidelines' advisory sentencing range was 262–327 months' imprisonment. (PSR ¶ 107.) The Probation Office recommended a sentence of 180 months. (CR 339; USPO Ltr. at 1, 5-6.)

Significantly, in his primary sentencing brief, defendant acknowledged the PSR's finding that he "meets the Guidelines' definition of a 'career criminal,'" but he did not object to the PSR's career offender designation. (2-ER-32.) Defendant filed four other supplemental briefs, but those briefs also failed to object to the career offender designation. (*See* CR 372, 391, 395, 412.) Instead, he argued for a sentence at the mandatory minimum based on other arguments that he has now abandoned on appeal—*e.g.*, requests for a "minor role" adjustment and downward departure or variance based on overstatement of the seriousness of his criminal history. (2-ER-32–44.) In addressing the circumstances underlying his prior assault conviction, defendant claimed that he was protecting a friend but admitted that his conduct "remains an assault likely to produce great bodily harm, no

6

question" and that "[t]he crime so described remains a crime of violence." (2-ER-41.)

In its sentencing brief, the government agreed with the PSR's Guideline calculations. (2-ER-17–30.) The government expressly agreed with the PSR's career offender designation, and it provided the district court with case authorities supporting that designation. (2-ER-19–21.) However, the government argued that the career offender adjustment overstated the seriousness of the offense and the resulting Guideline range of 262–327 months' imprisonment was greater than necessary to achieve the statutory objectives of sentencing set forth in 18 U.S.C. § 3553(a). (2-ER-18, 29–30.) Accordingly, the government sought a three-level downward variance to level 31 and argued for a sentence of 188 months' imprisonment, at the low-end of the reduced sentencing range. (2-ER-29–30; SER 3–5.)

Immediately before the sentencing hearing, the district court issued a tentative sentencing memorandum finding that defendant was a career offender. (1-ER-8–11.) The court found that a three-level downward *Booker* variance was appropriate, and it indicated an intent to impose a sentence of 188 months. (1-ER-11.)

7

At the sentencing hearing, defendant's counsel noted his appreciation for the government's recommendation of a downward variance and argued for a lower sentence, but he again failed to object to the use of his prior assault conviction as a career offender predicate. (SER 11–12.) In accordance with its tentative, the district court imposed a sentence of 188-months' imprisonment. (SER 13–14.)

V

## SUMMARY OF ARGUMENT

This Court has long held that a violation of California Penal Code Section 245(a)(1) is categorically a "crime of violence" under the Sentencing Guidelines career offender provision and related statutes. This panel is bound by those prior decisions.

The U.S. Supreme Court's holding in *Borden* that a "crime of violence" requires a *mens rea* of more than recklessness is consistent, not irreconcilable, with this Court's precedent. Based on its assessment of the California Supreme Court's interpretation of § 245(a)(1), this Court's precedent holds uniformly that, under California law, an assault under § 245(a)(1) "requires an intent to commit a battery" and cannot be committed with a *mens rea* of mere negligence or

8

recklessness. In a string of recent unpublished decisions, this Court has repeatedly rejected defense claims that *Borden* abrogates this Court's precedent regarding assault convictions under § 245(a). Thus, the district court did not err, clearly or otherwise, when it held defendant's prior § 245(a)(1) assault conviction was a "crime of violence."

# VI

# ARGUMENT

## A.  Standard of Review

When a defendant fails to bring an error to the district court's attention, "[a] federal court of appeals normally will not correct [that] error." *Henderson v. United States*, 568 U.S. 266, 268 (2013). Federal Rule of Criminal Procedure 52(b) "recognizes a limited exception" to the normal rule. *Puckett v. United States*, 556 U.S. 129, 135 (2009). It affords appellate courts discretion to correct forfeited errors if the appellant shows: (1) an error, that is (2) clear or obvious, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*; *United States v. Olano*, 507 U.S. 725, 732–37 (1993). Establishing plain error "is difficult, as it should be," *Puckett*, 556 U.S. at 135, and "[r]eversal on the basis of plain

error is an exceptional remedy." *United States v. Lo*, 447 F.3d 1212, 1228 (9th Cir. 2006).

Consistent with this authority, this Court has repeatedly applied plain-error review when a defendant challenges the application of the career offender enhancement for the first time on appeal. *See United States v. Charles*, 581 F.3d 927, 932 (9th Cir. 2009); *United States v. Casarez-Bravo*, 181 F.3d 1074, 1076 (9th Cir. 1999). Here, defendant concedes that he failed to raise below the issue of whether his prior assault with a deadly conviction qualified as a career offender predicate. (AOB 8.) As a result, the standard of review is plain error.

