No. 23-435

————————

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JESUS RAMIRO GOMEZ,

Defendant-Appellant.

————————

Appeal from the United States District Court
for the Central District of California
Honorable James V. Selna, Judge Presiding

————————

APPELLANT'S REPLY BRIEF

————————


TODD W. BURNS
Burns & Cohan, Attorneys at Law
501 West Broadway, Suite 1510
San Diego, California 92101
Telephone: (619) 236-0244

Counsel for Jesus Ramiro Gomez

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

CALIFORNIA PENAL CODE §245(a)(1) IS NOT A "CRIME OF
VIOLENCE" BECAUSE ITS *MENS REA* IS LOWER THAN
REQUIRED UNDER THE FEDERAL "ELEMENTS CLAUSE" . . . . . . . . . . .  2

I.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.    *Borden* – To Qualify As A "Crime Of Violence" Under The
Federal "Elements Clause," A State Offense Must Require *At
Least* That The Defendant Was "Aware" There Was A "Practical
Certainty" Physical Force Would Be Applied To Another. . . . . . .  3

III.    *Williams* – To Convict For Assault Under California Penal Code
§245(a)(1), The Prosecution Need Not Show The Defendant Was
Aware Of A Risk That Force Would Be Applied To Another, And
A Defendant Can Be Convicted If He "Honestly Believed" Force
Wouldn't Be Applied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

IV.    Because Assault Under California Penal Code §245(a)(1) Doesn't
Require That A Defendant Intend, Or Be Aware To A Practical
Certainty, That Force Will Be Applied To Another, It Is Not A
Categorical Match To The Federal Elements Clause . . . . . . . . . . .  14

V.    This Court's Post-*Borden*, Unpublished Opinions In *Man* And
Other Cases Don't Address Gomez's Argument. . . . . . . . . . . . . . .  19

VI.    California Penal Code §245(a)(1) Also Doesn't Qualify As An
"Aggravated Offense" Under The "Enumerated Offenses Clause"
In U.S.S.G. §4B1.2(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

A.     The Government's "Deadly-Weapon" Argument Based On *Gomez-Hernandez* Is Wrong, For Several Reasons . . . . . . .   20

B.     The Government Misleadingly Claims That Generic "Aggravated Assault" Is A "General Intent" Crime . . . . . . .   24

C.     The Government Relies On Completely Substance-Less Dicta In *Garcia-Jimenez* . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

VII.    Relief Is Required Under Either The *De Novo* Or Plain-Error Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28

CERTIFICATE OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . .   29

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . .   30

# TABLE OF AUTHORITIES

*Page*

**FEDERAL CASES**

*Borden v. United States,*
    141 S. Ct. 1817 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Marks v. United States,*
    430 U.S. 188 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Miller v. Gammie,*
    335 F.3d 889 (9th Cir. 2003) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*Pereida v. Wilkinson,*
    141 S. Ct. 754 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Sessions v. Dimaya,*
    138 S. Ct. 1204 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Tison v. Arizona,*
    481 U.S. 137  (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Begay,*
    33 F.4th 1081 (9th Cir. 2022) (*en banc*) . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 10

*United States v. Celestine,*
    510 F.2d 457 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Davis,*
    825 F.3d 1014 (9th Cir. 2016) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . . . 5

 *United States v. Garcia-Jimenez,*
    807 F.3d 1079 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 26, 28

*United States v. Gnirke,*
    775 F.3d 1155 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

iii

*United States v. Gomez-Hernandez,*
    680 F.3d 1171 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 22, 23

*United States v. Grajeda,*
    581 F.3d 1186 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17

*United States v. Heron-Salinas,*
    566 F.3d 898 (9th Cir. 2009) (per curiam) . . . . . . . . . . . . . . . . . . . . . 15, 16

*United States v. Jimenez-Arzate,*
    781 F.3d 1062 (9th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Linehan,*
    56 F.4th 693 (9th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*United States v. Man,*
    2022 WL 17260489 (9th Cir. 2022) (unpublished) . . . . . . . . . . . . . . . . 20

*United States v. Morton,*
    2022 WL 17076203 (9th Cir. 2022) (unpublished) . . . . . . . . . . . . . . . . 20

*United States v. Sanchez,*
    2021 WL 5985019 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Vasquez-Gonzalez,*
    901 F.3d 1060 (9th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18, 19

*Voisine v. United States,*
    579 U. S. 686 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## DOCKETED CASES

 *United States v. Begay,*
    No 14-10080 (Ninth Cir. Docket #131). . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

**STATE** CASES

*People v. Aguilar*,
 16 Cal. 4th 1023 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*People v. Colantuono*,
 7 Cal. 4th 206 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

*People v. Williams*,
 26 Cal. 4th 779 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**FEDERAL STATUTES**

18 U.S.C. §16(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. §844(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ACCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

**STATE STATUTES**

Cal. Pen. Code §240 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal. Pen. Code §245(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Model Penal Code §211.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**ADVISORY GUIDELINES**

U.S.S.G. §2L1.2(b)(1)(A)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

U.S.S.G. §2L1.2 cmt. n. 1(B)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

U.S.S.G. §2L1.2 cmt. n. 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

U.S.S.G. §4B1.2(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

U.S.S.G. §4B1.2(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20, 21

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 23-435 |
| | ) | |
| Plaintiff-Appellee, | ) | D.C. No. 8:20-cr-0171-JVS-FWS-5 |
| | ) | Central District of California, |
| v. | ) | Santa Ana |
| | ) | |
| JESUS RAMIRO GOMEZ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

**INTRODUCTION**

The categorical analysis in this appeal compares what *Borden v. United States*, 141 S. Ct. 1817 (2021), says about the use-of-force *mens rea* necessary to qualify as a crime of violence under the federal "elements clause" with what *People v. Williams*, 26 Cal. 4th 779 (2001), says is the use-of-force *mens rea* for assault under California Penal Code §245(a)(1).

