No. 23-435

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

JESUS RAMIRO GOMEZ,
*Defendant-Appellant.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA*
*DISTRICT COURT NO. SA CR 20-171-JVS*

## GOVERNMENT'S PETITION FOR REHEARING AND/OR REHEARING EN BANC
### (Decided Sept. 4, 2024—H. Thomas, Desai, Soto)

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

DAVID R. FRIEDMAN
Assistant United States Attorney
Chief, Criminal Appeals Section

ALEXANDER P. ROBBINS
Assistant United States Attorney
Deputy Chief, Criminal Appeals Section

1000 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
(213) 894-2400
Alexander.P.Robbins@usdoj.gov

Attorneys for Plaintiff-Appellant
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**DESCRIPTION**                                                                **PAGE**

I.      INTRODUCTION ........................................................................ 1

II.     ISSUE PRESENTED ............................................................... 3

III.    BACKGROUND ...................................................................... 3

       A.     Guilty Plea and Sentencing ...................................... 3

       B.     Panel Decision ............................................................ 4

IV.    ARGUMENT ........................................................................... 6

       A.     This Court Should Overrule the "Pure Question of Law" Exception ..................................................... 6

       B.     The Standard Is Dispositive Here Because Any Error Was Not Clear or Obvious .................................... 10

            1.     California assault has long been a crime of violence ................................................................ 11

            2.     *Borden* did not change this Court's precedent ........... 13

            3.     At the very least, any error was not clear or obvious .................................................................... 20

V.     CONCLUSION ..................................................................... 22

# TABLE OF AUTHORITIES

**DESCRIPTION** **PAGE(S)**

**Federal Cases**

*Al-Bahlul v. United States,*
   767 F.3d 1 (D.C. Cir. 2014) ....................................................9

*Borden v. United States,*
   593 U.S. 420 (2021) ................................................... passim

*Borden v. United States,*
   No. 19-5410, 2019 WL 9543576 ........................................14

*Borden v. United States,*
   No. 19-5410, 2020 WL 4455238 .................................14, 17

*Davis v. United States,*
   589 U.S. 345 (2020) .............................................................8

*Fernandez-Ruiz v. Gonzales,*
   466 F.3d 1121 (9th Cir. 2006) ................................13, 14, 15

*Gonzales v. Duenas-Alvarez,*
   549 U.S. 183 (2007) .......................................................19, 20

*Greer v. United States,*
   593 U.S. 503 (9th Cir. 2021) ...............................................8

*Griffin v. United States,*
   670 F. App'x 431 (8th Cir. 2016) ........................................12

*Henderson v. United States,*
   568 U.S. 266 (2013) .............................................................8

*Johnson v. United States,*
   520 U.S. 461 (1997) .........................................................7, 9

*Leocal v. Ashcroft,*
   543 U.S. 1 (2004) ................................................................15

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                    **PAGE(S)**

*Mass v. United States,*
  736 F. App'x 102 (6th Cir. 2018).........................................12

*Paz-Negrete v. Garland,*
  2023 WL 4404348 (9th Cir. 2023) ...................................11

*Puckett v. United States,*
  556 U.S. 129 (2009).............................................8, 10, 21

*Sanchez v. Garland,*
  2024 WL 683204 (9th Cir. 2024) ...................................11

*United States v. Almonte-Nuñez,,*
  *uñez*, 771 F.3d 84 (1st Cir. 2014).......................................9

*United States v. Bacon,*
  884 F.3d 605 (6th Cir. 2018)...........................................9

*United States v. Bain,*
  925 F.3d 1172 (9th Cir. 2019).....................................10, 20

*United States v. Begay,*
  33 F.4th 1081 (9th Cir. 2022) ..................................5, 14, 15

*United States v. Bustamante-Conchas,*
  850 F.3d 1130 (10th Cir. 2017).........................................9

*United States v. Carpenter,*
  803 F.3d 1224 (11th Cir. 2015)...........................................9

*United States v. Castillo,*
  69 F.4th 648 (9th Cir. 2023)......................................8, 10

*United States v. Cotton,*
  535 U.S. 625 (2002)...................................................9

*United States v. Cuevas-Lopez,*
  934 F.3d 1056 (9th Cir. 2019)..........................................10

ii

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                              **PAGE(S)**

*United States v. Culling*,
No. 22-10341, 2024 WL 3023196 (9th Cir. 2024) ................................. 11

*United States v. Eckford*,
77 F.4th 1228 (9th Cir. 2023) .................................................... 7, 10, 21

*United States v. Fernandez*,
2023 WL 3477838 (9th Cir. 2023) ...................................................... 11

*United States v. Flores*,
508 F. App'x 864 (11th Cir. 2013) ...................................................... 12

*United States v. Fuertes*,
805 F.3d 485 (4th Cir. 2015) ................................................................ 9

*United States v. Gomez*,
115 F.4th 987 (9th Cir. 2024) ..................................................... passim

*United States v. Grajeda*,
581 F.3d 1186 (9th Cir. 2009) ........................................................... 12

*United States v. Heron-Salinas*,
566 F.3d 898 (9th Cir. 2009) ......................................................... 2, 12

*United States v. Jimenez-Arzate*,
781 F.3d 1062 (9th Cir. 2015) ..................................................... 12, 15

*United States v. Johnson*,
559 U.S. 133 (2010) .......................................................................... 13

*United States v. Lucas*,
101 F.4th 1158 (9th Cir. 2024) ............................................................ 9

*United States v. Man*,
2022 WL 17260489 (9th Cir. 2022) .................................................... 11

*United States v. Miller*,
833 F.3d 274 (3d Cir. 2016) ................................................................ 9

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                    **PAGE(S)**

*United States v. Miller,*
883 F.3d 998 (7th Cir. 2018)..................................................9

*United States v. Morton,*
2022 WL 17076203 (9th Cir. 2022)...................................11

*United States v. Mulverhill,*
833 F.3d 925 (8th Cir. 2016)..................................................9

*United States v. Olano,*
507 U.S. 725 (1993)..............................................................10

*United States v. Patrin,*
575 F.2d 708 (9th Cir. 1978)..................................................7

*United States v. Rutigliano,*
790 F.3d 389 (2d Cir. 2015) ..................................................9

*United States v. Sanchez-Arvizu,*
893 F.3d 312 (5th Cir. 2018)..................................................9

*United States v. Sanchez-Ruedas,*
452 F.3d 409 (5th Cir. 2006)................................................12

*United States v. Santos-Santos,*
463 F. App'x 728 (10th Cir. 2011)........................................12

*United States v. Vasquez-Gonzalez,*
901 F.3d 1060 (9th Cir. 2018)..........................2, 12, 13, 20

*United States v. Wijegoonaratna,*
922 F.3d 983 (9th Cir. 2019)................................................11

*United States v. Zhou,*
838 F.3d 1007 (9th Cir. 2016)....................................1, 8, 10

*Voisine v. United States,*
579 U.S. 686 (2016)..............................................................14

iv

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                    **PAGE(S)**

## State Cases

*People v. Aguilar*,
   16 Cal. 4th 1023 (1997).................................................................12

*People v. Atkins*,
   25 Cal. 4th 76 (2001).....................................................................19

*People v. Aznavoleh*,
   210 Cal. App. 4th 1181 (Ct. App. 2012)...................................15, 17

*People v. Lopez*,
   2010 WL 780369 (Cal. Ct. App. 2010) .........................................17

*People v. Wyatt*,
   229 P.3d 156 (Cal. Ct. App. 2010) ...............................................16

*People v. Yorba*,
   2008 WL 727693 (Cal. Ct. App. 2008) .........................................17

*People v. Williams*,
   26 Cal. 4th 779 (2001)............................................................18, 19

## Federal Statutes

18 U.S.C. § 16(a)................................................................................12

21 U.S.C. § 841 ...................................................................................3

28 U.S.C. § 2072 .................................................................................7

## State Statutes

Cal. Health & Safety Code § 11351 .....................................................3

Cal. Penal Code § 240...................................................................12, 13

Cal. Penal Code § 245(a)(1) .........................................................3, 4, 11

v

## TABLE OF AUTHORITIES (continued)

**DESCRIPTION** **PAGE(S)**

**Federal Rules**

Fed. R. Crim. P. 52(b) ........................................................ 2, 6, 22

**United States Sentencing Guidelines**

U.S.S.G. § 4B1.1 ...................................................................... 3

U.S.S.G. § 4B1.2(a)(1) ............................................................ 12

No. 23-435

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

JESUS RAMIRO GOMEZ,
*Defendant-Appellant.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA*
*DISTRICT COURT NO. SA CR 20-171-JVS*

## GOVERNMENT'S PETITION FOR
## REHEARING AND/OR REHEARING EN BANC
## (Decided Sept. 4, 2024—H. Thomas, Desai, Soto)

## I

## INTRODUCTION

This Court's "pure question of law" exception to plain-error review "is contrary to Rule 52(b), Supreme Court precedent, and the practice of our sister circuits." *United States v. Zhou*, 838 F.3d 1007, 1017 (9th Cir. 2016) (Graber, J., concurring). Applying that exception, the panel in this case overruled fifteen years of precedent holding that California

assault with a deadly weapon is a crime of violence. *See United States v. Vasquez-Gonzalez*, 901 F.3d 1060, 1068 (9th Cir. 2018); *United States v. Heron-Salinas*, 566 F.3d 898, 899 (9th Cir. 2009) (per curiam). The panel's decision was wrong because California assault with a deadly weapon requires the intentional use of force against another. And nothing in *Borden v. United States*, 593 U.S. 420 (2021)—which *agreed with* this Court's approach to crimes of violence—undermined this Court's precedent. Indeed, many panels of this Court have reached that same conclusion in unpublished decisions.