This Court should reject defendant's invitation to instead apply *de novo* review because his claims raise a "pure question of law." (AOB 8–9.) The Supreme Court has admonished against "the creation out of whole cloth of an exception to [Rule 52(b)]." *Johnson v. United States*, 520 U.S. 461, 466 (1997). And while this Court has sometimes applied *de novo* review to forfeited claims that raise "a question that is purely one of law," *United States v. McAdory*, 935 F.3d 838, 841-42 (9th Cir. 2019), that practice is wrong. It contravenes the text of Rule 52, the Supreme Court's unambiguous directives, and the practice of every

10

other Circuit to address this issue. *See United States v. Zhou*, 838 F.3d 1007, 1015–16 (9th Cir. 2016) (Graber, J., concurring). Indeed, the Supreme Court itself has repeatedly applied plain-error review to pure legal questions. *See Musacchio v. United States*, 577 U.S. 237, 248 (2016) (evaluating whether a district court plainly errs by "fail[ing] to enforce an unraised limitations defense"); *Henderson*, 568 U.S. at 269–70 (evaluating "substantive legal question" of whether district court plainly erred by lengthening a defendant's prison sentence for rehabilitative purposes).

The Supreme Court has also recently reaffirmed—in two different decisions—that there are no exceptions to Rule 52(b). In *Davis v. United States*, it rejected the Fifth Circuit's practice of not reviewing certain factual arguments for plain error because, the Supreme Court held, the text of Rule 52(b) does "not purport to shield any category of errors from plain-error review." 140 S. Ct. 1060, 1061 (2020) (per curiam). In *Greer v. United States*, the Court declined to adopt a "futility exception" to plain-error review because it "lacks any support in the text of the Federal Rules of Criminal Procedure or in this Court's precedents." 141 S. Ct. 2090, 2099 (2021). These decisions are "clearly

11

irreconcilable" with this Court's precedent creating another exception that lacks any support in the text of Rule 52(b). *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc), *overruled on other grounds*, *Sanchez v. Mayorkas*, 141 S. Ct. 1809 (2021)). At a minimum, they demonstrate that this Court should follow the on-point precedent of *Charles* and *Casarez-Bravo*—which applied plain-error review to forfeited claims in this precise context—and decline to expand the unfounded "pure question of law" exception any further.[3]

## B. The District Court Did Not Err When It Concluded That Assault With A Deadly Weapon Under § 245(a)(1) Is A Crime of Violence

### 1. The Guidelines' Career Offender Provision

A defendant is a career offender if, among other things, "the defendant has at least two prior felony convictions of either a crime of

---

[3] In *United States v. Begay*, 33 F.4th 1081, 1089–90 & n.3 (9th Cir. 2022), this Court declined to address whether its precedent allowing *de novo* review of pure questions of law can be reconciled with the Supreme Court's cases interpreting Rule 52(b) because the outcome would be the same regardless of what standard this Court applied. Although the government submits that affirmance is required here even under *de novo* review, if this Court disagrees, it should hold that the pure-question-of-law exception is irreconcilable with intervening Supreme Court authority and should apply plain error review to defendant's claim.

violence or a controlled substance offense." USSG § 4B1.1(a). "The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is murder, voluntary manslaughter, kidnapping, *aggravated assault*, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

*See* USSG § 4B1.2(a) (emphasis added). The first of these definitions is called the "elements-clause"; the second is the "enumerated-offenses clause." *United States v. Castro*, 71 F.4th 735, 738 (9th Cir. 2023).

"To determine whether a felony is a 'crime of violence,' [the courts] apply the categorical approach" established by *Taylor v. United States*, 495 U.S. 575 (1990); *Castro*, 71 F.4th at 738. Under *Taylor*, the courts "begin by analyzing the state statute's text," and then, without regard to the defendant's actual conduct, consider "whether the prior felony's elements cover conduct that 'sweeps more broadly than the conduct covered by § 4B1.2(a)'s crime-of-violence definitions." *Id.* "If so, then the prior felony is not categorically a 'crime of violence'" and cannot, for

13

example, be used under § 4B1.1 to increase the defendant's offense level.  *See id.*

## 2.  This Court's Binding Precedent Holds That an Assault Under § 245(a)(1) Is a Crime of Violence

Section 245(a)(1) of the California Penal Code provides that an "assault upon the person of another with a deadly weapon or instrument other than a firearm" is a felony punishable by over one year in state prison.  Cal. Pen. Code § 245(a)(1).  For purposes of § 245 and other California assault statutes, "[a]n assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  Cal. Pen. Code § 240.  A "deadly weapon or instrument" is "any object used in such a manner as to be capable of producing and likely to produce, death or great bodily injury."  *People v. Aguilar*, 16 Cal. 4th 1023, 1028-29 (1997).

Under *Taylor's* categorical approach, this Court has considered assault convictions under § 245(a)(1) and other subsections of that statute and has held — uniformly, in multiple published decisions — that the assault crimes defined in that statute categorically qualify as "crimes of violence" under USSG § 4B1.2(a) and under functionally

14

identical "elements-clauses" that are used in various other guidelines and statutes.