In its answering brief (GAB), the government claims: (1) *Borden* doesn't say what use-of-force *mens rea* is necessary for an offense to qualify under the "elements clause," it only says "recklessness" isn't enough; and (2) *Williams* doesn't say what use-of-force *mens rea* is required under §245(a)(1), it only says it's more than "recklessness." The government then claims there is not a mismatch between these holdings.

The government's argument is wrong because neither *Borden* nor *Williams* gives such a crimped treatment of the use-of-force *mens rea*. With the reach of those cases accurately understood, it is obvious there is not a categorical match because the federal elements clause requires an elevated showing of intent – or awareness of risk – with respect to the use of force, while assault under §245(a)(1) requires no showing in that regard.

All of this was explained in *Gomez's* opening brief, but the government ignores that discussion. Instead, the government mis-characterizes the two key opinions, which in turn allows it to advance its misleading and simplistic recklessness-is-not-enough/labels-based argument.

## CALIFORNIA PENAL CODE §245(a)(1) IS NOT A "CRIME OF VIOLENCE" BECAUSE ITS *MENS REA* IS LOWER THAN REQUIRED UNDER THE FEDERAL "ELEMENTS CLAUSE"

### I. Introduction

The key components of the categorical analysis in this case are *Borden* and *Williams*. Accordingly, the first two argument sections in Gomez's opening brief (AOB) discussed those opinions at length. *See* AOB 13-23. In its answering brief, the government disputes Gomez's summary of those opinions and offers overly-crimped, and legally baseless, constructions. In light of that approach, and consistent with the structure of the opening brief, the discussion below proceeds as follows.

2

First, Gomez refutes the government's mis-characterization of the impact of *Borden*.

Second, Gomez refutes the government's mis-characterization of *Williams*.

Third, Gomez reiterates the categorical analysis when *Borden* and *Williams* are accurately construed. In that context he also addresses the government's attempt to obscure that analysis, and advance its recklessness-is-not enough argument, by relying on this Court's pre-*Borden* caselaw.

Fourth, Gomez addresses the government's claims about this Court's post-*Borden* unpublished case law.

Finally, Gomez discusses the government's treatment of the standard of review and reiterates that relief is warranted regardless of the standard applied.

## II. *Borden* – To Qualify As A "Crime Of Violence" Under The Federal "Elements Clause," A State Offense Must Require *At Least* That The Defendant Was "Aware" There Was A "Practical Certainty" Physical Force Would Be Applied To Another

In *Borden*, the Supreme Court held that a "criminal offense" cannot qualify under the federal elements clause "if [it] requires only a *mens rea* of recklessness – a less culpable mental state than purpose or knowledge." 141 S. Ct. at 1821-22. That is because the phrase "'use of force" in the elements clause "denotes volitional conduct. And the [clause's] pairing of volitional action with the word 'against' supports that word's oppositional, or targeted, definition." *Id.* at 1826.

Based on this reasoning, the Court in *Borden* concluded that "[t]he 'against' phrase indeed sets out a mens rea requirement – of purposeful or knowing conduct." *Id.* The court reiterated that point, stating that offenses that qualify under the federal elements clause "are best understood to involve not only a substantial degree of force, but also a purposeful or knowing mental state – a deliberate choice of wreaking harm on another, *rather than mere indifference to risk*." *Id.* at 1830 (emphasis added). The Court also relied on the Model Penal Code to explain what it meant by purposeful or knowing. *See id.* at 1823-24, 1826-27. The bottom-line is that to qualify under the elements clause a criminal offense must, *at a minimum*, require a showing that the defendant was "practically certain" that his conduct would result in applying force to another. *Id.* at 1823.

The government seeks to defuse *Borden* by delineating what it claims is the majority's holding from the plurality opinion's non-binding reasoning. It begins by stating:

> [T]he question presented to the Supreme Court in *Borden* was "whether [the ACCA's] elements-clause's definition of 'violent felony'– an offense requiring the 'use of physical force against the person of another' – includes offenses criminalizing reckless conduct." *Id.* at 1825. In *Borden*, a plurality of the Court held that reckless conduct does not meet the standard for a "violent felony" because "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual," and "[r]eckless conduct is not aimed in that prescribed manner." *Id.* at 1825, 1834.

4

GAB 27-28. The government then says the plurality's reasoning is meaningless and the only precedential aspect of *Borden* is a holding that the federal elements clause requires a use-of-force *mens rea* of "more-than-recklessness:"

> Because the reasoning from *Borden's* plurality was not adopted by a majority of the Justices, it does not bind this Court. *See generally United States v. Davis*, 825 F.3d 1014, 1022, 1028 (9th Cir. 2016) (*en banc*). Rather, *Borden's* only precedential holding is its specific result – *i.e.*, that offenses that can be committed by mere recklessness are not violent felonies under the ACCA's elements-clause, and by extension, the elements-clause in USSG §4B1.2(a)(1) at issue here. . . . This is so because, in his concurrence, Justice Thomas agreed with the result, but relied upon different reasoning.