The panel's errors were also unnecessary. The issue in this case was raised for the first time on appeal, and so under Federal Rule of Criminal Procedure 52(b) it was subject to review only for plain error. The second prong of that test—whether any error was clear or obvious—should have been outcome determinative. The panel avoided that straightforward result only by invoking this Court's "pure question of law" exception, which exists in no other circuit and has no legal basis.

This Court should take this case en banc, overrule its foundationless exception to Rule 52(b), and affirm defendant's sentence.

## II

## ISSUE PRESENTED

Whether this Court's "pure question of law" exception to Rule 52(b)—which contravenes the plain text of the rule, Supreme Court precedent, and the practice of other circuits—should be overruled.

## III

## BACKGROUND

### A. Guilty Plea and Sentencing

Defendant is a drug dealer with a long criminal history. (*See* PSR ¶¶ 47–57.) He pled guilty in this case to selling a quarter pound of methamphetamine, in violation of 21 U.S.C. §§ 841(a), (b)(1)(A). (PSR ¶¶ 2–3, 22–24.) At sentencing, the district court applied the career-offender enhancement under U.S.S.G. § 4B1.1, because defendant had been convicted in California state court of both (1) possession with intent to sell cocaine, in violation of Cal. Health & Safety Code § 11351, and (2) assault with a deadly weapon other than a firearm, in violation of Cal. Penal Code § 245(a)(1). (PSR ¶¶ 40–41.) Defendant was convicted of assault with a deadly weapon because—as part of a mob—he smashed someone on the head with a beer bottle. (PSR ¶ 49.)

3

The career-offender designation raised defendant's Guidelines offense level from 27 to 34, which with his criminal history category of VI raised his sentencing range from 130–162 months to 262–327 months in prison.  (PSR ¶¶ 40–41, 107.)  Defendant did not object to his career-offender designation or his Guidelines range, and he was sentenced to 188 months' imprisonment.

## B.    Panel Decision

The panel vacated defendant's sentence on the ground that the district court improperly applied the career-offender enhancement. *United States v. Gomez*, 115 F.4th 987, 990 (9th Cir. 2024).  As a threshold matter, the panel decided to apply de novo review to defendant's claim that he was not a career offender, even though he "did not object to the career offender enhancement at sentencing."  *Id.* at 990–91.  Although the panel recognized that the Supreme Court has rejected several attempts to create exceptions to plain-error review, it decided to "exercise [its] discretion" to apply de novo review based on this Court's "pure question of law" exception.  *Id.*

On the merits, the panel held that California assault with a deadly weapon, Cal. Penal Code § 245(a)(1), is not a crime of violence,

and thus defendant was improperly classified as a career offender. *Id.* at 992–99. To reach that conclusion, the panel overruled fifteen years of precedent that had repeatedly "held that § 245(a) convictions are crimes of violence." *Id.* at 996–98 (collecting cases). According to the panel, these cases were implicitly overruled by the Supreme Court's decision in *Borden*, which held that crimes of violence "require uses of force with a mens rea more culpable than simple recklessness." *Id.* at 994. That was apparently true even though, "[b]efore *Borden*," this Court had held the same thing—"that crimes with a recklessness mens rea do not satisfy the elements clause," *id.* at 996—and even though multiple panels had rejected this same claim about *Borden* in unpublished decisions, *id.* at 998 n.7.

Visiting District Judge Soto concurred in the result. *Id.* at 999–1000. While he "agree[d] with the majority that § 245 does not constitute a crime of violence," he "also believe[d] the majority opinion cannot be reconciled with the en banc decision" in *United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022) (en banc). *Id.* at 1002. As a result, Judge Soto suggested that "en banc review may be appropriate to resolve this conflict." *Id.* at 999.

# IV

# ARGUMENT

This should have been an easy case.  Under this Court's longstanding precedent, California assault with a deadly weapon is a crime of violence.  The Supreme Court's recent decision in *Borden*— *agreeing with* this Court that merely reckless crimes are not crimes of violence—did not undermine that precedent.  At the very least, *Borden* did not *clearly or obviously* undermine this Court's precedent, meaning that under Rule 52(b) the district court's sentencing decision should be affirmed.

## A.  This Court Should Overrule the "Pure Question of Law" Exception

The panel erred by applying this Court's "pure question of law" exception to plain-error review.  That exception should be overruled.  Rule 52(b) of the Federal Rules of Criminal Procedure states that "[a]ny error, defect, irregularity, or variance" that was not "brought to the [district] court's attention" may be reviewed only for "plain error."  There is no dispute that "Gomez did not object to the career offender enhancement at sentencing."  115 F.4th at 990.  As a result, his claim was subject to the stringent requirements of plain-error review.

6

The only way the panel could reach the result it did was to ignore the Federal Rules of Criminal Procedure. The panel did so by invoking this Court's "pure question of law" exception: "When an appeal presents a pure question of law and the opposing party is not prejudiced by the defendant's failure to object, we may apply de novo review in our discretion." *Gomez*, 115 F.4th at 990. For the existence of such an exception, the panel cited *United States v. Eckford*, 77 F.4th 1228, 1231 (9th Cir. 2023), which followed a line of cases going back to *United States v. Patrin*, 575 F.2d 708 (9th Cir. 1978). *Patrin*, in turn, cited two civil cases for the proposition that Rule 52(b) can be disregarded "[w]hen the issue conceded or neglected in the trial court is purely one of law and either does not affect or rely upon the factual record developed by the parties." *Id.* at 712.

*Patrin* failed to acknowledge that the Federal Rules of Criminal Procedure are binding rules enacted by the Supreme Court, 28 U.S.C. § 2072, and identified no authority by which this Court could create an exception to those rules. It simply cited two civil cases, to which the criminal rules do not apply. In fact, lower courts have "no authority" to "create[e] out of whole cloth of an exception to" Rule 52(b). *Johnson v.*

*United States*, 520 U.S. 461, 466 (1997). Nor should courts "shield any category of errors from plain-error review." *Davis v. United States*, 589 U.S. 345 (2020) (per curiam). The Supreme Court has "repeatedly cautioned that any unwarranted extension of the authority granted by Rule 52(b) would disturb the careful balance it strikes between judicial efficiency and the redress of injustice." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (cleaned up). That is why, for example, a party must raise an objection below even if—as a practical matter—doing so would be futile. *See Greer v. United States*, 593 U.S. 503, 512 (9th Cir. 2021) (noting that a proposed "futility exception lacks any support in the text of the Federal Rules of Criminal Procedure or in this Court's precedents").

The "pure question of law" exception has been questioned or criticized over the years, *see United States v. Castillo*, 69 F.4th 648, 653 (9th Cir. 2023); *Zhou*, 838 F.3d at 1015–16 (Graber, J., concurring), and it does not appear to have any basis besides *Patrin*. No other circuit has such an exception. *Zhou*, 838 F.3d at 1016–17. Other circuits routinely apply the plain-error standard to purely legal questions, as does the Supreme Court. *See, e.g.*, *Henderson v. United States*, 568 U.S.

8

266, 270 (2013) (*Tapia* error); *United States v. Cotton*, 535 U.S. 625, 631 (2002) (*Apprendi* error); *Johnson v. United States*, 520 U.S. 461, 465 (1997) (jury/judge finding of materiality); *United States v. Almonte-Nuñez*, 771 F.3d 84, 89 (1st Cir. 2014); *United States v. Rutigliano*, 790 F.3d 389, 398–99 (2d Cir. 2015); *United States v. Miller*, 833 F.3d 274, 283 (3d Cir. 2016); *United States v. Fuertes*, 805 F.3d 485, 497 (4th Cir. 2015); *United States v. Sanchez-Arvizu*, 893 F.3d 312, 315 (5th Cir. 2018); *United States v. Bacon*, 884 F.3d 605, 610–11 (6th Cir. 2018); *United States v. Miller*, 883 F.3d 998, 1004 (7th Cir. 2018); *United States v. Mulverhill*, 833 F.3d 925, 930 (8th Cir. 2016); *United States v. Bustamante-Conchas*, 850 F.3d 1130, 1137 (10th Cir. 2017); *United States v. Carpenter*, 803 F.3d 1224, 1240–41 (11th Cir. 2015); *Al-Bahlul v. United States*, 767 F.3d 1, 9 (D.C. Cir. 2014).

This Court should take the opportunity to fix its precedent, just as it did with the "clear and convincing" evidence standard for sentencing enhancements. *See United States v. Lucas*, 101 F.4th 1158 (9th Cir. 2024) (en banc). The plain-error rule would have made a difference in this case, and properly applying it would have prevented the panel from erroneously upending this Court's precedent on an important issue of

9

criminal law. This is an appropriate vehicle for reconsidering this "errant line of cases en banc." *Zhou*, 838 F.3d at 1017.

## B. The Standard Is Dispositive Here Because Any Error Was Not Clear or Obvious

Had the panel properly applied plain-error review, it would have been compelled to affirm defendant's sentence. Unlike past decisions involving the "pure question of law" exception, this is not a case where the panel claimed (or where one might reasonably claim) that the outcome would be the same under either de novo or plain-error review.[1] That is because—even if the panel had been correct on the merits—the correctness of its decision was far from "plain."