First, in *United States v. Heron-Salinas*, 566 F.3d 898 (9th Cir. 2009) (per curiam), this Court held that assault with a firearm under California Penal Code § 245(a)(2) is categorically a "crime of violence" under 18 U.S.C. § 16(a).[4] *Id.* at 899. There, the defendant argued that "§ 245 does not contain the requisite *mens rea* . . . to qualify as a crime of violence under § 16." *Id.* In rejecting that argument, this Court held that, "[u]nder a plain reading of [§ 245], the elements of assault with a firearm — an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another with a firearm — satisfy the requirements of section[s] 16(a) and (b)." *Id.* (citing Penal Code §§ 240 and 245 for the elements of assault).

As to *mens rea*, this Court explained that, "[i]n California, assault 'requires an *intentional act* and *actual knowledge* of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another.'" *Id.*

---

[4] The sole difference between the definitions in § 16(a) and § 4B1.2(a), irrelevant here, is that § 16(a)'s definition of "crime of violence" also encompasses physical force against property.

(citing *People v. Williams*, 26 Cal. 4th 779, 790 (2001) (emphasis added)).  The Court observed that "[t]his definition closely tracks the language in § 16(b)."  *Id.*  Moreover, "[a]ttempting to commit a violent injury on another person with a firearm 'naturally involve[s] a person acting in disregard of the risk that physical force might be used against another in committing an offense.'"  *Id.* (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 10-11 (2004)).  Accordingly, this Court concluded that "[t]he *mens rea* requirement is met."  *Id.*

Next, in *United States v. Grajeda*, 581 F.3d 1186 (9th Cir. 2009), this Court held that a conviction under Penal Code § 245(a)(1) — assault with a deadly weapon or, as then codified, assault by means likely to produce great bodily injury — is categorically a "crime of violence" under former USSG § 2L1.2, which uses the same elements-clause definition at issue here.  *See* 581 F.3d at 1187, 1190 (citing "elements" clause of USSG § 2L1.2, comment  (n.1)(B)(iii) (2006)); *see also* USSG § 2L1.2, comment (n.1) (2021).  As to the *mens rea* requirement, *Grajeda* considered and rejected the defendant's argument that "section 245(a)(1), as construed by the California courts [(most notably, *People v. Williams*)], does not require proof of sufficiently

16

intentional conduct to qualify as a crime of violence." *Id.* First, *Grajeda* noted that "neither recklessness nor gross negligence is a sufficient *mens rea* to establish that a conviction is for a crime of violence." *Id.* at 1190 (citing *Leocal*, 543 U.S. at 9–11 (negligence is not sufficient), and *Fernandez–Ruiz v. Gonzales*, 466 F.3d 1121, 1130 (9th Cir. 2006) (en banc) (neither negligence nor recklessness is sufficient)). Thus, long before *Borden* was decided in 2021, *Grajeda* analyzed whether assault with a deadly weapon under § 245(a)(1) was a "crime of violence" based on the same *mens rea* standard later enunciated in *Borden* — namely, that recklessness is insufficient.

With that understanding, *Grajeda* then conducted a careful and extensive review of the California case law defining the *mens rea* element for assault with a deadly weapon under § 245(a)(1). *Id.* at 1192–97. The Court noted that "[t]he *mens rea* required for assault under California law has been the subject of a long, tortured, and ongoing set of explanations in the California courts." *Id.* at 1193 (citing *Williams* and other cases). The Court also candidly acknowledged that "some language from state court opinions support[ed] [defendant

17

Grajeda's] assertion" and that "the case law is decidedly mixed." *Id*. at 1192.

Nonetheless, based on its assessment of the California Supreme Court's precedent, *Grajeda* rejected the claim that an assault under § 245(a)(1) could be established by proof of mere negligence or recklessness. The Court first quoted the following passage from *People v. Colantuono*, 7 Cal. 4th 206, 218–19 (1994),[5] which, in contrast to *Williams*, clearly explains that § 245(a)(1) requires a *mens rea* of *intent* to commit a violent act that is directed at causing a forceful impact against the person of another, as opposed to a specific consequence (*i.e.*, harm) that may flow from the impact:

> The intent to cause any particular injury, to severely injure another, or to injure in the sense of inflicting bodily harm is not necessary. *The pivotal question is whether the defendant intended to commit an act likely to result in such physical force, not whether he or she intended a specific harm.* Because the nature of the assaultive conduct itself contemplates physical force or "injury," a general intent to attempt to

---

[5] *Colantuono* was superseded by statute as to an unrelated issue regarding potential penalties, as noted in *People v. Conley*, 63 Cal. 4th 646, 660 n.4 (2016), but it remains good law.