GAB 28 (citing *Borden*, 141 S. Ct. at 1835 (Thomas, J., concurring)); *see also* GAB 17, 30. This attempt to hobble *Borden* is wrong.

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). In *Davis*, 825 F.3d at 1028, this Court discussed *Marks* and said:

> A fractured Supreme Court decision should only bind the federal courts of appeal when a majority of the Justices agree upon a single underlying rationale and one opinion can reasonably be described as a logical subset of the other. When no single rationale commands a majority of the Court, only the specific result is binding on lower federal courts.

5

*Id.* at 1021-22.  To decide if there is a binding rationale, a court asks "whether the reasoning of a narrower opinion fit[s] entirely into the circle drawn by a broader opinion in order to derive a rule." *Id.* at 1021.

This analysis reveals the government's crimped reading of *Borden* is wrong. In his concurring opinion, Justice Thomas stated:

> The question presented here is whether the elements clause encompasses petitioner's conviction under Tennessee law for reckless aggravated assault.  It does not.  The plurality focuses on the latter part of the operative language: "against the person of another."  I rest my analysis instead on a separate phrase:  "use of physical force."  As I have explained before, a crime that can be committed through mere recklessness does not have as an element the "use of physical force" because that phrase "has a well-understood meaning applying only to intentional acts designed to cause harm." *Voisine v. United States*, 579 U. S. 686, 713 (2016) (Thomas, J., dissenting).

*Borden*, 141 S. Ct. at 1835 (Thomas, J., concurring).  That "intentional-acts-designed-to-cause-harm" *mens rea* is more elevated than the minimum *mens rea* described in the plurality opinion, which requires a defendant be aware it was "practically certain" his conduct would result in force being applied.  *Borden*, 141 S. Ct. at 1823.

Accordingly, the four justices in the plurality and Justice Thomas *all* agree that an offense cannot qualify under the federal elements clause if it does not, at a minimum, require a showing that the defendant was "practically certain" that his conduct would result in force being applied to another.  That logical overlap was

6

pointed out in the opening brief.  *See* AOB 13 n.6 (citing *United States v. Begay*, 33 F.4th 1081, 1100 n.2 (9th Cir. 2022) (*en banc*) (Ikuta, J., dissenting)).

But even if the government's argument limiting the impact of *Borden* were correct, that's irrelevant because in *Begay* this Court adopted the *Borden* plurality opinion's reasoning as binding precedent and then applied that reasoning to its categorical analysis in that case.  *See id.* at 1092-93.  The government recognizes that *Begay* defeats its argument but tries to neutralize that by quoting the following footnoted statement in Chief Judge Murguia's concurring opinion in *Begay*: "Because the parties treat the *Borden* plurality opinion as binding Supreme Court precedent, I assume for purposes of my analysis that it is."  GAB 28 n.8 (quoting *Begay*, 33 F.4th at 1098 n.1 (Murguia, C.J., concurring)).  That statement doesn't obviate the fact that the majority in *Begay* adopted the reasoning/rationale of *Borden's* plurality opinion and thereby made it binding Ninth Circuit law.

Furthermore, it bears noting that *en banc* review was granted in *Begay* based on the government's supplemental brief submitted after *Borden* was decided.  That supplemental brief relied heavily on *Borden's* plurality opinion.  *See United States v. Begay*, Ninth Cir. No. 14-10080, Gov't Supp. Brief at 8-10, 13-14, 16-18 (Docket #131).  It's a bit late for the government to flip-flop.

7

This Court's opinion in *United States v. Linehan*, 56 F.4th 693 (9th Cir. 2022), presents the same obstacle for the government that *Begay* does, though even more starkly.  In that case, the Court said:

> In *Borden*, the Supreme Court held that the phrase "*against* the person of another," "when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." 141 S. Ct. at 1825 (emphasis added).  This means that predicate offenses with a mens rea of purpose or knowledge are sufficient, but predicate offenses that merely require reckless conduct are not.  *Id*. at 1826.  In *Begay*, our *en banc* court addressed a question left open in *Borden* and held that a mens rea of extreme recklessness also qualifies as a crime of violence under the elements clause.  33 F.4th at 1093-94.

> Section 844(d) [at issue in *Linehan*] satisfies *Borden* because it requires the defendant to have transported or received an explosive with "the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy."  18 U.S.C. § 844(d) (emphasis added).

*Linehan*, 56 F.4th at 705.  The Court in *Linehan* then made clear that to qualify as a "crime of violence" under the elements clause, "[t]he underlying offense" must have "a heightened *mens rea* – knowledge or intent, *or at the very least* extreme recklessness."  *Id.* (emphasis added).  To support that statement the Court cited *Borden's* plurality opinion and *Begay*.

In sum, and as explained in the opening brief, under *Borden* (or *Begay*, or *Linehan*), to qualify as a crime of violence under the federal elements clause an offense must categorically require that the defendant be "aware of" at least an

"extreme risk" (*Begay*) or a "practical certainty" (*Borden*) that force will be applied to another.

The government nonetheless claims "this Court's en banc decision in *Begay* does not help [Gomez's] cause." GAB 35. That would come as a surprise to the government lawyers who wrote the successful supplemental brief in *Begay*.