"Plain error" requires an error that is "clear" or "obvious," *United States v. Olano*, 507 U.S. 725, 731 (1993), and not "subject to reasonable dispute," *Puckett*, 556 U.S. at 135. A plain error must be so "clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection." *United States v. Bain*, 925 F.3d 1172, 1178 (9th Cir. 2019). "An error cannot be plain where there is no controlling

---

[1] *Cf., e.g., Eckford*, 77 F.4th at 1231; *Castillo*, 69 F.4th at 653; *United States v. Cuevas-Lopez*, 934 F.3d 1056, 1060 (9th Cir. 2019).

authority on point and where the most closely analogous precedent leads to conflicting results." *United States v. Wijegoonaratna*, 922 F.3d 983, 991 (9th Cir. 2019) (quotation marks omitted).

That requirement is dispositive here. Even if there had been conflicting precedent—which there was not—the panel could not have found *plain* error, given the numerous judges of this Court who have concluded, in unpublished opinions *post-Borden*, that § 245(a)(1) is still a crime of violence.[2] Those judges' conclusions were not unreasonable— indeed they were correct, and consistent with the Supreme Court's decision in *Borden*.

### 1. *California assault has long been a crime of violence*

California Penal Code Section 245(a)(1) makes it a crime to "commit[] an assault upon the person of another with a deadly weapon

---

[2] *See United States v. Culling*, No. 22-10341, 2024 WL 3023196 (9th Cir. 2024) (Gould, Tallman, and R. Nelson, JJ.); *United States v. Fernandez*, 2023 WL 3477838 (9th Cir. 2023) (Friedland and Bennett, JJ.); *United States v. Man*, 2022 WL 17260489 (9th Cir. 2022) and *United States v. Morton*, 2022 WL 17076203 (9th Cir. 2022) (Rawlinson and Hurwitz, JJ.); *United States v. Hawkins*, Case No. 22-10324, Dkt. No. 20 (summary affirmance) (Callahan and Owens, JJ.); *cf. Paz-Negrete v. Garland*, 2023 WL 4404348 (9th Cir. 2023) (Bybee and Christen, JJ.); *Sanchez v. Garland*, 2024 WL 683204 (9th Cir. 2024) (Miller, Bade, and VanDyke, JJ., with respect to § 245(a)(2)).

or instrument other than a firearm." An "assault" is defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Penal Code § 240. "Deadly weapon or instrument" is not defined in the statute but has been interpreted to mean "any object used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." *People v. Aguilar*, 16 Cal. 4th 1023, 1028–29 (1997).

This Court has long held that California assault with a deadly weapon under § 245(a)(1) is categorically a "crime of violence." *See Vasquez-Gonzalez*, 901 F.3d at 1068; *United States v. Jimenez-Arzate*, 781 F.3d 1062, 1065 (9th Cir. 2015) (per curiam); *United States v. Grajeda*, 581 F.3d 1186, 1197 (9th Cir. 2009); *Heron-Salinas*, 566 F.3d at 899. So have other circuits. *See United States v. Sanchez-Ruedas*, 452 F.3d 409, 414 (5th Cir. 2006); *Mass v. United States*, 736 F. App'x 102, 104–05 (6th Cir. 2018); *Griffin v. United States*, 670 F. App'x 431, 432 (8th Cir. 2016); *United States v. Santos-Santos*, 463 F. App'x 728, 731–32 (10th Cir. 2011); *United States v. Flores*, 508 F. App'x 864, 866 (11th Cir. 2013). The California statute satisfies the "elements clause" found in both 18 U.S.C. § 16(a) and U.S.S.G. § 4B1.2(a)(1), which

provides that an offense is a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person of another."

The actus reus is the same for each: "physical force" means "*violent* force," *United States v. Johnson*, 559 U.S. 133, 140 (2010), which is what California law requires, *see* Cal. Penal Code § 240 ("violent injury"). The mens rea is the same, too. According to this Court's precedents, at least until the panel's decision in this case, "assault in California . . . requires an intentional use of force." *Vasquez-Gonzalez*, 901 F.3d at 1068. And an "*intentional* use of physical force" has been the requirement for a crime of violence in this Circuit since *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1130 (9th Cir. 2006) (en banc), which held—as did the Supreme Court in *Borden*—that "neither recklessness nor gross negligence is a sufficient mens rea to establish that a conviction is for a crime of violence." *Fernandez-Ruiz*, 466 F.3d at 1130; *accord Borden*, 593 U.S. at 438 (same).

## 2. Borden *did not change this Court's precedent*

This stable precedent remained undisturbed by the Supreme Court's decision in *Borden*, which resolved a circuit split on the

13

*Fernandez-Ruiz* question *in favor of* the Ninth Circuit. 593 U.S. at 425 & n.2.[3]

Thus, contrary to the panel, this Court's "prior cases" holding California assault to be a crime of violence are not "irreconcilable" with *Borden*. *Gomez*, 115 F.4th at 998. The only thing *Borden* changed about this Court's precedent was to distinguish ordinary or "simple recklessness" from "extreme" or "depraved-heart recklessness," the latter of which (as this Court later concluded) is still sufficiently intentional that it can constitute a "crime of violence against" another. *Borden*, 593 U.S. at 429 n.4; *see Begay*, 33 F.4th at 1093. *Borden* did not lay out a novel definition of "recklessness"—the "conscious disregard" standard comes from the Model Penal Code. *See* Model Penal Code § 2.02(2)(c) (1962); *see Voisine v. United States, 579 U.S.* 686, 691 (2016) (quoting this standard). This Court in *Fernandez-Ruiz* applied the very same definition. *See* 466 F.3d at 1126 ("conscious disregard"). And *Borden*, like *Fernandez-Ruiz*, held that recklessness

---

[3] *See* Brief for the United States, *Borden v. United States*, No. 19-5410, 2019 WL 9543576, *11; Brief for Petitioner, *Borden v. United States*, No. 19-5410, 2020 WL 4455238, *9 (citing *Fernandez-Ruiz*).

was insufficient to constitute a crime of violence.  Both explained that

with a crime like drunk driving, although the resulting collision may be

"violent," the car's reckless (or negligent) driver cannot be said to be

using force "against" anyone.  593 U.S. at 433, 440 (citing *Leocal v.*

*Ashcroft*, 543 U.S. 1 (2004)); *Fernandez-Ruiz*, 466 F.3d at 1129 ("crimes

of violence cannot be 'accidental'").[4]  This Court was on the same page

with *Borden* 15 years ahead of time.

    This Court's "subsequent cases" were consistent with *Borden*, too,

notwithstanding the panel's analytical criticisms.  *See Gomez*, 115 F.4th

at 996.  In reality, it was the panel that misunderstood *Borden*.  For

example, in criticizing *Jimenez-Arzate*, 781 F.3d at 1064–65, the panel

erroneously concluded that its factual examples (from California state

cases) were "accidental" rather than "intentional."  115 F.4th at 997

(citing examples from *People v. Aznavoleh*, 210 Cal. App. 4th 1181,

---

[4] The *Borden* plurality focused on the textual requirement that
any use of force be "against . . . another"; Justice Thomas's concurring
opinion focused on the phrase "use of force" itself.  *Compare* 593 U.S. at
430 (plurality) *with id.* at 446 (Thomas, J., concurring).  This Court has
subsequently treated the *Borden* plurality as controlling, *see Begay*, 33
F.4th at 1092, and the panel in this case followed suit (*see Gomez*, 115
F.4th at 993 & n.2), as does the government here.

1185, 1189 (Ct. App. 2012), and *People v. Wyatt*, 229 P.3d 156, 157 (Cal. 2010)). The panel thought that a defendant who "intentionally ran a red light while racing another car down the street even though he saw a car entering the intersection on the green" was acting recklessly or negligently. *Id.* (discussing *Aznavoleh*). But that is wrong: *Borden* itself shows that *Aznavoleh* describes knowing, not reckless, behavior.

*Borden* offered the following examples for purposeful, knowing, and reckless mental states, respectively:

- *Purposeful*: "Suppose a person drives his car straight at a reviled neighbor, desiring to hit him. The driver has, in the statute's words, 'used physical force against the person of another.'" 593 U.S. at 432 (cleaned up).

- *Knowing*: "Say a getaway driver sees a pedestrian in his path but plows ahead anyway, knowing the car will run him over. That driver, too, fits within the statute: Although he would prefer a clear road, he too drives his car straight at a known victim." *Id.*

- *Reckless*: "Imagine a commuter who, late to work, decides to run a red light, and hits a pedestrian whom he did not see. The commuter has consciously disregarded a real risk, thus endangering others. And he has ended up making contact with another person. . . . [But] the reckless driver has not directed force at another: He has not trained his car at the pedestrian understanding he will run him over." *Id.*

The panel's example—a defendant who "*saw a car* entering the intersection" (emphasis added)—matches *Borden*'s example of

16

knowledge, i.e., a "driver [who] sees a pedestrian in his path but plows ahead anyway." 593 U.S. at 432.

The other driving examples cited by the panel are similar. *See Gomez*, 115 F.4th at 995–96. In *People v. Lopez*, 2010 WL 780369 (Cal. Ct. App. 2010), the defendant swerved *towards* a law-enforcement officer, which is classic intentional conduct. As for *People v. Yorba*, 2008 WL 727693 (Cal. Ct. App. 2008), that case is like *Aznavoleh*—the jury found that the driver knew he was going to hit someone, rejecting his defense that he thought other drivers would get out of his way. *Id.* at *6.