> commit the violence is sufficient to establish the
> crime.

*See Grajeda*, 581 F.3d at 1193 (emphasis added) (quoting *Colantuono*, 7 Cal. 4th at 218–19). As *Grajeda* further noted, *Colantuono* "[e]mphasiz[ed] that the unlawful *consequences* of an assault need not be specifically intended," but rather "the necessary mental state is 'an *intent* merely *to do a violent act*.'" *Id*. at 1194 (quoting *Colantuono*, 7 Cal. 4th at 218–19).

As to *Williams*, this Court cited a passage in which the California Supreme Court acknowledges that "[b]ecause assault criminalizes conduct based on what might have happened … and the mental state for assault incorporates the language of probability, *i.e.*, direct, natural, and probable consequences," the language "*arguably implies* an objective mental state consistent with a negligence standard." *See Grajeda*, 581 F.3d at 1194 (citing *Williams*, 26 Cal. 4th at 787) (emphasis added). As this Court recognized, however, *Williams* clearly states that assault under California law is "a general intent crime" and "*mere recklessness or criminal negligence is still not enough because a jury cannot find a defendant guilty of assault based on facts he should*

19

*have known but did not know.*" *Id.* at 1194 (citing *Williams*, 26 Cal. 4th at 788 (explaining that it was "adopting [a] *knowledge requirement*")).

*Grajeda* recognized that *Williams* contains other seemingly incongruous language, including the passage that is the central focus of defendant's opening brief (*see* AOB 2, 7, 10, 11, 21, 32), namely, the passage saying that a defendant may be guilty of assault under § 245(a)(1) even if he is "not … subjectively aware of the risk that a battery might occur." *Grajeda*, 581 F.3d at 1194. "At the same time," however, this Court noted that "*Williams* and *Colantuono* elsewhere suggest that the use of force must be intentional, and only the specific injury need not be intended." *Id.* at 1195.

Beyond its own careful parsing of California case law, the *Grajeda* panel also noted that it was bound by this court's holding in *Heron-Salinas*, which, as explained above, concluded that Penal Code § 245(a)(2) met the *mens rea* requirement, and because it has the same *mens rea* element, § 245(a)(1) also qualified as a "crime of violence." *Grajeda*, 581 F.3d at 1195–96 (summarizing *Heron-Salinas* and determining that it was binding precedent on the *mens rea* issue).

20

Based on this analysis, *Grajeda* concluded that an assault with a deadly weapon under Penal Code § 245(a)(1) "requires proof of sufficiently intentional conduct to satisfy the *mens rea* requirement for a 'crime of violence' set forth in *Leocal* and *Fernandez–Ruiz*." *Id*. at 1197.  Thus, the offense "is categorically a 'crime of violence' under the element prong of § 2L1.2." *Id*.

Again, in *United States v. Jimenez-Arzate*, 781 F.3d 1062 (9th Cir. 2015) (per curiam), this Court held that a conviction for assault with a deadly weapon in violation of Penal Code § 245(a)(1) was a categorical "crime of violence" for federal sentencing purposes.  *Id*. at 1064.  Like defendant here (AOB 24–25), Jimenez-Arzate argued that *Grajeda* was no longer good law in light of *People v. Aznavoleh*, 210 Cal. App. 4th 1181 (2012).  This Court disagreed.  *Jimenez-Arzate*, 781 F.3d at 1064.  As the Court explained, "*Aznavoleh* involved a defendant who intentionally ran a red light while racing another car down the street even though he saw a car entering the intersection on the green.  The defendant made no effort to stop despite a passenger warning him that he needed to stop." *Id*.  "*Aznavoleh* did not hold that an automobile accident stemming from merely reckless driving may result in a

21

conviction under § 245(a)(1)." *Id.* Rather, in affirming the defendant's conviction, "[t]he California Court of Appeal upheld the trial court's finding that the defendant met the willfulness element of assault under California Penal Code § 245(a)(1), which the [court] defined as *intentionality*." *Id.* (emphasis added) (citing *Aznavoleh*, 210 Cal. App. 4th at 1186, and *People v. Wyatt*, 48 Cal. 4th 776, 778, 781 (2010) (emphases added) ("a defendant guilty of assault *must be aware of the facts* that would lead a reasonable person to *realize* that a battery would directly, naturally, and probably result from his conduct. *He may not be convicted based on facts he did not know but should have known*.")).