In that brief, the government claimed the extreme recklessness/depraved heart *mens rea* "approaches a mental state comparable to deliberation and intent," as those terms were defined in the plurality opinion in *Borden*. *See United States v. Begay*, Ninth Cir. No. 14-10080, Gov't Supp. Brief at 1 (docket #131) (quoting *United States v. Celestine*, 510 F.2d 457, 459 (9th Cir. 1975)). The government went so far as to claim that "depraved heart" recklessness, encompassed in "malice," amounts to "a practical certainty . . . that injury w[ould] result to another." *Id.* at 14; *see also id.* at 8-11 (relying on *Borden* and arguing that "[d]epraved heart indifference . . . covered acts so very reckless as to approach intent or knowledge"); *id.* at 12 ("depraved-heart indifference is 'a highly culpable mental state' that is 'every bit as shocking to the moral sense as an 'intent to kill'") (quoting *Tison v. Arizona*, 481 U.S. 137, 157 (1987)).

In sum, in *Begay* the government argued – successfully – that there was no meaningful difference between the knowledge and intent requirements the plurality opinion described in *Borden* and depraved heart recklessness. And *Linehan* makes

9

clear that depraved heart recklessness is the "very least" *mens rea* that satisfies the federal elements clause. 56 F.4th at 705 (emphasis added). These circumstances decidedly "help Gomez's cause."

### III. *Williams* – To Convict For Assault Under California Penal Code §245(a)(1), The Prosecution Need Not Show The Defendant Was Aware Of A Risk That Force Would Be Applied To Another, And A Defendant Can Be Convicted If He "Honestly Believed" Force Wouldn't Be Applied

As explained in the opening brief, assault under §245(a)(1) doesn't meet *Borden's* or *Begay's* minimum use-of-force *mens rea* requirement for the federal elements clause because to convict under §245(a)(1) the prosecution need not show the defendant was aware of *any* risk that force would be applied, much less that he was aware of an "extreme risk, or to a "practical certainty," that force would be applied.

Section 245(a)(1)'s *mens rea* in this regard was explained in *Williams*. There, the court held that to commit an assault under §245(a)(1) a defendant: (1) must intend to do an act that if "completed" would be a battery; but (2) the prosecution need not show the defendant had any intent, or knowledge of risk, that force would be applied to another person. "The pivotal question is whether the defendant intended to commit an act likely to result in such physical force, not whether he or she intended a specific harm." *Williams*, 26 Cal. 4th at 785 (quoting *People v.*

*Colantuono*, 7 Cal. 4th 206, 218 (1994) (emphasis added)).  A few pages later in

*Williams* the court reiterated this point:

> In other words, a defendant guilty of assault *must be aware of the facts* that *would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct.*  He may not be convicted based on facts he did not know but should have known.  He, however, *need not be subjectively aware of the risk that a battery might occur.*

*Williams*, 26 Cal. 4th at 787-88 (emphasis added).  The court gave an example:

> [A] defendant *who honestly believes* that his act was not likely to result in a battery is still guilty of assault if a reasonable person, viewing the facts known to defendant, would find that the act would directly, naturally and probably result in a battery.

*Id*. at 788 n.3 (emphasis added).  The government makes several specious arguments

to try to convince this Court that the quoted language isn't binding.

First, the government says the quoted language amounts "primarily [to] two

sentences" that don't accurately characterize *Williams's* holding.  *See* GAB 31-32.

It's hard to know what the government means by "primarily," but it is legally baseless

to suggest that a court may ignore the quoted language.  Furthermore, the government

doesn't explain how it believes the California Supreme Court stumbled into

unintentionally making those statements.  It didn't.  Instead, the court in *Williams*

went on for pages explaining that a defendant (a) must intend to do an act that if

"completed" would be a battery, but (b) the prosecution need not show the defendant

had any intent, or knowledge of risk, that force would be applied to another person.

11

And, as discussed in the opening brief, the California courts have repeatedly put that language to outcome-determinative effect. *See* AOB 24-26 & n.11.

Second, the government claims that after making the statements quoted above the California Supreme Court "set[] forth" what it really meant "with greater precision." GAB 34. The government claims that precision is found in the following portion of *Williams*:

> Accordingly, we hold that assault *does not require* a specific intent to cause injury or *a subjective awareness of the risk that an injury might occur*. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another.

GAB 34 (quoting *Williams*, 26 Cal. 4th at 790) (emphasis added). This quote actually confirms that a defendant can be convicted of assault under §245(a) if he was not aware of even a risk that force would be applied to another.

Third, the government claims the quoted language from *Williams* is "dicta" because the defendant in *Williams* testified that when he fired a "warning shot" at a pickup truck "he knew that the [alleged assault] victim was crouched behind the truck" and thus, the government says, the defendant was "subjectively aware" of the risk that force would be applied to another. GAB 33-34 (citing *Williams*, 26 Cal. 4th at 783). This argument is based on a strange conception of dicta, and, more important, ignores the procedural background of the case.

The trial court in *Williams* instructed jurors that to convict they had to find the defendant "committed an act that by its nature would probably and directly result in the application of physical force on another person." *Williams*, 26 Cal. 4th at 783. The California Court of Appeal (CCA) reversed because that instruction allowed the jury to convict if "under an objective view of the facts . . . an application of force on another person was reasonably foreseeable." *Id.* at 784. The CCA held that assault instead "requires either a *desire to cause* an application of physical force *or substantial certainty* that such an application would result." *Id.* (emphasis added). The California Supreme Court reversed, holding that assault requires only a showing of "actual knowledge of the facts sufficient to establish that the defendant's act by its nature will probably and directly result in injury to another." *Id.* And that court explained, in the language at issue here, that the prosecution need not show the defendant intended, or was even aware there was a risk, that force would be applied to another. *See id.* at 787-88 & n.3.