The panel also characterized as "accidental" a defendant who "knew he was striking his young son with his fist, forearm, knee, and elbow, and that he used an amount of force a reasonable person would realize was likely to result in great bodily injury," because the defendant did not need to be "subjectively aware of the risks his actions posed." *Gomez*, 115 F.4th at 997 (discussing *Wyatt*, quotation marks omitted). According to the panel, "intent means not only intent to act, but a desire that the action will result in harm." *Id.* at 998. But that conflates knowledge with purpose. As *Borden* explained, a *purposeful*

17

mens rea would include a desire to harm, but a defendant acts "knowingly when he is aware that a result is practically certain to follow from his conduct, whatever his affirmative desire." 593 U.S. at 426 (cleaned up). A father who knowingly "strik[es] his young son with his fist," *Gomez*, 115 F.4th at 997, is knowingly using violent force, whether or not he desires the harm he's inflicting. That distinction is well established, *see, e.g.*, Model Penal Code 2.02(2)(a)–(b), and laid out in *Borden* itself. *See* 593 U.S. at 432 (neighbor example).

Consistent with these examples, the California Supreme Court has expressly held that "mere recklessness or criminal negligence is . . . not enough" to sustain a conviction under § 245(a)(1) or other California assault statutes. *People v. Williams*, 26 Cal. 4th 779, 788 (2001). To be sure, *Williams* also stated that the statute does not require "a specific intent to cause injury or a subjective awareness of the risk that an injury might occur." *Id.* at 790. But that is the same distinction between knowledge and purpose that the panel misunderstood. And *Williams* specifically stated that a defendant "may *not* be convicted based on facts he did not know but should have known." *Id.* (emphasis added).

18

The panel nonetheless homed in on *Williams'* statement that California law requires "an intentional act and actual knowledge of those facts sufficient to establish that *the act by its nature will probably and directly result* in the application of physical force against another." *Gomez*, 115 F.4th at 994 (emphasis added, quoting 26 Cal. 4th at 790). The panel thought that this probabilistic language set forth an objective standard that fell short even of *Borden*'s definition of recklessness. *Id.* Again the panel was wrong: this California-law standard—which derives from the "natural and probable consequences" doctrine—still requires "a greater mental state" than "mere recklessness." *People v. Atkins*, 25 Cal. 4th 76, 88–89 (2001).

Indeed, the Supreme Court addressed this very issue in a categorical-approach case, rejecting the argument that California's "natural and probable consequences" doctrine broadened a state crime beyond its federal generic definition by "mak[ing] a defendant criminally liable for conduct that the defendant did not intend." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 191 (2007) (accomplice liability for theft). As the Court explained, there is nothing "special" about the doctrine: the "'natural and probable consequences' doctrine" is

19

used in "some form of variation" by many states and the federal government. *Id.* at 191. Its purpose is simply to "permit jury inferences of intent," *id.*, not radically broaden state-law mens rea requirements.

This Court, too, addressed the issue in *Vasquez-Gonzalez*, rejecting a defendant's claim that *Williams'* "probabilistic language defines" a mens rea of negligence or recklessness. 901 F.3d at 1067. As *Vasquez-Gonzalez* explained, the "use of the word 'probably' did not suggest that the defendant did not intend the action, but reflects that the actual outcome of the action might not be certain." *Id.* Nothing in *Borden*—or any other intervening decision—somehow undermined that construction of California law. The panel got all of these issues wrong.

### 3. *At the very least, any error was not clear or obvious*

In light of the above, the plain-error standard was not satisfied here because there was no error at all. But even if there were some uncertainty about the correctness of the panel decision, the district court did not *clearly or obviously* err by adhering to Circuit precedent. A plain error must be so "clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection." *Bain*, 925 F.3d at 1178. And on top of that, "the 'clearly irreconcilable'

requirement" for intervening authority "is a high standard that demands more than mere tension between the intervening higher authority and prior circuit precedent." *Eckford*, 77 F.4th at 1233 (cleaned up).

Putting those two demanding standards together, it is far from clear or obvious that this Court's precedent on California assault is clearly irreconcilable with *Borden*. The many unpublished decisions reaching the opposite conclusion, as well as a straightforward comparison of elements, show that—at the very least—the issue is "subject to reasonable dispute." *Puckett*, 556 U.S. at 129. That should have been the end of the matter. The panel erred when it instead chose to bypass the plain-error rule, reach the merits unnecessarily, and overrule this Court's longstanding and consistent precedent.

# V

# CONCLUSION

The Court should rehear this case en banc, overrule its precedents creating a "pure question of law" exception to Rule 52(b), and affirm defendant's sentence.

DATED: November 18, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

DAVID R. FRIEDMAN
Assistant United States Attorney
Chief, Criminal Appeals Section

*s/ Alexander P. Robbins*

ALEXANDER P. ROBBINS
Assistant United States Attorney
Deputy Chief, Criminal Appeals
Section

Attorneys for Plaintiff-Appellant
UNITED STATES OF AMERICA

## CERTIFICATE OF COMPLIANCE

I certify that:

1.      This brief complies with the length limits permitted by Ninth Circuit Rule 40-1 because the brief contains 4,185 words, excluding any portions exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word.


DATED: November 18, 2024

*s/ Alexander P. Robbins*
ALEXANDER P. ROBBINS
Attorney for Plaintiff-Appellant
UNITED STATES OF AMERICA

# *United States v. Gomez,* 115 F.4th 987 (9th Cir. 2024)

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-435 |
| *Plaintiff - Appellee,* | D.C. No. 8:20-cr-00171-JVS-FWS-5 |
| v. | |
| JESUS RAMIRO GOMEZ, AKA Hunter, | OPINION |
| *Defendant - Appellant.* | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted March 5, 2024
Pasadena, California

Filed September 4, 2024

Before: Holly A. Thomas and Roopali H. Desai, Circuit
Judges, and James Alan Soto, District Judge.[*]

Opinion by Judge Desai;
Concurrence by Judge Soto

---

[*] The Honorable James Alan Soto, United States District Judge for the
District of Arizona, sitting by designation.

# SUMMARY[**]

## Criminal Law

The panel vacated a sentence and remanded for resentencing in a case in which the district court applied a career offender enhancement under U.S.S.G. § 4B1.1 on the ground that Gomez's prior conviction for assault with a deadly weapon under California Penal Code § 245(a)(1) was a "crime of violence."

To satisfy the elements clause of the career offender guideline, U.S.S.G. § 4B1.2(a)(1), a crime must require use of force with a mens rea more culpable than recklessness, as defined in *Borden v. United States*, 593 U.S. 420 (2021). Because California's assault statute sweeps in reckless uses of force, a conviction under § 245(a)(1) is not a categorical match with the elements clause and does not constitute a crime of violence.

The panel held that this court's previous decisions holding that § 245(a)(1) constitutes a crime of violence are clearly irreconcilable with *Borden*, which established a bright line rule: if a statute criminalizes uses of force committed only with a conscious disregard of a substantial risk to another person, it is not a crime of violence. This court's prior cases do not apply that test, and thus improperly categorize § 245(a)(1) as a crime of violence.

The government argued that this court can affirm on the ground that § 245(a)(1) satisfies an alternative definition of

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

crime of violence set forth in the career offender guideline's enumerated offenses clause, U.S.S.G. § 4B1.2(a)(2). The panel rejected this argument because aggravated assault under the enumerated offenses clause requires a mens rea greater than extreme recklessness.

The district court thus improperly applied the career offender enhancement at sentencing.

Concurring, District Judge Soto agreed with the majority that § 245(a) criminalizes conduct with a mental state short of recklessness, and therefore does not constitute a crime of violence according to *Borden*. Calling attention to what he fears will precipitate confusion and disparate outcomes in future cases, he wrote that the majority opinion cannot be reconciled with the en banc decision in *United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022), which held that a second-degree-murder conviction under 18 U.S.C. § 1111(a) is a crime of violence.

## COUNSEL

Robert J. Keenan (argued), Assistant United States Attorney, Santa Ana Section; Bram M. Alden, Assistant United States Attorney, Criminal Appeals Section Chief; E. Martin Estrada, United States Attorney; United States Department of Justice, Office of the United States Attorney, Santa Ana, California; David R. Friedman, Assistant United States Attorney, United States Department of Justice, Office of the United States Attorney, Los Angeles, California; for Plaintiff-Appellee.

Todd W. Burns (argued), Burns & Cohan Attorneys at Law, San Diego, California, for Defendant-Appellant.

# OPINION

DESAI, Circuit Judge:

Jesus Ramiro Gomez was sentenced to 188 months' incarceration for one count of distribution of methamphetamine. At sentencing, the district court applied a career offender enhancement, which doubled the recommended range for Gomez's sentence. To apply the enhancement, the district court found that Gomez's prior conviction for assault with a deadly weapon under California Penal Code § 245(a)(1) was a crime of violence. We have previously held that California Penal Code § 245(a)(1) constitutes a crime of violence, but our decisions are clearly irreconcilable with the Supreme Court's ruling in *Borden v. United States*, 593 U.S. 420 (2021). In light of *Borden*, we hold that convictions under California Penal Code § 245(a)(1) do not qualify as crimes of violence, and the district court incorrectly applied the career offender enhancement in this case.

# BACKGROUND

We do not recount the underlying facts of Gomez's conviction because they are largely immaterial on appeal. The relevant facts include that Gomez pleaded guilty to distribution of methamphetamine after selling drugs to an undercover agent, and the presentence report ("PSR") prepared by the probation office concluded that Gomez was a "career offender."

The career offender enhancement operates like a three-strike rule: if a defendant has three convictions for controlled substance offenses or "crimes of violence," the enhancement applies. U.S. Sent'g Guidelines Manual § 4B1.1 (U.S.

Sent'g Comm'n 2001) [hereinafter U.S.S.G.]. The career offender finding in Gomez's PSR was based on his current conviction, as well as his two prior convictions: one for assault with a deadly weapon under California Penal Code § 245(a)(1) and one for possession of cocaine for sale.