Finally, in *United States v. Vasquez-Gonzalez*, 901 F.3d 1060 (9th Cir. 2018), this Court revisited *Heron-Salinas* and *Grajeda* in light of subsequent Supreme Court authority invalidating 18 U.S.C. § 16(b)'s so-called residual clause[6] and again held that Penal Code § 245(a)(1) (the subsection of the statute at issue here) is categorically a "crime of violence" under the elements-clause of 18 U.S.C. § 16(a). *Vasquez-Gonzalez*, 901 F.3d at 1063-68. *Vasquez-Gonzalez* squarely rejected the claim that § 245(a)(1) can be violated "by negligent, and therefore

---

[6] *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).

unintentional, conduct." *Id.* at 1067. In doing so, *Vasquez-Gonzalez* reiterated this Court's prior conclusion that the California Supreme Court holds that the *mens rea* for assault cannot be satisfied by reckless or negligent conduct. *Id.* at 1067. Although the elements of assault under § 245(a)(1) use language that refers to the defendant committing an act that "by its nature will *probably* and directly result in the application of physical force against another," the Court held that "[t]he use of the word 'probably' did not suggest that the defendant did not intend the action, but reflects that the actual outcome of the action might not be certain." *Id.*

Accordingly, because "assault [under California law] 'requires an *intentional act* and *actual knowledge* of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another'" (citing *Williams*, 26 Cal. 4th at 790), this Court "conclude[d] that this definition *requires an intentional use of force*," "satisfies the *mens rea* requirement for § 16(a)," and thus § 245(a)(1) is categorically a "crime of violence." *Vasquez-Gonzalez*, 901 F.3d at 1068 (emphasis added).

In sum, this Court's precedent holds that assault with a deadly weapon under Penal Code 245(a) is a crime of violence for career-offender and similar purposes. Those cases are binding on this panel. *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc) (a published decision of this Court constitutes binding authority which "must be followed unless and until overruled by a body competent to do so") (quoting *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001)).

### 3. *Borden* Is Not Irreconcilable With This Court's Precedent Holding That Assault With a Deadly Weapon Under § 245(a)(1) Is a Crime of Violence

Defendant argues that this Court is not bound by the forgoing precedent because *Borden* announced a new rule that "fatally undermines" this Court's precedent. (AOB 2–3, 27–32.) However, recent unpublished decisions have uniformly rejected defendant's argument about *Borden*.

#### a. *This Court has repeatedly reaffirmed its precedent since <u>Borden</u>*

A three-judge panel of this Court is bound by circuit precedent unless it has been "in effect, overturned by the decision of a higher court." *United States v. Lindsey*, 634 F.3d 541, 548 (9th Cir. 2011). The intervening case must "undercut the theory or reasoning underlying the

prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.* at 548 (citing *Miller*, 335 F.3d at 900).

Whether the intervening authority is "clearly irreconcilable" with prior precedent is a "high standard." *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012). "It is not enough for there to be 'some tension' between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to 'cast doubt' on the prior circuit precedent." *Id.* (citations omitted). If this Court can apply "prior circuit precedent without 'running afoul' of the intervening authority," it is bound to do so. *Id.*

In the two years since *Borden* was decided, this Court has repeatedly rejected the same arguments that defendant presents in this appeal. In so doing, the Court has repeatedly held that that *Borden*, 141 S. Ct. 1817, did not abrogate the Circuit's established line of precedent holding that an assault under § 245(a)(1) is categorically a "crime of violence" because § 245(a)(1) requires a *mens rea* greater than recklessness. *See, e.g., United States v. Man*, 2022 WL 17260489, at *1 (9th Cir. 2022) (noting that "[w]e have repeatedly held that assaults under sections 245(a)(1) and 245(a)(2) . . . are categorically 'crimes of

violence,' and rejecting defendant's claim that *Borden* abrogated this precedent); *United States v. Morton*, 2022 WL 17076203, at *1 (9th Cir. 2022) (same); *United States v. Sanchez*, 2021 WL 5985019, at *1 (9th Cir. 2021) (same); *see also Paz-Negrete v. Garland*, 2023 WL 4404348, at *1 (9th Cir. 2023) (holding that a § 245(a)(1) conviction for assault with a deadly weapon is a "crime of violence" and thus an "aggravated felony" that subjected the petitioner to deportation; citing *Borden* without any indication that *Borden* was in conflict with this Circuit's precedent).

Defendant cites no contrary case adopting his position. Thus, there cannot be any plain—that is, "clear" or "obvious"—error. *United States v. Gnirke*, 775 F.3d 1155, 1164 (9th Cir. 2015) ("An error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results.") (cleaned up).