It was based on that construction of §245(a) that the California Supreme Court reversed the CCA and affirmed Williams's conviction. *See id.* at 790. The government nonetheless finds significance in the fact that in rendering that decision the California Supreme Court found the instructional error was harmless. *See* GAB 33-34. But the California Supreme Court didn't agree with the CCA's view about the instructional error, and thus didn't find that such an error occurred, much less that it

13

was harmless. Instead, the California Supreme Court found there was harmless error because "under the instruction given, a jury could conceivably convict a defendant for assault even if he did not actually know the facts sufficient to establish that his act by its nature would probably and directly result in a battery." *Id.*

In light of these circumstances, it is absurd to characterize as dicta the California Supreme Court's holding in *Williams* with respect to the use-of-force *mens rea* under §245(a)(1). It is especially absurd because *Williams* is the key case describing the use-of-force *mens rea* for assault under §245(a)(1), and has been relied on in scores of cases.

## IV. Because Assault Under California Penal Code §245(a)(1) Doesn't Require That A Defendant Intend, Or Be Aware To A Practical Certainty, That Force Will Be Applied To Another, It Is Not A Categorical Match To The Federal Elements Clause

As explained in the opening brief, and above, comparing *Borden* and *Williams* makes it obvious that assault under §245(a)(1) is not categorically encompassed within the federal elements clause. *See* AOB 23-24. As already discussed, the government attempts to refute this argument by artificially limiting *Borden* and *Williams*, then advancing its recklessness-is-not-enough/labels-based argument. Because the government's crimped readings of *Borden* and *Williams* are wrong, its argument fails.

14

In making that erroneous argument, the government enlists four of this Court's cases. There are two major things to note in that regard.

First, three of the four cases the government relies on were rendered defunct by *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). Those three cases are *United States v. Heron-Salinas*, 566 F.3d 898 (9th Cir. 2009) (per curiam), *United States v. Grajeda*, 581 F.3d 1186 (9th Cir. 2009), and *United States v. Jimenez-Arzate*, 781 F.3d 1062 (9th Cir. 2015).

The first of those, *Heron-Salinas*, addressed whether assault under §245(a)(1) qualified as a "crime of violence" under (a) the federal elements clause and (b) the "residual clause" definition of crime of violence.[1] The Court in *Heron-Salinas* found assault under §245(a)(1) qualified as a crime of violence under both those definitions but didn't delineate its analysis with respect to them. 566 F.3d at 899.

Subsequently, in *Grajeda* and *Jimenez-Arzate*, the Court relied on *Heron-Salinas*, directly or indirectly, to re-affirm its conclusion that assault under §245(a)(1) qualified as a crime of violence. *See Grajeda*, 581 F.3d at 1197; *Jimenez-Arzate*, 781 F.3d at 1063-65. The Supreme Court later held, in *Dimaya*, that the residual clause definition of "crime of violence" is void because it is unconstitutionally vague. That holding undermined the opinions and holdings in *Heron-Salinas*, *Grajeda*, and

---

[1] *Heron-Salinas* specifically dealt with whether assault under §245(a)(1) was a crime of violence under 18 U.S.C. §16(a)'s elements clause and §16(b)'s "residual clause." 566 F.3d at 898-99.

*Jimenez-Arzate*. This Court recognized that in *United States v. Vasquez-Gonzalez* and thus revisited the issue of whether assault under §245(a)(1) is a crime of violence under the federal elements clause. 901 F.3d 1060, 1066 (9th Cir. 2018).

Because of that, in his opening brief Gomez focused his discussion of this Court's pre-*Borden* case law on *Vasquez-Gonzalez*. *See* AOB 29 & n.13. The government nonetheless spends eight pages of its answering brief discussing the three defunct cases, before it turns limited attention to *Vasquez-Gonzalez*. *See* GAB 15-22. Notably, in its discussion of those three cases the government puts great weight on a portion of *Grajeda*, 581 F.3d at 1193-97, in which this Court discussed confusing aspects of California case law with respect to §245(a)(1)'s *mens rea*. *See* GAB 17-20. The government evidently intends to convey the impression that in *Grajeda* this Court arrived at some sort of definitive conclusion about that confusion. That isn't true. Instead, in *Grajeda* this Court indicated that it need not resolve that confusion because it was "bound by *Heron-Salinas's*" now-defunct "conclusion that assault" under §245(a)(1) qualifies as a crime of violence. *See Grajeda*, 581 F.3d at 1197.

Which leads to the second thing to note about the government's reliance on this Court's pre-*Borden* case law: the government relies on that case law as part of its effort to avoid dealing with the substance of *Williams*, and to instead advance its simplistic recklessness-is-not-enough/labels-based argument. For example, the government argues that "based on its assessment of the California Supreme Court's

precedent, *Grajeda* rejected the claim that an assault under §245(a)(1) could be established by proof of mere negligence or recklessness." GAB 18. Similarly, the government says that in *Vasquez-Gonzalez* this Court "reiterated [its] prior conclusion that the California Supreme Court holds that the mens rea for assault cannot be satisfied by reckless or negligent conduct." GAB 22-23 (quotation omitted); *see also* GAB 8-9, 26, 28-29.