The career offender enhancement ultimately increased Gomez's base offense level from level 27 to level 34, resulting in an increase in the advisory sentencing range from 130–162 months to 262–327 months. The government did not contest that Gomez qualified as a career offender but sought a three-level downward variance and urged a sentence of 188 months' imprisonment. The district court followed the government's recommendation and sentenced Gomez to 188 months' incarceration. Gomez objected to the career offender finding for the first time on appeal.

## STANDARD OF REVIEW

Before reaching the merits of Gomez's claim, we must decide whether to apply de novo review or plain error review. We ordinarily review de novo whether a crime is a crime of violence. *United States v. Begay*, 33 F.4th 1081, 1087 (9th Cir. 2022) (en banc). But here, the government argues that we should apply plain error review because Gomez did not object to the career offender enhancement at sentencing. When an appeal presents a pure question of law and the opposing party is not prejudiced by the defendant's failure to object, we may apply de novo review in our discretion. *United States v. Eckford*, 77 F.4th 1228, 1231 (9th Cir. 2023).

The parties do not dispute that Gomez's appeal presents a pure question of law. And the government does not argue that it was prejudiced by Gomez's failure to object to the career offender enhancement at sentencing. The government

nevertheless argues that we must apply plain error review because, in its view, our precedent permitting de novo review for pure questions of law has been implicitly overruled by two recent Supreme Court cases. But the cases relied on by the government are not clearly irreconcilable with our court's precedent and practice. We may thus apply de novo review consistent with our precedent.

In *Davis v. United States*, the Supreme Court invalidated the Fifth Circuit's practice of "declining to review certain unpreserved *factual* arguments" under any standard of review, including plain error. 589 U.S. 345, 347 (2020) (per curiam) (emphasis added). Because *Davis* only addressed whether unpreserved *factual* issues are subject to plain error review or no review at all, its holding is not clearly irreconcilable with our precedent holding that we may review *legal*, not factual, issues de novo.

In *Greer v. United States*, the second case relied on by the government, the Supreme Court rejected a defendant's attempt to circumvent plain error review based on a "futility" exception. 593 U.S. 503, 511 (2021). The defendant argued that it would have been futile to object below, and thus his claim that he did not possess the requisite mens rea for a felon in possession conviction was not subject to plain error review. *Id.* at 511. Specifically, he alleged that objecting would have been futile because a "uniform wall of precedent" against his position existed in the circuit courts. *Id.* at 511–12.

The Court disagreed, explaining that neither the text of Federal Rule of Criminal Procedure 51 ("Rule 51") nor precedent supported a new "futility" exception to the plain error standard. *Id.* The Court emphasized that Rule 51, which defines how a party may preserve an objection for appeal,

was inconsistent with a futility exception because it "focus[ed] on a party's *opportunity* to object—rather than a party's likelihood of *prevailing* on the objection." *Id.* at 512. And the Court suggested that a "futility" exception was inconsistent with its precedent, noting that it had previously applied plain error review even when reviewing a claim for which virtually every circuit court had already rejected the defendant's position. *Id.* (citing *Johnson v. United States*, 520 U.S. 461 (1997)).

*Greer*'s reasoning does not mandate plain error review here. While in *Greer* the Court noted that a "futility" exception would have conflicted with its prior cases, *id.*, the government here does not identify any Supreme Court case which would have come out differently had the Supreme Court reviewed a pure question of law de novo instead of for plain error. Nor does the government identify any inconsistency of the kind identified in *Greer* between our approach and the federal rules. Even if there is "some tension" between *Greer*'s approach and our application of de novo review, our precedents permitting de novo review of a pure question of law are not "clearly irreconcilable" with *Greer*. *See Alonso-Juarez v. Garland*, 80 F.4th 1039, 1049 (9th Cir. 2023).

Indeed, we have applied de novo review in circumstances similar to Gomez's even since *Greer* and *Davis* were decided. In *Eckford*, 77 F.4th at 1231, we considered whether aiding and abetting Hobbs Act Robbery in violation of 18 U.S.C. § 1851(a) constituted a crime of violence. The parties in *Eckford* disputed whether the defendant had adequately preserved the issue for appeal. *Id.* We declined to resolve that dispute, however, explaining that regardless of whether the defendant raised the issue before the district court, we had the discretion to review the issue

de novo because it presented "a question that is purely one
of law . . . where the opposing party will suffer no prejudice
as a result of the failure to raise the issue in the trial court."
*Id.* (quoting *United States v. McAdory*, 935 F.3d 838, 841–
42 (9th Cir. 2019)). Because we have continued to apply this
exception even since *Greer* and *Davis*, neither case
constitutes an "intervening" decision abrogating our "prior
circuit precedent" permitting de novo review. *See Close v.
Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018).

Under our established precedent, because we do not need
a factual record to resolve the purely legal question before
us, we exercise our discretion to review the challenge de
novo.

## ANALYSIS

In this case, we must determine whether the career
offender enhancement was properly applied to Gomez as a
matter of law. The sentencing guidelines' career offender
enhancement applies if the defendant has three felony
convictions that qualify as a controlled substance offense or
a "crime of violence." U.S.S.G. § 4B1.1(a). Gomez's prior
conviction for possession of cocaine and current conviction
for distribution of methamphetamine are controlled
substance offenses. The career offender enhancement could
thus only apply to Gomez if he had a third felony conviction
for a crime of violence. The question before us then is
whether his prior conviction for assault with a deadly
weapon in California constitutes a "crime of violence."

We employ a "categorical approach," to determine
whether a crime is a crime of violence. *Taylor v. United
States*, 495 U.S. 575, 602 (1990). Under this approach, "the
facts of a given case are irrelevant," and our focus is
"whether the elements of the statute of conviction meet the

federal" crime of violence definition. *Borden*, 593 U.S. at
424. The least culpable act criminalized under the statute of
conviction must involve the level of force described in the
crime of violence definition. *Id.* If the statute criminalizes
any conduct less culpable than a federal crime of violence
requires, "the statute is not a categorical match," and it does
not qualify as a crime of violence. *See Begay*, 33 F.4th at
1091.

## I. California Penal Code § 245(a)(1) is not a crime of violence.

Under the categorical approach, we must determine
whether assault with a deadly weapon matches the federal
crime of violence definition. The sentencing guidelines
provide that a crime of violence is an offense that "has as an
element the use, attempted use, or threatened use of physical
force against the person of another." U.S.S.G. § 4B1.2(a)(1).
This definition is known as the "elements clause." *Begay*, 33
F.4th at 1090. Gomez argues that his § 245(a)(1) conviction
does not match the elements clause because it criminalizes a
lesser mens rea than the elements clause. We agree.

### A. To satisfy the elements clause, a crime must require the use of force with a mens rea more culpable than recklessness, as defined in *Borden v. United States*.

Before we analyze whether the assault statute and the
elements clause contain the same mens rea requirements, we
must determine the mens rea that the elements clause
requires. On its face, the elements clause does not require a
specific mens rea, but the Supreme Court has interpreted the
clause to require a mens rea more culpable than recklessness.

In *Leocal v. Ashcroft*, the Supreme Court addressed whether a statute criminalizing negligent or accidental uses of force satisfies the elements clause.[1] 543 U.S. 1, 8–9 (2004) (analyzing Florida's DUI statute). The Court held negligent or accidental conduct does not satisfy the elements clause, reasoning that "[t]he key phrase in [the elements clause]—the 'use . . . of physical force against the person . . . of another'—most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Id.* at 9. However, the Court declined to address whether offenses requiring proof of a reckless use of force qualified as crimes of violence. *Id.* at 13.

*Borden* answered this question. 593 U.S. at 445. In *Borden*, the defendant argued that his conviction for reckless aggravated assault under Tennessee law did not satisfy the elements clause because the elements clause requires the statute of conviction to have a mens rea more culpable than recklessness. *Id.* at 424–25. The Court agreed in a plurality opinion.

The plurality held that the mens rea requirement stems from the language requiring that force be used "against the person . . . of another." *Id.* at 427–28; U.S.S.G. § 4B1.1(a)*.* It relied on the Model Penal Code's mens rea definitions, noting that a person acts recklessly when he "consciously disregards a substantial and unjustifiable risk." *Id.* at 427

---

[1] *Leocal* analyzed the elements clause in Title 18 of the U.S. Code, which is nearly identical to the elements clause in the sentencing guidelines. *See* 18 U.S.C. § 16(a) ("The term 'crime of violence' means an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." (cleaned up)). We regularly treat cases interpreting crimes of violence as applicable irrespective of the statute or guideline from which it originates. *Begay*, 33 F.4th at 1091 n.6.

(quoting Model Penal Code § 2.02(2)(c) (1985)). The more culpable mens rea, knowledge, is defined as "aware[ness] that [a] result is practically certain to follow" from a person's conduct. *Id.* at 426 (quoting *United States v. Bailey*, 444 U.S. 394, 404 (1980)) (second alteration in original). And the most culpable mens rea, purpose or intent, is when a person "consciously desires a particular result." *Id.* (citing Model Penal Code § 2.02(2)(a) (1985)) (cleaned up). The plurality held that "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." *Id*. at 429. Because "[r]eckless conduct is not aimed in that prescribed manner," it does not satisfy the elements clause. *Id.*

Justice Thomas, concurring in the judgment, agreed that reckless crimes do not satisfy the elements clause. His analysis relied on a different phrase in the statute: "use of physical force." *Id.* at 446 (Thomas, J., concurring). In Justice Thomas's view, the use of physical force "has a well-understood meaning applying only to intentional acts designed to cause harm." *Id.* (quoting *Voisine v. United States*, 579 U.S. 686, 713 (2016) (Thomas, J., dissenting)). Because the reckless aggravated assault statute at issue "could be violated through mere recklessness," it did not satisfy the elements clause.[2] *Id.*

---

[2] The government alleges that the plurality's reasoning is not binding because a majority of justices did not agree. But "when a majority of the Justices agree upon a single underlying rationale and one opinion can reasonably be described as a logical subset of the other," the opinion is binding. *United States v. Davis*, 825 F.3d 1014, 1021–22 (9th Cir. 2016). Here, the plurality opinion is narrower than Justice Thomas's opinion because Justice Thomas would have held the elements clause encompasses only "intentional acts designed to cause harm." *Borden*,

USA V. GOMEZ

After *Borden*, the elements clause is only satisfied by crimes that require uses of force with a mens rea more culpable than simple recklessness. Put another way, if a person can be convicted under a criminal statute by using force against another with only the "conscious[] disregard[]" of a "substantial and unjustifiable risk," the crime is not a crime of violence. *Id.* at 427.