> ### b. <u>*Borden* does not alter the legal landscape because assault under § 245(a) cannot be committed recklessly</u>

In *Borden*, the defendant pleaded guilty to a felon-in-possession-of-firearm charge, and the district court imposed an enhanced sentence

26

pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(c)(3), on the ground that a prior conviction for "reckless aggravated assault" under Tennessee law was a "violent felony" under the ACCA.[7]  *Borden*, 141 S. Ct. at 1822.  Borden argued that his prior conviction for "reckless aggravated assault" did not qualify as a "violent felony" because under the relevant Tennessee statute—which makes it a crime to "[r]ecklessly commit an assault"—"a mental state of recklessness suffices for conviction."  *Id.*

Thus, the question presented to the Supreme Court in *Borden* was "whether [the ACCA's] elements-clause's definition of 'violent felony'—an offense requiring the 'use of physical force against the person of another'—includes offenses criminalizing reckless conduct."  *Id.* at 1825.  In *Borden*, a plurality of the Court held that reckless conduct does not meet the standard for a "violent felony" because "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual," and

---

[7] The elements-clause definition of "violent felony" in the ACCA is identical to § 16(a)'s elements-clause definition of "crime of violence."

"[r]eckless conduct is not aimed in that prescribed manner." *Id*. at 1825, 1834.

Because the reasoning from *Borden's* plurality was not adopted by a majority of the Justices, it does not bind this Court. *See generally United States v. Davis*, 825 F.3d 1014, 1022, 1028 (9th Cir. 2016) (en banc). Rather, *Borden's* only precedential holding is its specific result—*i.e.*, that offenses that can be committed by mere recklessness are not violent felonies under the ACCA's elements-clause, and by extension, the elements-clause in USSG § 4B1.2(a)(1) at issue here. *Davis*, 825 F.3d at 1022, 1028. This is so because, in his concurrence, Justice Thomas agreed with the result, but relied upon different reasoning. *Borden*, 141 S. Ct. at 1835 ("The plurality focuses on the latter part of the operative language: 'against the person of another.' I rest my analysis instead on a separate phrase: 'use of physical force.'").[8]

As detailed above, this Court long ago determined that the California Supreme Court has held that reckless conduct is not

---

[8] In *Begay*, 33 F.4th at 1091–96, the majority did not expressly consider whether *Borden's* plurality decision was binding for all purposes. This is apparently because both "parties [in *Begay*] treat[ed] the *Borden* plurality opinion as binding Supreme Court precedent." *Begay*, 33 F.4th at 1098 n.1 (Murguia, C.J., concurring).

sufficient to constitute a violation of Penal Code § 245(a)(1). *See, e.g.*, *Grajeda*, 581 F.3d at 1194 (citing *Williams*, 26 Cal. 4th at 788); *Vasquez-Gonzalez*, 901 F.3d at 1067–68 (citing *Williams* and holding that § 245(a)(1) "requires an intentional use of force," and reckless conduct is insufficient).

Furthermore, *Borden* resolved a circuit split, and it did so in a manner consistent with this Court's prior caselaw. 141 S. Ct. at 1823 & n.2. As noted above, long before *Borden*, this Court held that crimes punishing merely reckless conduct are not categorical "crimes of violence" under the elements-clause of 18 U.S.C. § 16(a), which is functionally identical to the elements-clauses in the ACCA and USSG § 4B1.2(a). *See Fernandez-Ruiz*, 466 F.3d at 1132. Decided in 2006, *Fernandez-Ruiz* predates all three decisions in which this Court upheld Penal Code § 245 as a categorical crime of violence—*Heron-Salinas*, *Grajeda*, and *Vasquez-Gonzalez*—and the two most recent of those cases discussed *Fernando-Ruiz* in concluding that § 245 qualifies as a categorical crime of violence. *See Grajeda*, 581 F.3d at 1190, 1195, 1197; *Vasquez-Gonzalez*, 901 F.3d at 1065, 1067.

Accordingly, because *Borden* holds only that reckless conduct is not a sufficient *mens rea* to qualify a prior offense as a "crime of violence," *Borden* is not "clearly irreconcilable" with the Court's prior authorities finding multiple subsections of Penal Code § 245 to be "crimes of violence," and those prior precedents remain binding. *Miller*, 335 F.3d at 900.

Even if the *Borden* plurality's reasoning applies here, Penal Code § 245(a)(1) requires that the assaultive action be directed or targeted at another individual, just as *Borden's* plurality envisions. *Borden*, 141 S. Ct. at 1825. The opinion gave an example of *knowing conduct* that would satisfy ACCA's elements-clause: "a getaway driver sees a pedestrian in his path but plows ahead anyway, knowing the car will run him over." *Id*. at 1827. According to the plurality decision, such knowing conduct falls within the ACCA's elements-clause because "[a]lthough he would prefer a clear road," the driver "drives his car straight at a known victim" and "has consciously deployed the full force of an automobile at another person." *Id*. The plurality also gave an example of *reckless conduct* that would not fit within its reasoning: "a

commuter who, late to work, decides to run a red light, and hits a pedestrian whom he did not see." *Id.*

California assault requires the kind of targeted, knowing conduct that the *Borden* plurality discussed.  Assault under any provision of that statute requires "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  Cal. Pen. Code § 240.  In other words, "assault in California requires an intent to commit a battery." *Vasquez-Gonzalez*, 901 F.3d at 1067 (citing *Williams*, 26 Cal. 4th at 790).  The California Supreme Court has elaborated that assault requires "an *intentional act* and *actual knowledge* of those facts sufficient to establish that the act by its nature will probably and directly *result in the application of physical force against another*." *Id.* (quoting *Williams*, 26 Cal. 4th at 790) (emphases added).  That definition falls within *Borden's* example of knowing conduct.  As *Borden* puts it, the defendant "acts knowingly [because] he is aware that a result is practically certain to follow from his conduct." *Borden*, 141 S. Ct. at 1823.