The government is attacking a straw-man. To reiterate, Gomez eschews reliance on the "recklessness" and "negligence" labels and instead focuses on the use-of-force *mens rea* requirements explained in detail in *Williams* and *Borden*. And this Court in *Vasquez-Gonzalez* didn't address the required *mens rea* later described in *Borden*. Furthermore, in *Vasquez-Gonzalez* this Court applied a labels-based approach and concluded, "the California Supreme Court expressly rejected the conclusion that the mens rea for assault could be satisfied by negligent or reckless conduct." 901 F.3d at 1067 (citing *Williams*, 26 Cal. 4th at 788).

In sum, by artificially limiting the substance of *Williams* and *Borden* the government is able to (mostly) ignore Gomez's argument and instead rely on its recklessness-is-not-enough argument.

The government does, however, make a fleeting attempt to deal with Gomez's argument, stating:

17

California assault requires the kind of targeted, knowing conduct that the *Borden* plurality discussed. Assault under any provision of that statute requires "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Pen. Code §240. In other words, "assault in California requires an intent to commit a battery." *Vasquez-Gonzalez*, 901 F.3d at 1067 (citing *Williams*, 26 Cal. 4th at 790).

GAB 31.

If it were true that to convict under §245(a)(1) the prosecution had to prove a defendant specifically intended to commit a battery, the government might have a point. But that assertion is wrong, which is evident from the parenthetical in *Vasquez-Gonzalez* following the portion of that case cited by the government in the block-quote above. That parenthetical says a defendant may be convicted under §245(a)(1) if "he *intend[ed] to commit an act which would be indictable as a battery*." *Vasquez-Gonzalez*, 901 F.3d at 1067 (quoting *Williams*, 26 Cal. 4th at 787) (emphasis added). As stated repeatedly throughout the relevant case law, that means the prosecution must show the defendant had "actual knowledge of the facts sufficient to establish that the defendant's act *by its nature* will probably and directly result in injury to another," but he "*need not be subjectively aware of the risk* that a battery might occur." *Williams*, 26 Cal. 4th at 784, 787 (emphasis added); *see also id.* at 785 ("[t]he pivotal question is whether the defendant intended to commit an act likely to result in such physical force, *not whether he or she intended a specific harm*") (quoting *Colantuono*, 7 Cal. 4th at 218).

18

The government also ignores the context of the discussion in *Vasquez-Gonzalez* on which it relies for its claim that to convict under §245(a)(1) the prosecution must show a defendant had the "specific intent to commit a battery." That portion of *Vasquez-Gonzalez* is dedicated to refuting the defendant's argument "that §245(a)(1) can be satisfied by negligent, and therefore unintentional, conduct," an argument that, as noted above, this Court rejected by stating that "the California Supreme Court [in *Williams*] expressly rejected the conclusion that the mens rea for assault could be satisfied by negligent or reckless conduct." 901 F.3d at 1067 (citing *Williams*, 26 Cal. 4th at 788).

In sum, the government relies on this Court's pre-*Borden* case law to re-package its simplistic recklessness-is-not-enough/labels-based argument.

## V.   This Court's Post-*Borden*, Unpublished Opinions In *Man* And Other Cases Don't Address Gomez's Argument

In argument section V of his opening brief, Gomez explained that this Court's: (1) pre-*Borden* published case law had been fatally undermined by *Borden*; and (2) post-*Borden* unpublished cases rely on that prior, invalid case law, and are also unpersuasive because they merely cite to the simplistic more-than-recklessness/labels-based reasoning, rather than addressing the substance of what is said in *Borden* and *Williams*. *See* AOB 28-32.

Point (1) has been addressed above and in the opening brief.

19

With respect to point (2), in his opening brief Gomez addressed *United States v. Man*, 2022 WL 17260489 (9th Cir. 2022) (unpublished), and *United States v. Morton*, 2022 WL 17076203 (9th Cir. 2022) (unpublished), and explained that they contain an identical, flawed analysis. *See* AOB 28-29 & n.12. In its answering brief, the government cites another unpublished case, *United States v. Sanchez*, 2021 WL 5985019, *1 (9th Cir. 2021). *See* GAB 25. But *Sanchez* has the same flawed analysis found in *Morton* and *Man.* Because the government fails to respond to Gomez's arguments in that respect in his opening brief, there is nothing to add here.

## VI. California Penal Code §245(a)(1) Also Doesn't Qualify As An "Aggravated Offense" Under The "Enumerated Offenses Clause" In U.S.S.G. §4B1.2(a)(2)

On appeal, the government argues for the first time that assault under §245(a)(1) qualifies as a crime of violence under U.S.S.G. §4B1.2(a)(2)'s "enumerated offenses clause" definition because it is categorically an "aggravated assault." The government makes three arguments in this context, which are refuted below.

### A. The Government's "Deadly-Weapon" Argument Based On *Gomez-Hernandez* Is Wrong, For Several Reasons

The government's primary argument is that "[b]ecause a violation of §245(a)(1) requires use of a deadly weapon, an assault prohibited by that statute contains one of the qualifying 'aggravating factors' sufficient to satisfy the generic

20

definition of 'aggravated assault,' as that term is used in §4B1.2(a)(2)." GAB 36. There are a raft of problems with this argument, which are best explained by first delving into the one case on which the government relies, *United States v. Gomez-Hernandez*, 680 F.3d 1171 (9th Cir. 2012).