We now turn to analyzing whether California's assault statute satisfies the elements clause. The government argues that California's assault statute does not criminalize merely reckless uses of force under this definition. We disagree. Gomez was previously convicted under California Penal Code § 245(a)(1) for assault with a deadly weapon that is not a firearm. In California, assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Penal Code § 240. The assault statute does not, on its face, require a specific mens rea. *Id.* We thus look to the California courts' interpretation of the statute to determine the requisite mens rea. *Johnson v. United States*, 559 U.S. 133, 138 (2010) (explaining that while interpreting the elements clause is a question of federal law, the court is bound by the state court's "interpretation of state law, including its determination of the elements" of the relevant crime). California's assault statute has not changed since 1872 and does not use or acknowledge modern mens rea labels. *People v. Williams*, 29 P.3d 197, 200 (Cal. 2001). Although several California Supreme Court cases have attempted to clarify the law, *see, e.g.*, *People v. Colantuono*,

---

593 U.S. at 446 (Thomas, J., concurring). And since *Borden*, we have articulated the plurality's reasoning in an en banc decision, making it binding precedent in this circuit. *Begay*, 33 F.4th at 1092–94 (majority op.), 1100 n.2 (Ikuta, J., dissenting in part).

865 P.2d 704 (Cal. 1994); *Williams*, 29 P.3d 197, "[t]he *mens rea* required for assault under California law has been the subject of a long, tortured, and ongoing set of explanations in the California courts," *United States v. Grajeda*, 581 F.3d 1186, 1193 (9th Cir. 2009).

The prevailing definition of the assault mens rea, according to the California Supreme Court, is "an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." *Williams*, 29 P.3d at 204. This definition does not fit neatly within any of the mens rea definitions provided in *Borden*, but it falls short even of *Borden*'s definition of recklessness. To illustrate, we first explain how California's definition of the mens rea for assault necessarily captures uses of force with mental states less culpable than intent or knowledge.

For starters, the assault statute criminalizes uses of force with a mens rea less culpable than intent. The California Supreme Court expressly recognizes that § 245(a)(1) does not require an intent to cause harm; it merely requires an intent to do the act that results in harm. *Williams*, 29 P.3d at 204 ("[W]e hold that assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur."). The "intentional act" requirement does not equate to an "intent" or "purpose" mens rea. It only requires that the act in question be volitional. *See id.* at 201. This is directly contrary to the definition of purpose or intent in *Borden*, which is to "consciously desire[] a particular result." 593 U.S. at 426 (cleaned up). Even in *Leocal*, the volitional act of driving under the influence did not establish that the use of force was "intentional." *See* 543 U.S. at 9. Simply put, volition does not establish intent to apply force to another person.

14                          USA v. GOMEZ

A recent, post-*Borden* case confirms this conclusion. *See Gutierrez v. Garland*, 106 F.4th 866 (9th Cir. 2024). In *Gutierrez*, we held that carjacking under California Penal Code § 215 is not categorically a crime of violence.[3] *Id.* at 874. Even though carjacking necessarily involves the act of taking a vehicle with the intent to deprive its owner, the elements clause requires more. *Id.* at 873. *Gutierrez* illustrates that when a state statute does not assign a sufficiently culpable mens rea to the use of force itself—as opposed to other elements of the crime—it fails to satisfy the elements clause. *Id.* at 876 ("That California courts do not consider a defendant's *mens rea* as to [the use of force] element [of carjacking] further suggests that a defendant can be convicted for accidental or reckless use of 'force.'").

The government argues that the assault statute requires, at the very least, a knowing use of force. While superficially appealing, this reading ignores the California Supreme Court's own interpretations of the statute. The California Supreme Court has expressly held that assault "does not require . . . a subjective awareness of the risk that an injury might occur." *Williams*, 29 P.3d at 204. *Williams* makes this point even clearer, noting that a "defendant who honestly believes that his act was not likely to result in a battery is

---

[3] Under California Penal Code § 215,

> [c]arjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear.

Cal. Penal Code § 215(a).

still guilty of assault if a reasonable person, viewing the facts known to defendant, would find that the act would directly, naturally, and probably result in a battery." *Id.* at 203 n.3. This description contradicts the definition of knowledge in *Borden*, which is "aware[ness] that [a] result is practically certain to follow from [one's] conduct." 593 U.S. at 426 (second alteration in original). Although California requires knowledge of the facts that make the action the type of act likely to result in harm, this does not equate to the subjective awareness that harm "is practically certain" to result. *See id.*

Indeed, "knowledge of [the] . . . facts sufficient to establish that the act by its nature will probably" result in force, *Williams*, 29 P.3d at 204, is less culpable even than *Borden*'s recklessness definition—that is, conscious disregard of a substantial risk, 593 U.S. at 427. To illustrate, *Borden* explains that a driver who "sees a pedestrian in his path but plows ahead anyway, knowing the car will run him over" has knowledge and satisfies the elements clause. *Id.* at 432. It further explains that a driver who "decides to run a red light, and hits a pedestrian whom he did not see," is merely reckless, and does not satisfy the elements clause. *Id.* The California assault statute not only sweeps in both types of conduct, but does so even when the defendant is not conscious of the risk he disregards. *See, e.g.*, *People v. Yorba*, No. G038293, 2008 WL 727693, at *6 (Cal. Ct. App. Mar. 19, 2008) (affirming defendant's § 245(a)(1) conviction for running a red light during a police chase because "[a]ny reasonable person under virtually any circumstances would be aware a collision was a probable result of speeding through a traffic-light-controlled intersection against a red light"); *People v. Lopez*, No. D053543, 2010 WL 780369, at *5 (Cal. Ct. App. Mar. 9, 2010) (affirming defendant's § 245(a)(1) conviction for

swerving toward an officer on the highway to avoid a tire
deflation device because "a reasonable person [in
defendant's position] would realize that [his] act by its
nature would directly and probably result in the application
of force" to the officer). These cases show that the least
culpable conduct covered by the California assault statute
does not require an intent to apply force, knowledge that an
action will cause force to be applied to another, or even
subjective awareness of a risk that such force will result.

The government argues that we need only look to the
label California uses to describe the mens rea for assault. It
points to one sentence in *Williams* stating that "mere
recklessness or criminal negligence" is insufficient to satisfy
the assault statute. 29 P.3d at 203. But this argument
improperly relies on labels, thus elevating form over
substance. The *Williams* court itself explained that the
quoted language uses "recklessness" synonymously with
criminal negligence, rather than with the modern definition
of recklessness. *Id.* at 203 n.4 (explaining that the court uses
recklessness "in its historical sense as a synonym for
criminal negligence, rather than its more modern conception
as a subjective appreciation of the risk of harm to another").
Given that the court meant only that criminal negligence
does not satisfy the assault statute, this statement from
*Williams* does not answer the question before us: whether the
assault statute criminalizes reckless uses of force.

Because we conclude California's assault statute sweeps
in reckless uses of force, as defined in *Borden*, a conviction
under § 245(a)(1) is not a categorical match with the
elements clause and does not constitute a crime of violence.

**B.** *Borden* **is clearly irreconcilable with our cases holding that California Penal Code § 245(a) is a crime of violence.**

Our prior holdings to the contrary are not binding. Before *Borden*, we held that § 245(a) convictions are crimes of violence. *United States v. Heron-Salinas*, 566 F.3d 898 (9th Cir. 2009) (per curiam); *Grajeda*, 581 F.3d 1186; *United States v. Jimenez-Arzate*, 781 F.3d 1062 (9th Cir. 2015) (per curiam); *United States v. Vasquez-Gonzalez*, 901 F.3d 1060 (9th Cir. 2018). But these holdings are clearly irreconcilable with intervening precedent, namely *Borden*. *See Miller v. Gammie*, 335 F.3d 889, 892–93 (9th Cir. 2003) (en banc); *United States v. Lindsey*, 634 F.3d 541, 548 (9th Cir. 2011) ("In order to be controlling on the panel, a higher court's decision must undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." (cleaned up)).

Before *Borden*, we held that crimes with a recklessness mens rea do not satisfy the elements clause. *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir. 2006) (en banc). But our subsequent cases analyzing § 245(a)(1) did not use a definition of recklessness consistent with *Borden*'s. Most of our cases focused on whether § 245(a) can sustain a conviction for unintentional conduct and concluded it cannot. As a result, we have not conducted a meaningful analysis of whether the statute is satisfied by *reckless* uses of force using *Borden*'s definition of recklessness. This gap in analysis puts our holdings at odds with *Borden*, which requires analyzing whether the statute criminalizes uses of force with a reckless mens rea.