In his answering brief, defendant essentially argues that this Court's previous construction of § 245(a) based on *Williams* is wrong,

31

seizing primarily on two sentences in *Williams*. (*See* AOB 2, 7, 10, 11, 21, 32.) *Williams* states that a defendant may be guilty of assault under § 245(a)(1) even if he is "not … *subjectively aware* of the risk that a battery might occur." (AOB 21 (emphasis added) (quoting *Williams*, 26 Cal. 4th at 787-88).) As defendant notes, *Williams* later gives an example of that rule in action. *Id.* at 788 n.3 ("[A] defendant who honestly believes that his act was not likely to result in a battery is still guilty of assault if a reasonable person, viewing the facts known to defendant, would find that the act would directly, naturally, and probably result in a battery.")).

For at least three reasons, however, defendant's singular reliance on those two sentences in *Williams* does not meet the high standard of demonstrating that *Borden* is "clearly irreconcilable" with this Court's precedent that an assault under § 245(a)(1) is categorically a crime of violence. *Miller*, 335 F.3d at 900. *First*, defendant's argument simply ignores this Court's repeated prior holdings (discussed above) which recognize that, although *Williams* contains some incongruous language that is suggestive of a reckless *mens rea* standard, *Williams* concluded that § 245(a)(1) "requires an intentional use of force," that is "violent in

nature," with "actual knowledge" of "facts sufficient to establish that the [violent] act by its nature will probably and directly *result in the application of physical force against another*," and thus reckless conduct is insufficient to constitute a violation of Penal Code § 245(a)(1) (emphasis added). *See, e.g., Heron-Salinas*, 566 F.3d at 899; *Grajeda*, 581 F.3d at 1194; *Vasquez-Gonzalez*, 901 F.3d at 1067–68.

*Second*, the passage in *Williams* upon which defendant relies is dicta. In *Williams*, the defendant admitted firing his shotgun at the victim's truck, and, although he testified that he intended it merely as a "warning shot," he admitted that he knew that the victim was crouched behind the truck at the time defendant fired upon the truck. *Williams*, 26 Cal. 4th at 783. Thus, the defendant in *Williams* admitted that he was, in fact, "subjectively aware" of facts that established the existence "of the risk that a battery might occur." The sole issue in *Williams* was whether the jury instructions were erroneous because they allowed the defendant to be convicted "premised on facts the defendant should have known but did not actually know." *Id*. at 790. As to that issue, *Williams* held the instructions were erroneous, but the error was harmless in light of the defendant's admission that he knew the victim

33

was crouched behind the truck when he fired on the truck. *Id*. So, contrary to defendant's characterization (AOB 21), the sentence that is the sole focus of his entire appeal was *not* the "holding" in *Williams* and was not essential to its holding.

*Third*, in the concluding paragraph of its statutory construction of § 245's *mens rea* requirement, *Williams* sets forth the applicable rule with greater precision, and that passage shows that defendant is misconstruing *Williams*' earlier "subjective awareness" sentence:

> [W]e hold that assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another.

*Williams*, 26 Cal. 4th at 790. Consistent with *Grajeda's* reading of *Colantuono*, this passage in *Williams* clarifies that "the unlawful *consequences* of an assault [(*i.e.*, the particular harm or injury suffered by the victim)] need not be specifically intended," but it is "necessary" for the prosecution to prove that the defendant did have an "an intent ... to do a violent act" and had "actual knowledge" of facts indicating that the act would "result in the application of physical force against

34

another." *Grajeda*, 581 F.3d at 1194 (quoting *Colantuono*, 7 Cal. 4th at 218–19) (emphasis added); *id.* at 1196. *Wyatt* supports this view that *Williams* is referring to a "subjective awareness" of consequences of a violent physical impact (*i.e.*, a harm or injury), as opposed to awareness that the violent act will result in the application of physical force against the victim, because *Wyatt* relied on this part of *Williams* to explain why a defendant charged with assault resulting great bodily injury "need not know or be subjectively aware that his act is capable of causing great bodily injury." *Wyatt*, 48 Cal. 4th at 778, 781.