In that case, the Court addressed whether there was a categorical match between defendant's Arizona conviction for "*attempted* aggravated assault" and the definition of a "crime of violence" under what was then U.S.S.G. §2L1.2(b)(1)(A)(ii). *Id.* at 1174. That Guidelines provision didn't identify any "enumerated offenses." Instead, "[a]ggravated assault [was] specifically enumerated in the Application Note to Guideline §2L1.2 as a crime of violence, *see* U.S.S.G. §2L1.2 cmt. n. 1(B)(iii), as [was] attempting to commit aggravated assault, *see* U.S.S.G. § 2L1.2 cmt. n. 5." *Gomez-Hernandez*, 680 F.3d at 1174.

The Court began its categorical analysis by recognizing that "[t]here is no dispute that an Arizona conviction for aggravated assault (as opposed to attempted aggravated assault) does not categorically qualify as a crime of violence under Guideline §2L1.2(b)(1)(A)(ii)," because the former ("completed" assault) doesn't require a showing of at least depraved heart recklessness. *Gomez-Hernandez*, 680 F.3d at 1175. However, the Court said, "our analysis does not end there" because "[w]e are concerned in this appeal with Gomez-Hernandez's conviction for *attempted* aggravated assault, not *completed* aggravated assault." *Id.* at 1175-76 (emphasis in

original).  The Court went on to state, "[w]e know with certainty that attempted aggravated assault under Arizona law requires *specific intent*. . . .  Consequently, Gomez–Hernandez's attempted aggravated assault conviction was not based on a lesser mens rea than the generic offense."  *Id.* at 1177 (emphasis added).

Next, the Court considered the separate issue of whether the *mens rea* attached to "Arizona's aggravating factors" – that is, the factors that make an assault aggravated – "are coextensive with those of the generic offense" of "aggravated assault."  *Id.* at 1178.  In that regard, the Court cited approvingly to the Model Penal Code provision that indicates an assault is "aggravated" if the defendant "attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon."  *Id.* (citing Model Penal Code § 211.1).  The Court adopted that definition, holding that "use of a deadly weapon to attempt to cause bodily injury" is an "aggravating factor[]."  *Id.*  The Court then applied the *modified* categorical approach and concluded, "the record of conviction demonstrates that Gomez-Hernandez's attempted aggravated assault conviction necessarily rested on the specific intent to use a deadly weapon in carrying out the assault."[2]  *Id.* at 1179.

_____

[2]    It is not clear that the Court's application of the "modified categorical approach" was correct because that approach is used only to determine which offense a defendant was convicted of when the record of conviction lists a divisible statute that contains multiple offenses. *See Pereida v. Wilkinson*, 141 S. Ct. 754, 764-65 (2021).

Gomez now turns to the many flaws with the government's argument and its reliance on *Gomez-Hernandez*.

First, *Gomez-Hernandez* addressed whether Arizona "*attempted* aggravated assault" qualified as a generic "aggravated assault" under the commentary notes to U.S.S.G. §2L1.2(b)(1)(A)(ii). Here: (1) the "enumerated offense" clause at issue doesn't contain an attempt provision; and (2) Gomez wasn't convicted for "attempted" assault under §245(a)(1), he was convicted of assault.

Second, *Gomez-Hernandez* stated that the completed assault offense under Arizona law doesn't qualify as a generic aggravated assault because it doesn't require a showing of at least depraved heart recklessness, *see Gomez-Hernandez*, 680 F.3d at 1175, which requires that a defendant acted with an "awareness of" an "extreme degree of risk" of "injury to" another person. *Begay*, 33 F.4th at 1093. As already explained, assault under California Penal Code §245(a)(1) likewise doesn't require showing a use-of-force *mens rea* anywhere close to depraved heart recklessness.

Third, the result is the same under the second part of the analysis in *Gomez-Hernandez*, which deals with the *mens rea* for the generic use of a "deadly weapon" aggravator. As *Gomez-Hernandez* states, that generic aggravator requires that the defendant "attempt[ed] to cause or purposely or knowingly cause[d] bodily injury to another with a deadly weapon." 680 F.3d at 1178. California Penal Code §245(a)(1)

requires no such showing, thus it is not a categorical match with that generic aggravator.

Finally, there is the issue of whether the generic definition of a "deadly weapon" other than a firearm is a categorical match to that phrase under California Penal Code §245(a)(1). With respect to the generic definition, Model Penal Code §210.0(4) defines "deadly weapon" as "any . . . weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is *known* to be capable of producing death or serious bodily injury." (Emphasis added.) On the other hand, under California Penal Code §245(a)(1) an object may be found to be a "deadly weapon" based solely on objective factors such as the "nature of the object" or the "manner in which it is used," regardless of whether the defendant used the object in a manner he *knew* was capable of causing death or serious bodily injury. *See People v. Aguilar*, 16 Cal. 4th 1023, 1028-29 (1997).

### B. The Government Misleadingly Claims That Generic "Aggravated Assault" Is A "General Intent" Crime

The government's next argument goes like this: (1) in *United States v. Garcia-Jimenez*, 807 F.3d 1079 (9th Cir. 2015), this Court held the generic "aggravated assault" offense is a "general intent" crime; (2) assault under California Penal Code §245(a)(1) is a "general intent" crime; thus (3) they are a categorical

match.  *See* GAB 37.  Again, the government is using labels to mislead because a substantive analysis doesn't support its claim.