In *United States v. Grajeda*, we held that § 245(a)(1) was a crime of violence because it requires "'violent' and

18                                       USA V. GOMEZ

'active'" force and "not merely accidental" uses of force.[4]
581 F.3d at 1195–96. We were thus satisfied that § 245(a)(1)
did not criminalize merely "reckless" conduct. *Id.* at 1195.[5]
But this analysis fails to consider *Borden*'s more rigorous
definition of recklessness. 593 U.S at 427. *Grajeda*'s
conclusion that a crime is a crime of violence whenever it
requires at least (1) active force and (2) non-accidental
conduct is irreconcilable with *Borden*'s holding that a crime
is not a crime of violence if it encompasses a mens rea in
which the defendant acts deliberately, but consciously

---

[4] Before *Grajeda*, we concluded in *Heron-Salinas*, that assault with a
firearm under California Penal Code § 245(a)(2) was a crime of violence.
*Heron-Salinas*, 566 F.3d at 899. But *Heron-Salinas* based its reasoning
primarily on a portion of the statute that the Supreme Court has since
held is unconstitutionally vague. *Id.*; *see also* 18 U.S.C. § 16(b)
("'[C]rime of violence' means . . . any other offense that is a felony and
that, by its nature, involves a substantial risk that physical force against
the person or property of another may be used in the course of
committing the offense."); *see also Sessions v. Dimaya*, 584 U.S. 148,
152 (2018) (holding that this clause is unconstitutionally vague). The
only independent analysis based on the constitutional portion of the
statute—the elements clause—conclusively held, "[t]he use of a firearm
in the commission of the crime is enough to demonstrate the actual force
was attempted or threatened." *Heron-Salinas*, 566 F.3d at 899. This does
not address the mens rea requirement and is largely inapplicable because
Gomez was convicted under § 245(a)(1), which specifically criminalizes
assaults with "a deadly weapon or instrument *other* than a firearm"
(emphasis added).

[5] *Grajeda* also relied on our decision in *Heron-Salinas*, as well as the
Supreme Court of California's statement in *Williams* that "mere
recklessness or criminal negligence is . . . not enough." *Id.* at 1194–96
(quoting *Williams*, 29 P.3d at 203). As we have explained above,
however, neither of these decisions shows that § 245(a)(1) satisfies
*Borden*'s mens rea requirement.

disregards an unjustifiable—though not practically certain—risk.

Next, *Jimenez-Arzate* considered whether two California cases undercut the holding of *Grajeda* and demonstrated that the assault mens rea did not match the mens rea of the elements clause. 781 F.3d at 1064–65. In one California case, the Court of Appeal upheld a conviction under § 245(a)(1) when the defendant "intentionally ran a red light while racing another car down the street even though he saw a car entering the intersection on the green," and made "no effort to stop despite a passenger warning him that he needed to stop." *Id.* at 1064 (citing *People v. Aznavoleh*, 210 Cal. App. 4th 1181, 1185, 1189 (2012)). And in the other, the Supreme Court of California upheld a conviction for manslaughter and assault on a child causing death because "substantial evidence established that defendant knew he was striking his young son with his fist, forearm, knee, and elbow, and that he used an amount of force a reasonable person would realize was likely to result in great bodily injury." *Id.* (quoting *People v. Wyatt*, 229 P.3d 156, 157 (Cal. 2010)).

We held that these California cases did not demonstrate that § 245(a)(1) criminalizes conduct less culpable than the elements clause requires. We noted that in both cases the defendant either "heedlessly disregard[ed] a perceived likelihood of death or grave injury to others" or "a reasonable person would have recognized the dangers" of the defendant's actions. *Jimenez-Arzate*, 781 F.3d at 1064–65. We also recognized that under the assault statute, the defendant need "not [be] subjectively aware of the risks" his actions posed. *Id.* at 1065. This analysis is plainly at odds with *Borden* because, under *Borden*, even a subjective

20      USA v. GOMEZ

awareness of a risk of harm is not sufficient. 593 U.S. at 427, 429.**⁶**

In our most recent decision on this issue, we held that § 245(a)(1)'s "intentional act" requirement establishes that it is an intentional crime, which satisfies the elements clause. *Vasquez-Gonzalez*, 901 F.3d at 1068 (holding that the intentional act requirement in § 245(a) established an intentional use of force under the elements clause). But this is irreconcilable with *Borden*'s definition of intent. *Borden* explains that intent means not only intent to act, but a desire that the action will result in harm. 593 U.S. at 426. We also did not properly consider whether the statute criminalizes a mens rea more culpable than recklessness in *Vasquez-Gonzalez*. Although we quoted *Williams*, saying "recklessness or criminal negligence" is insufficient under

---

⁶ Several of our colleagues have observed that the categorical approach yields inconsistent or absurd results. *See Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1149–50 (9th Cir. 2020) (Graber, J., joined by Tunheim, J., concurring) ("The categorical approach requires us to perform absurd legal gymnastics, and it produces absurd results."); *United States v. Brown*, 879 F.3d 1043, 1051 (9th Cir. 2018) (Owens, J., concurring) ("This case . . . typifies how far this doctrine has deviated from common sense. . . . [T]his is a really, really bad way of doing things."); *United States v. Valdivia-Flores*, 876 F.3d 1201, 1210 (9th Cir. 2017) (O'Scannlain, J., specially concurring) ("[This case] illustrates the bizarre and arbitrary effects of the ever-spreading categorical approach for comparing state law offenses to federal criminal definitions."). Indeed, the categorical approach requires courts to conclude that obviously violent crimes are not "crimes of violence," such as the fatal beating of a child in *Wyatt* or, even more strikingly, the arson charges from the Boston Marathon bombing, which killed three and injured hundreds. *See* 229 P.3d at 157; *United States v. Tsarnaev*, 968 F.3d 24, 102 (1st Cir. 2020). But absent Supreme Court or congressional action directing a departure from the categorical approach, we must continue to apply it.

the assault statute, as noted above, this phrase only encompasses criminal negligence. *Vasquez-Gonzalez*, 901 F.3d at 1067. Our analysis thus fails to comply with *Borden*'s requirements.[7]

In sum, *Borden* establishes a bright line rule: if a statute criminalizes uses of force committed only with a conscious disregard of a substantial risk to another person, it is not a crime of violence. Our prior cases do not apply that test, and thus improperly categorize § 245(a)(1) as a crime of violence in violation of *Borden*.[8] They are not merely in tension with *Borden*; they are irreconcilable.

## II. Assault under § 245(a)(1) also does not satisfy the enumerated offenses clause.

The government argues that we can affirm on the ground that § 245(a)(1) satisfies an alternative definition of a crime

---

[7] Our court's unpublished cases post-*Borden* are not persuasive because they, too, conducted a labels-over-substance inquiry. *See, e.g.*, *United States v. Man*, No. 21-10241, 2022 WL 17260489, at *1 (9th Cir. Nov. 29, 2022) (stating, without analyzing the definition of recklessness under *Borden*, "we have previously held that section 245 offenses are crimes of violence—and thus, violent felonies—precisely because the statute requires a mens rea greater than recklessness"); *see also United States v. Morton*, No. 21-10291, 2022 WL 17076203, at *1 (9th Cir. Nov. 18, 2022) (same).

[8] In a post-*Borden* case, *United States v. Begay*, our en banc court held that second-degree murder under 18 U.S.C. § 1111(a), which requires an "extreme recklessness" mens rea, constitutes a crime of violence. 33 F.4th at 1093–94. The *Begay* court held that second-degree murder is a crime of violence because, unlike crimes committed with simple recklessness, the recklessness required for second-degree murder must be "extreme," and the risk disregarded must specifically be a risk *to human life*. *Id.* at 1094–95. Section 245 does not involve the type of extreme recklessness at issue in *Begay*, and thus *Begay* does not control the outcome here.

of violence. A conviction can also constitute a crime of
violence if it falls within a narrow category of enumerated
offenses. U.S.S.G. § 4B1.2(a)(2) (specifying several
offenses that constitute crimes of violence: "murder,
voluntary manslaughter, kidnapping, aggravated assault, a
forcible sex offense, robbery, arson, extortion, or the use or
unlawful possession of a firearm"). The government argues
that § 245(a)(1) meets the definition for aggravated assault
under the enumerated offenses clause. But aggravated
assault under the enumerated offenses clause requires a mens
rea greater than extreme recklessness. *United States v.
Garcia-Jimenez*, 807 F.3d 1079, 1085 (9th Cir. 2015). And
as explained above, § 245(a)(1) does not limit its scope to
uses of force with a mens rea greater than recklessness, let
alone extreme recklessness. It thus does not constitute
aggravated assault under the enumerated offenses clause.

## CONCLUSION

For the foregoing reasons, convictions under California
Penal Code § 245(a)(1) are not crimes of violence and
cannot serve as the predicate for the career offender
enhancement. The district court thus improperly applied the
career offender enhancement to Gomez at sentencing. We
remand for the district court to correct this error and
resentence Gomez accordingly.

**VACATED and REMANDED.**

SOTO, District Judge, concurring:

I agree with the majority that § 245(a) of the California Penal Code criminalizes conduct with a mental state short of recklessness, and therefore does not constitute a crime of violence according to *Borden v. United States*, 593 U.S. 420 (2021). However, an en banc panel of this circuit reached a different conclusion in a case concerning substantively the same facts and law. *See United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022) (holding that a second-degree-murder conviction under 18 U.S.C. § 1111(a) is a crime of violence). The majority opinion distinguishes *Begay* on the ground that a conviction under § 1111 requires "extreme recklessness" while a conviction under § 245 requires only "ordinary recklessness." For the reasons explained below, I do not believe this distinction fully addresses the tension that *Begay* creates with *Borden*. Further, I believe this conflict may lead to inconsistent outcomes in future cases and that en banc review may be appropriate to resolve this conflict.