*Finally*, defendant's reliance on this Court's *en banc* decision in *Begay* does not help his cause. (AOB 32–35.) Addressing an issue left open in *Borden*, 141 S. Ct. at 1825 n.4, *Begay* held that crimes committed with a mental state between simple recklessness and knowledge—sometimes known as a depraved heart or extreme recklessness—qualify as "violent felonies." 33 F.4th at 1086, 1093. In so holding, this Court stated that "the reasoning of *Borden* sufficiently undermines our prior authority suggesting that anything less than intentional conduct does not qualify as a 'crime of violence.'" *Id.* at 1098. In other words, *Begay* refutes the premise of defendant's reading

35

of *Borden*. Far from narrowing the range of convictions that this Court previously ruled qualified as "violent felonies" and "crimes of violence," *Borden* in fact broadened that category to include crimes committed with a *mens rea* of less than knowledge but greater than simple recklessness.

### 4. Assault With a Deadly Weapon Under § 245(a)(1) Is Also a Crime of Violence Under the Enumerated-Offenses Clause

Contrary to defendant's claim (AOB 35–36), assault with a deadly weapon under Penal Code § 245(a)(1) is also categorically an "aggravated assault" under USSG § 4B1.2(a)'s enumerated-offenses clause. Thus, this Court may properly affirm the career offender adjustment on that alternative ground as well.

Because a violation of § 245(a)(1) requires use of a deadly weapon, an assault prohibited by that statute contains one of the qualifying "aggravating factors" sufficient to satisfy the generic definition of "aggravated assault," as that term is used in § 4B1.2(a)(2). *See United States v. Gomez-Hernandez*, 680 F.3d 1171, 1178 (9th Cir. 2012) (generic "aggravated assault" is a criminal assault accompanied by either "intent to cause serious bodily injury" or "use of a deadly

weapon"). Moreover, an assault under § 245(a)(1) also satisfies the *mens rea* requirement for a generic "aggravated assault"—*i.e.*, purpose or general intent. *United States v. Garcia-Jimenez*, 807 F.3d 1079, 1081, 1087 (9th Cir. 2015) (generic offense of "aggravated assault" requires a *mens rea* of purpose or general intent, and thus "greater than" extreme-indifference recklessness). As detailed above, an assault under § 245(a)(1) is a general intent crime that "requires an intentional use of force" that is "likely to result in" the "application of physical force against another," and a *mens rea* of recklessness is insufficient. *See Grajeda*, 581 F.3d at 1193–94 (quoting *Colantuono*, 7 Cal. 4th at 218–19); *Vasquez–Gonzalez*, 901 F.3d at 1067–68.

*Garcia–Jimenez* — defendant's primary case authority regarding the *mens rea* requirement for a generic "aggravated assault" (AOB 36) — actually undercuts his entire appeal regarding both the elements clause and the enumerated-offenses clause. Because the government did not rely on the elements clause on appeal in *Garcia-Jimenez*, the Court did not consider whether the New Jersey statute at issue there satisfied the elements clause under § 2L1.2's definition of "crime of violence." *Garcia-Jimenez*, 807 F.3d at 1082 n.2. However, after

37

conducting a punctilious, 50-state survey to determine the *mens rea* requirement for a generic "aggravated assault," *Garcia-Jimenez* found that California was one of thirty-three states that define aggravated assault as a general intent crime, which generally equates with "knowledge" and "require[es] a *mens rea* of *more than* extreme-indifference recklessness." *Garcia-Jimenez*, 807 F.3d at 1085, 1087 n.8 (emphasis added). In support of that finding, the Court cited California Penal Code § 245 as one of the state statutes that requires a *mens rea higher than* extreme-indifference recklessness. *Id*. at 1085 n.6. Thus, defendant's claim that "§ 245(a)(1) is not a categorical match to the generic federal 'aggravated assault' offense" is entirely at odds with this Court's decision in *Garcia-Jimenez*.

# VII

# CONCLUSION

For all the forgoing reasons, defendant's sentence should be affirmed.

DATED: October 10, 2023.                    Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

BRAM M. ALDEN
Assistant United States Attorney
Chief, Criminal Appeals Section

*/s/ Robert J. Keenan*

ROBERT J. KEENAN
Assistant United States Attorney

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

## STATEMENT OF RELATED CASES

The government states, pursuant to Ninth Circuit Rule 28-2.6, that it is unaware of any cases related to this appeal.

## CERTIFICATE OF COMPLIANCE

I certify that:

1.     This brief complies with the length limits permitted by

Ninth Circuit Rule 32-1 because the brief contains   7,285   words,

excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

2.     This brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P.

32(a)(6) because it has been prepared in a proportionally spaced

typeface (14-point Century Schoolbook) using Microsoft Word 2016.

DATED: October 10, 2023.                    */s/ Robert J. Keenan*

                                    ROBERT J. KEENAN
                                    Attorney for Plaintiff-Appellee
                                    UNITED STATES OF AMERICA