To begin with, *Garcia-Jimenez* didn't hold that generic "aggravated assault" is a "general intent" crime.  Instead, the Court said, "we conclude that a mens rea of extreme indifference recklessness" – also known as "depraved heart" recklessness – "is not sufficient to meet the federal generic definition of aggravated assault." *Garcia-Jimenez*, 807 F.3d at 1080, 1084.  Assault under California Penal Code §245(a)(1) likewise doesn't meet the generic aggravated assault threshold with respect to the use-of-force, for the same reasons discussed above and in the opening brief.  *See* AOB 2, 33-35.

Furthermore, the government's argument here is obliterated when one considers that the Court in *Garcia-Jimenez* concluded that the generic definition of "aggravated assault" was not a categorical match to a New Jersey assault statute that applied to a defendant who "[a]ttempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury."  807 F.3d at 1084.  As discussed *ad nauseam* above, a conviction under California Penal Code §245(a)(1) doesn't require that a defendant intend, or even be aware of a risk,

that force will be used against another, much less that he attempted or intended to cause (with a depraved heart or otherwise) any injury.

### C. The Government Relies On Completely Substance-Less Dicta In *Garcia-Jimenez*

In discerning a generic definition for "aggravated assault" in *Garcia-Jimenez*, this Court summarily stated broad conclusions about the laws of dozens of states. In that discussion, the Court said, "Thirty-three states and the District of Columbia do not punish as aggravated assaults offenses committed with only extreme indifference recklessness." *Garcia-Jimenez*, 807 F.3d at 1085. In a corresponding footnote, the Court cited statutes from those thirty-three jurisdictions, including "Cal. Penal Code §245." *Id.* at 1085 n.6. That citation doesn't specify any subsection in §245, which, in subsection (a)(1), sets out a basic assault provision (which can be a felony or misdemeanor), and is followed by several sub-sections describing six aggravated assault offenses (*e.g.*, assault with a machinegun, assault causing great bodily injury, assault on a firefighter) with correspondingly more severe penalties.

The government nonetheless claims that this portion of *Garcia-Jimenez* "undercuts [Gomez's] entire appeal regarding both the elements clause and the enumerated-offenses clause" because it means that assault under §245(a)(1) requires showing a use-of-force *mens rea* greater than extreme indifference recklessness. GAB 37. But *Garcia-Jimenez* didn't discuss, much less decide, the use-of-force *mens*

*rea* required for *any* of the seven offenses listed in §245, much less for the offense listed in §245(a)(1). What the Court said in that case is, therefore, completely unpersuasive dicta. Were it otherwise, the government would not have waited till the last page of its answering brief to make its claim in this regard.

## VII.  Relief Is Required Under Either The *De Novo* Or Plain-Error Standards

In his opening brief, Gomez explained that this Court may apply *de novo* review because the issue presented here is purely legal, but even if the Court applies plain-error review relief is warranted.  *See* AOB 8-9, 36-39.

The government acknowledges this Court's case law holding that it may apply *de novo* review but complains "that practice is wrong." GAB 10. That's an argument for an *en banc* petition.

With respect to plain-error review, the government only addresses the first two prongs of that test.  It argues that Gomez has not cited any cases "contrary" to this Court's post-*Borden* unpublished cases, thus "there cannot be any plain – that is, 'clear' or 'obvious' – error. *United States v. Gnirke*, 775 F.3d 1155, 1164 (9th Cir. 2015)."  GAB 26.  That makes no sense because Gomez's argument is that this Court's pre-*Borden* case law is "clearly irreconcilable" with *Borden*.  *See* AOB 2-3, 29 (citing *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (*en banc*)).  *Borden* is, therefore, the "controlling authority." As for the case on which the government relies

27

for this argument, *Gnirke*, it doesn't address a *Miller* situation. On the other hand, *United States v. Garcia-Lopez*, 903 F.3d 887, 894 (9th Cir. 2018), makes clear that if a defendant clears *Miller's* "clearly irreconcilable" hurdle, he has established plain error.

Finally, the government doesn't claim that the third and fourth prongs of the plain-error test aren't met here, and it is obvious they are. *See* AOB 37-39.

## CONCLUSION

The Court should vacate Gomez's sentence.

Respectfully submitted,

Dated: December 15, 2023

*/s/ Todd W. Burns*
TODD W. BURNS
Burns & Cohan, Attorneys at Law
501 West Broadway, Suite 1510
San Diego, California 92101
Telephone: (619) 236-0244

Attorneys for Jesus Gomez

## CERTIFICATE OF RELATED CASES

Counsel for Mr. Gomez is not aware of any related cases pending on appeal.

Respectfully submitted,

Dated:  December 15, 2023          */s/ Todd W. Burns*
                                    TODD W. BURNS
                                    Burns & Cohan, Attorneys at Law

## CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. 32(A)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NUMBER 23-435

I certify that:  (check appropriate options(s))

X   1.        Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit
              Rule 32-1, the attached reply appeal brief is

              Proportionately spaced, has a typeface of 14 points or more and contains
               6,538   words (opening, answering, and the second and third briefs
              filed in cross-appeals must NOT exceed 14,000 words; reply briefs must
              NOT exceed 7,000 words),


 December 15, 2023                      /s/ Todd W. Burns
Date                                  TODD W. BURNS
                                      Burns & Cohan, Attorneys at Law

30