## I.

*Borden* held that a crime of violence requires the "targeted" use of force. A crime of violence must include the "use, attempted use, or threatened use of physical force against the person or property of another."[1] U.S.S.G. § 4B1.2(a)(1). In *Borden*, a plurality of the Supreme Court held that "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual."[2] 593 U.S. at 429.

---

[1] This language, in its various appearances across federal law, is called the "elements clause."

[2] The plurality opinion from *Borden* is binding for the reasons articulated in footnote 2 of the majority opinion.

Therefore, a crime of violence requires that a perpetrator direct his action at, or target, another individual.**[3]** Because "reckless conduct is not aimed in that prescribed manner," a crime that can be committed with a reckless mens rea is not a crime of violence. *Id.*

## II.

*Begay* outlines conduct that satisfies *Borden's* "targeting" requirement. In *Begay*, a post-*Borden* en banc panel concluded that second-degree murder under 18 U.S.C. § 1111(a) constitutes a crime of violence. 33 F.4th at 1096. Second-degree murder is the unlawful killing of a human being with malice aforethought. § 1111(a). "Malice aforethought" encompasses "four kinds of mental states: (1) intent to kill; (2) intent to do serious bodily injury; (3) depraved heart (i.e., reckless indifference); and (4) intent to commit a felony." *United States v. Pineda-Doval*, 614

---

[3] The plurality used the following example to illustrate the "targeting" requirement:

> A commuter who, late to work, decides to run a red light, and hits a pedestrian whom he did not see. The commuter has consciously disregarded a real risk, thus endangering others. And he has ended up making contact with another person, as the Government emphasizes. *See* Brief for United States 23. But as the Government just as readily acknowledges, the reckless driver has not directed force at another: He has not trained his car at the pedestrian understanding he will run him over. *See id.*, at 26. . . . [B]ecause his conduct is not opposed to or directed at another—he does not come within the elements clause. He has not used force "against" another person in the targeted way that the clause requires.

593 U.S. at 432.

F.3d 1019, 1038 (9th Cir. 2010). Because the en banc panel reasoned that depraved-heart murder encompasses the "least culpable conduct" for a conviction under § 1111,[4] the panel analyzed whether depraved-heart murder requires a perpetrator to "direct his action at, or target" another individual. *Begay*, 33 F.4th at 1091. In concluding that it does, the panel held that any conviction under § 1111 constitutes a federal crime of violence. *Id.* at 1093.

Judge Ikuta dissented, highlighting the many ways that a conviction under § 1111 can be sustained without a perpetrator "direct[ing]" or "target[ing]" their force at another individual. *Begay*, 33 F.4th at 1103-04 (citing *United States v. Merritt*, 961 F.3d 1105, 1118 (10th Cir. 2020) (upholding depraved-heart murder conviction for a defendant who was driving drunk in the wrong lane resulting in the death of another motorist); *United States v. Sheffey*, 57 F.3d 1419, 1431 (6th Cir. 1995) (upholding depraved-heart murder conviction for a defendant who was driving under the influence, resulting in the death of another motorist, despite the defendant's testimony "that he did not intend to hurt anybody"); *State v. Davidson*, 267 Kan. 667, 987 P.2d 335, 344 (1999) (upholding depraved-heart murder conviction for a defendant whose dogs escaped and mauled a child to death after the defendant failed to properly train and secure them); *People v. Arzon*, 92 Misc.2d 739, 401 N.Y.S.2d 156, 157, 159 (N.Y. Sup. Ct. 1978) (charging a defendant with depraved-heart murder after he set fire to a couch in an abandoned building which later contributed to the death of a responding fireman)).

---

[4] The categorical approach requires the court to analyze whether the "least culpable conduct" criminalized by a statute satisfies the federal elements clause.

Nevertheless, under the majority's reasoning in *Begay*, the above-cited conduct satisfies the "targeting" requirement articulated in *Borden*.

## III.

This panel looks at identical conduct to that outlined in *Begay* and concludes that it does not satisfy *Borden's* "targeting" requirement. In her dissent, Judge Ikuta cites *Stallard v. State*, 209 Tenn. 13, 348 S.W.2d 489, 490 (1961), a case that would satisfy *Borden's* targeting requirement under the *Begay* majority's reasoning. In that case, the defendant was convicted of second-degree murder for killing another motorist after he drove on the wrong side of the road while racing another vehicle. *Id.* at 490. The defendant, who was racing his friend up a hill, collided with the victim's vehicle at the crest, never slowing his speed, presumably because he never saw the victim's car before impact. *Id.*

In contrast, the majority here relies on *People v. Aznavoleh,* 210 Cal. App. 4th 1181, 148 Cal. Rptr. 3d 901, 903 (2012), as an example of a case that *does not* satisfy Borden's "targeting" requirement. In that case, the defendant was convicted of assault with a deadly weapon for severely injuring another motorist after he deliberately ran a red light while racing another vehicle on a busy city street. *Id.* at 1183-84. There, the defendant saw the victim's car entering the intersection on the green and never slowed his speed, despite his passenger imploring him to stop. *Id.* at 1189.

An inescapable tension arises when two panels look at nearly identical conduct and reach different conclusions. The majority here attempts to create a meaningful distinction between these cases, stating that the modifier "extreme" before the word "reckless" makes § 1111 conduct more

"targeted" than § 245 conduct. The majority elevates form over substance.

It is true that while § 1111 requires a mens rea of "extreme" recklessness to sustain a conviction, an individual can be convicted under § 245 for conduct that is merely reckless. One could therefore interpret § 1111 as requiring a higher degree of culpability than § 245, seemingly satisfying *Borden*'s "greater-than-recklessness" standard. But this interpretation ignores *Borden's* targeting requirement. Indeed, "greater than recklessness" is not the mens rea standard articulated in *Borden*. Rather, it is a characterization of a mental state that satisfies *Borden*'s "targeted" or "directed" use of force requirement. *See Borden,* 593 U.S. at 429 ("The phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual. Reckless conduct is not aimed in that prescribed manner.").

Adding the modifier "extreme" before "recklessness" does not make the least culpable conduct criminalized under § 1111 any more *targeted* than the least culpable conduct criminalized under § 245. Rather, the function of "extreme" is to add the "human-life" element.[5] The human-life element only pertains to the consequences of one's actions, namely the loss of human life. I do not dispute that extreme recklessness is more severe than ordinary recklessness, only that the increase in severity is along an axis not relevant to the *Borden* analysis. I see no meaningful distinction between

---

[5] Unlike ordinary recklessness, which requires disregard of a substantial and unjustifiable risk, extreme recklessness requires disregard for human life. *Begay* at 443.

the minimum level of targeting required for ordinary recklessness and that required for extreme recklessness.

The tension between *Begay* and *Borden* has already led to inconsistent results. Three subsequent Circuit decisions, albeit unpublished, have concluded that the conduct required for a conviction under § 245 satisfies *Borden's* mens rea requirement. *United States v. Man*, No. 21-10241, 2022 WL 17260489, at *1 (9th Cir. Nov. 29, 2022); *United States v. Morton*, No. 21-10291, 2022 WL 17076203, at *1 (9th Cir. Nov. 18, 2022); *Paz-Negrete v. Garland*, No. 16-73889, 2023 WL 4404348, at *1 (9th Cir. July 7, 2023). That is because there is no meaningful distinction between the conduct required to sustain a conviction under § 1111 and the conduct required to sustain a conviction under § 245.

## IV.

Under *Begay,* a conviction for a crime that requires no "targeted" use of force whatsoever may constitute a crime of violence. *Begay* treated depraved-heart murder, or reckless indifference, as the least culpable mental state within the ambit of malice aforethought. For reasons not articulated in the opinion, the panel disregarded the fourth mental state,[6] intent to commit a felony. *See Pineda-Doval*, 614 F.3d at 1038.

The least culpable conduct criminalized by felony murder does not involve the targeted use of force required for a crime of violence under *Borden*. In fact, an individual may be convicted for felony murder under § 1111 even if the

---

[6] "Malice aforethought" encompasses "four kinds of mental states: (1) intent to kill; (2) intent to do serious bodily injury; (3) depraved heart (i.e., reckless indifference); and (4) intent to commit a felony." *United States v. Pineda-Doval*, 614 F.3d at 1038.

resulting death is *entirely unforeseeable*.[7] Take for example a drug dealer who intentionally sells drugs unknowingly laced with a deadly chemical, resulting in the death of the buyer. Or an arsonist who sets an abandoned building on fire, resulting in the death of a responding firefighter. Or an individual who robs a bank, resulting in a customer's death by heart attack 15-20 minutes later. Under the *Begay* panel's reasoning these actors' conduct would sustain a conviction under § 1111, and therefore constitute categorical crimes of violence. However, these actors never targeted the victims with physical force, as required by the elements clause.

## V.

I agree with the majority that § 245 does not constitute a crime of violence; this holding is consistent with the Supreme Court's directive in *Borden*. I also believe the majority opinion cannot be reconciled with the en banc decision in *Begay*. It is not for me to say how this inconsistency should be resolved; however, it is my obligation to call attention to what I fear will precipitate confusion and disparate outcomes in future cases.

---

[7] *See People v. Dillon*, 34 Cal.3d 441, 477, 194 Cal.Rptr. 390, 668 P.2d 697 (1983) (holding that first-degree felony murder includes "a variety of unintended homicides resulting from reckless behavior, or ordinary negligence, or pure accident; it embraces both calculated conduct and acts committed in panic or rage, or under the dominion of mental illness, drugs, or alcohol; and it condemns alike consequences that are highly probable, conceivably possible, or wholly unforeseeable.").