No. 23-435

## IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

———————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

JESUS RAMIRO GOMEZ,

*Defendant-Appellant.*

———————————————

On Appeal from the United States District Court
for the Central District of California
(Decided Sept. 4, 2024—H.A. Thomas and Desai, Circuit Judges, and
Soto, District Judge)

———————————————

## BRIEF OF AMICI CURIAE NINTH CIRCUIT FEDERAL PUBLIC AND COMMUNITY DEFENDER OFFICES IN SUPPORT OF DEFENDANT-APPELLANT EN BANC

KASHA CASTILLO
Executive Director
KARA HARTZLER
Appellate Attorney
VINCENT BRUNKOW
Chief Appellate Attorney
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92102
(619) 234-8467

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................ii

STATEMENT OF INTEREST OF AMICI CURIAE AND AUTHORITY TO FILE ........iii

INTRODUCTION ........................................................................... 1

ARGUMENT ................................................................................ 3

I. Recent California cases confirm that § 245 does not require knowledge that force will be used "against another." .............................................................. 3

    A. In 2019, the California Supreme Court explained that "general intent" crimes like § 245 do not require knowledge that force will be used against another. ........................................................ 3

    B. California appellate courts apply § 245 to defendants who tried to avoid contact with the victim or were unaware of their presence. ................... 7

        1. Assault may occur even though a defendant tried to avoid contact with the victim ................ 7

        2. Assault may occur even though a defendant was not aware of the victim's presence. ............ 14

II. Under any standard of review, the error here requires remand for resentencing. ......................................... 17

    A. Under *Borden*, the error here was plain. .................. 18

    B. Non-precedential memorandum dispositions cannot overcome the plainness of California law. ....... 22

CONCLUSION ......................................................................... 26

i

## TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*Barrett v. Greenup,*
  679 F. App'x 525 (9th Cir. 2017) ................................... 10, 11

*Borden v. United States,*
  593 U.S. 420 (2021) ...................................................... *passim*

*Fernandez-Ruiz v. Gonzales,*
  466 F.3d 1121 (9th Cir. 2006) (en banc) .................................. 19, 20

*Hart v. Massanari,*
  266 F.3d 1155 (9th Cir. 2001) ........................................................ 24

*Johnson v. United States,*
  559 U.S. 133 (2010) ................................................................. 3

*Mathis v. United States,*
  579 U.S. 500 (2016) ............................................................... 25

*Miller v. Gammie,*
  335 F.3d 889 (9th Cir. 2003) (en banc) ............................. 2, 19, 20, 23

*Molina-Martinez v. United States,*
  578 U.S. 189 (2016) ............................................................. 20-21, 22

*Moncrieffe v. Holder,*
  569 U.S. 184 (2013) ................................................................. 7

*Puckett v. United States,*
  556 U.S. 129 (2009) ............................................................... 23

*Romero-Millan v. Barr,*
  958 F.3d 844 (9th Cir. 2020) ......................................................... 25

*Rosales-Mireles v. United States,*
  585 U.S. 129 (2018) ........................................................ 21, 22, 26

*United States v. Bain,*
  925 F.3d 1172 (9th Cir. 2019) ......................................................... 23

ii

*United States v. Baldon,*
    956 F.3d 1115 (9th Cir. 2020) ........................................... 9

*United States v. Castillo,*
    69 F.4th 648 (9th Cir. 2023) ........................................... 20

*United States v. Garcia-Lopez,*
    903 F.3d 887 (9th Cir. 2018) ..................................... 12, 20

*United States v. Gomez,*
    115 F.4th 987 (9th Cir. 2024) ..................................... 1, 13

*United States v. Grajeda,*
    581 F.3d 1186 (9th Cir. 2009) .................................. *passim*

*United States v. Heron-Salinas,*
    566 F.3d 898 (9th Cir. 2009) (per curiam) ..................... 4, 5

*United States v. Jimenez-Arzate,*
    781 F.3d 1062 (9th Cir. 2015) ............................... 4, 5, 19

*United States v. Lawrence,*
    905 F.3d 653 (9th Cir. 2018) ......................................... 25

*United States v. Lindsey,*
    634 F.3d 541 (9th Cir. 2011) ......................................... 20

*United States v. Olano,*
    507 U.S. 725 (1993) ............................................. *passim*

*United States v. Vasquez-Gonzalez,*
    901 F.3d 1060 (9th Cir. 2018) ..................................... 3, 5

*United States v. Wijegoonaratna,*
    922 F.3d 983 (9th Cir. 2019) ......................................... 23

**State Cases**

*In re L.J.,*
    72 Cal. App. 5th 37 (2021) ............................................. 8

*People v. Aznavoleh,*
    210 Cal. App. 4th 1181 (2012) ....................................... 13

iii

*People v. Baugh*,
   No. B265153, 2016 WL 5462832 ..................................................... 16

*People v. Brown*,
   No. B291376, 2019 WL 3562037 ..................................................... 12

*People v. Calderon*,
   No. A153038, 2019 WL 1011109 ..................................................... 11

*People v. Camacho*,
   No. D074237, 2019 WL 3140022 ..................................................... 11

*People v. Cook*,
   No. F071479, 2016 WL 5118300 ................................................. 14, 18

*People v. Drennen*,
   No. F084428, 2023 WL 6937634 ................................................. 15, 19

*People v. Flanigan*,
   No. A158510, 2020 WL 5494926 ................................................. 15, 18

*People v. Fontenot*,
   8 Cal. 5th 57 (2019) ...................................................... 5, 6, 7

*People v. Garcia*,
   No. F078120, 2021 WL 1134597 ..................................................... 12

*People v. Jacobs*,
   No. F076948, 2020 WL 6343216 ..................................................... 16

*People v. Jordan*,
   No. D064998, 2015 WL 1850870 ..................................................... 12

*People v. Lathus*,
   35 Cal. App. 3d 466 (1973) ..................................................... 16

*People v. Lincoln*,
   No. A168661, 2024 WL 5182309 ..................................................... 10

*People v. Lopez*,
   No. H039476, 2016 WL 2643108 ..................................................... 16

*People v. Montes*,
   No. B254824, 2015 WL 2438891 ..................................................... 16

*People v. Rocha*,
  3 Cal. 3d 893 (1971) ..................................................................... 4

*People v. Sewell*,
  No. D080594, 2023 WL 6982260 ................................................... 10

*People v. Tucker*,
  No. B276128, 2018 WL 636218 .................................................. 9, 16

*People v. Williams*,
  26 Cal. 4th 779 (2001) ........................................................ *passim*

**Federal Statutes**

42 U.S.C. § 1983 ....................................................................... 10

**State Statutes**

California Penal Code § 245 ....................................................... *passim*

**Federal Rules**

9th Cir. Rule 36-3 ..................................................................... 24

9th Cir. Rule 52(b) ............................................................... 22, 26

**Other Authorities**

Jeffrey M. Anderson, *Right for Any Reason*,
  44 Cardozo L. Rev. 1015 (2023) ................................................ 17

*Why We Don't Allow Citation to Unpublished Dispositions*,"
  20 Cal. Law. 43 (June 2000) ....................................................... 24

### STATEMENT OF INTEREST OF AMICI CURIAE AND AUTHORITY TO FILE

The Ninth Circuit Federal Public and Community Defenders represent indigent defendants in this Court. As the institutional defenders for indigent federal defendants, these organizations have an interest in all federal criminal law issues.

In the federal sentencing context, a defendant's prior conviction for assault under California Penal Code § 245 may trigger a significantly higher recommended range under the U.S. Sentencing Guidelines, a 15-year mandatory minimum sentence under the Armed Career Criminal Act, and other serious consequences. Amici frequently challenge such sentencing enhancements in district court and on appeal, including in cases where a defendant's counsel did not object to the enhancement below. Amici thus have a strong interest in the questions of whether a § 245 conviction qualifies as a "crime of violence" and the standard of review this Court applies to unpreserved sentencing enhancement objections.

Amici affirm that no publicly held corporation owns stock in them. No counsel for either party authored this brief in whole or in part. And no party, party's counsel, person, or other entity contributed money to preparing this brief.

Both parties have consented to this brief's filing.

vi

## INTRODUCTION

Amici agree with the analysis of the three-judge panel's decision in *United States v. Gomez*, 115 F.4th 987 (9th Cir. 2024), as well as Mr. Gomez's arguments, and do not repeat them here. Amici instead write for two reasons. First, Amici seek to alert this Court to recent California cases further confirming that California Penal Code § 245 cannot constitute a "crime of violence" after the Supreme Court's decision in *Borden v. United States*, 593 U.S. 420 (2021). Second, while Amici urge this Court to maintain the longstanding "pure question of law" exception to plain error review, Amici explain why these California cases—rather than unpublished federal court decisions—control the question of whether error was plain under the second step of *United States v. Olano*, 507 U.S. 725, 734 (1993).

First, in *Borden*, the Supreme Court held that the phrase "'against another,' when modifying the 'use of force'" language in the crime of violence definition, "demands that the perpetrator *direct his action at, or target*, another individual." 593 U.S. at 429 (emphasis added). At a minimum, *Borden* held, this requires "knowing behavior." *Id.* at 432. To aid this Court in determining whether California assault under § 245 requires a defendant to act knowingly and "direct his action at, or target," another, *id.* at 429, this brief discusses a recent California Supreme Court case confirming the requisite mens rea for California "general intent" crimes, such as § 245. It also identifies numerous

1

California appellate decisions from the last decade where it is undisputed that a defendant was actively trying to *avoid* contact with the victim or was *unaware* of the victim's presence. In fact, several California cases match the precise hypothetical *Borden* held was *not* a crime of violence. Because § 245 does not require knowledge that force will be used "against another," it cannot satisfy *Borden*'s definition of a crime of violence. 593 U.S. at 429.

Second, should this Court upend decades of settled law and decline to apply de novo review to the pure question of law presented here, Amici urge the Court to rely on California cases—rather than unpublished federal court decisions—to determine whether error was plain under the second step of *Olano*. Here, the error was plain because *Borden* explained that a driver who hits a pedestrian he never saw lacks the necessary mens rea for a crime of violence, and California routinely convicts drivers of precisely such conduct under § 245. *Borden* is also "clearly irreconcilable" with this Court's prior precedent on § 245 under *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc), which independently satisfies step two of the plain error analysis. Contrary to the government's arguments, non-precedential memorandum dispositions cannot overcome the clarity of California state law and have no role to play in the plain error analysis.

Amici thus urge this Court to hold that § 245 is not a crime of violence under any standard of review.

2

ARGUMENT

**I.    Recent California cases confirm that § 245 does not require knowledge that force will be used "against another."**

In determining whether California assault under § 245 requires knowledge that force will be used "against another," *Borden*, 593 U.S. at 429, this Court is "bound by" California state courts' "determination of the elements" of the offense, *Johnson v. United States*, 559 U.S. 133, 138 (2010). Yet this Court's prior opinions addressing § 245 have only discussed a handful of state cases—all of which are now over a dozen years old.[1]

To provide an updated and comprehensive survey of California law, Amici reviewed all cases between January 1, 2015, and May 14, 2025, that cite *People v. Williams*, 26 Cal. 4th 779 (2001), the seminal California Supreme Court case on § 245 assault. As shown below, many of these cases confirm that California continues to apply § 245 to defendants who lack knowledge that force will be used "against another." *Borden*, 593 U.S. at 429.

**A.    In 2019, the California Supreme Court explained that "general intent" crimes like § 245 do not require knowledge that force will be used against another.**

Because this Court is "bound by" California's interpretation of § 245, *Johnson*, 559 U.S. at 138, it has long relied on *Williams*, 26 Cal.

---

[1] *See United States v. Vasquez-Gonzalez, 901 F.3d* 1060, 1067, 1067 n.4, 6 (9th Cir. 2018) (citing three cases, the most recent from

3

4th 779, a California Supreme Court case defining the mental state for assault, to determine whether § 245 is a crime of violence. *See United States v. Grajeda*, 581 F.3d 1186, 1193–96 (9th Cir. 2009). *Grajeda* noted that "some of the *Williams* language" suggested that § 245 "requires merely criminally negligent conduct." *Id.* at 1194. For instance, *Williams* required knowledge of facts that would lead a "reasonable person to realize" that a battery would occur. *Id.* (quoting *Williams*, 26 Cal. 4th at 788). In fact, a defendant "need not be subjectively aware of the risk that a battery might occur" and may "honestly believe[ ]" that it would *not* occur. *Id.* at 1194–95 (quoting *Williams*, 26 Cal. 4th at 788, 788 n.3).

But *Grajeda* also claimed that *Williams* contained some language "suggest[ing] that the use of force must be intentional." *Id.* at 1195. Specifically, *Grajeda* recognized that California courts consider § 245 assault a "general intent crime." *Id.* at 1193 (quoting *People v. Rocha*, 3 Cal. 3d 893, 898 (1971)); *see also Williams*, 26 Cal. 4th at 788 ("Assault is still a general intent crime."). But as *Grajeda* pointed out, the California Supreme Court has said that it "remains to define what that intent is." *Grajeda*, 581 F.3d at 1193 (quoting *Rocha*, 3 Cal. 3d at 899).

---

2008); *United States v. Jimenez-Arzate, 781 F.3d* 1062, 1064 (9th Cir. 2015) (citing two cases, the most recent from 2012); *United States v. Grajeda, 581 F.3d* 1186, 1193–95 (9th Cir. 2009) (citing five cases, the most recent from 2008); *United States v. Heron-Salinas, 566 F.3d* 898, 899 (9th Cir. 2009) (citing one case from 2001).

4

In the end, *Grajeda* did not resolve whether a California "general intent" crime such as § 245 had the necessary mens rea to be a crime of violence. Instead, it simply followed a two-page per curiam decision that also selectively quoted *Williams* and did not grapple with California's "general intent" definition. *Id.* at 1195–96 (citing *United States v. Heron-Salinas*, 566 F.3d 898, 899 (9th Cir. 2009) (per curiam)). Nor did either of this Court's two subsequent opinions on § 245 examine California's "general intent" definition. They merely repeated specific "language from *Williams*" that is "quoted in *Grajeda*." *United States v. Jimenez-Arzate*, 781 F.3d 1062, 1065 (9th Cir. 2015); *see also United States v. Vasquez-Gonzalez*, 901 F.3d 1060, 1066–68 (9th Cir. 2018) (relying on *Grajeda* and its characterization of *Williams*).

But in 2019, a year after *Vasquez-Gonzalez*, the California Supreme Court clarified the mental state required for a California "general intent" crime. *See People v. Fontenot*, 8 Cal. 5th 57 (2019). In a kidnapping case, *Fontenot* noted that the distinction between specific and general intent is "meaningful" despite being "difficult to define and apply." *Id.* at 66. Citing *Williams*, the California Supreme Court "reiterated" that the distinction between general and specific intent crimes is "between (i) merely committing a physical act intentionally and (ii) engaging in goal-oriented, purposive thinking." *Id.* at 66–67 (citing *Williams*, 26 Cal. 4th at 786). Citing *Williams* again, *Fontenot* then explained that the mens rea for a California "general intent" crime

5

is "a *mere intent to commit the physical acts* constituting the completed crime." *Id.* at 67 (citing *Williams*, 26 Cal. 4th at 786) (emphasis added).

*Fontenot* thus confirmed that a California "general intent" crime requires scienter only as to the person's decision to "commit the physical acts" necessary for the completed crime, *id.* at 66–67—not whether the person knowingly "direct[ed] his action at, or target[ed], another individual," *Borden*, 593 U.S. at 429. This is consistent with the California model criminal jury instruction for § 245, which states that a person acts "willfully" when they commit a physical act "willingly or on purpose." CALCRIM No. 875 (last revised Mar. 2022).[2] The instruction adds that a person need not "intend to break the law, hurt someone else, or gain any advantage." *Id*. The instruction also expressly provides that the state is "not required to prove that the defendant actually intended to use force against someone when (he/she) acted." *Id*. So not only does *Fontenot* provide the most recent California Supreme Court authority defining a California "general intent" crime, its repeated citations to *Williams* reinforce CALCRIM No. 875 and show that its "general intent" definition applies to § 245.

Because the California Supreme Court has resolved that a California "general intent" crime requires only an intent to "commit the

---

[2] *See* Judicial Council of California Advisory Committee on Criminal Jury Instructions, California Criminal Jury Instructions, CALCRIM, (2025), *available at* https://courts.ca.gov/advisory-body/criminal-jury-instructions-advisory-committee.

physical acts" of a crime, *Fontenot*, 8 Cal. 5th at 66–67—rather than knowledge that those acts will be directed "against another," *Borden*, 593 U.S. at 429—§ 245 is not a crime of violence.

### B. California appellate courts apply § 245 to defendants who tried to avoid contact with the victim or were unaware of their presence.

Though *Fontenot*'s definition of a California "general intent" crime resolves this question, recent California appellate court decisions also demonstrate that "the least of the acts criminalized" by § 245 do not constitute a crime of violence. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (quotations and alterations omitted). Decisions from the last decade show that California courts routinely apply *Williams* to convict individuals of assault who did not know that force would be used "against another," *Borden*, 593 U.S. at 429—either because the accused was trying to avoid contact with the victim or was unaware of the victim's presence.

### 1. Assault may occur even though a defendant tried to avoid contact with the victim.

Traffic accidents provide a common example of § 245's overbreadth. California courts have upheld numerous assault convictions in which it was undisputed that the driver lacked knowledge of an impending battery because they subjectively believed they could avoid a collision.

The best example is *In re L.J.*, 72 Cal. App. 5th 37 (2021). There, three police cars had cornered a minor driving a Pontiac on a dead-end street. *See id.* at 42. There was "sufficient space for the Pontiac to drive past and get around the police vehicles without hitting or interfering with them." *Id.* Driving 10 to 15 miles an hour, the minor "tr[ied] to avoid hitting [the police cars] head on" but ended up sideswiping all three and hitting a vehicle door as an officer opened it. *Id.*

The court found that the "low speed of the Pontiac," combined with the fact that the minor did not hit the police cars head on, indicated that "the minor was trying to get past the police vehicles *rather than targeting them*." *Id.* at 44 (emphasis added). "[C]onsidered in light of the minor's youth," the court held that "the assaults reflect a clumsy and ill-advised attempt to escape the blockade at the end of the dead-end street, rather than an intent to injure the officers." *Id.* Nevertheless, this mens rea satisfied § 245, although the court stayed the minor's punishment for a separate charge of reckless evasion of an officer because "both the evasion and the assaults had the single objective of *eluding* the police." *Id.* (emphasis added).

*L.J.* shows that a person may be convicted of § 245 even though the factfinder concludes that the defendant was attempting to *avoid* contact with the victim, rather than "targeting" them. *Id.* So long as a "reasonable person" would realize that a battery would occur, the mens rea of *Williams* is satisfied—even though the defendant himself was not

8

"subjectively aware of the risk that a battery might occur" and "honestly believe[d]" it would not. *Williams*, 26 Cal. 4th at 788, 788 n.3. This does not satisfy *Borden*, which "demands that the perpetrator direct his action at, or target, another individual." 593 U.S. at 429.

Other California cases provide similar examples. In *People v. Tucker*, No. B276128, 2018 WL 636218, *2 (Cal. Ct. App. Jan. 31, 2018) (unpublished), a defendant drove directly toward a police officer, forcing the officer to step out of the vehicle's path.[3] The court found that the defendant had the "requisite state of mind" to commit assault "regardless of whether appellant intended to hit [the officer] or believed he could escape arrest by maneuvering around him." *Id.* at *7. The court explained that because assault does not require "a subjective awareness of the risk that a battery might occur," a defendant's guilt "does not hinge on the defendant's own subjective assessment of the likelihood of a battery." *Id.* (citing *Williams*, 26 Cal. 4th at 782–83, 788). So a defendant who "honestly believes that his act was not likely to result in a battery" could be convicted so long as a "reasonable person"

---

[3] When determining the scope of conduct criminalized by a California statute under the categorical approach, this Court considers unpublished court cases "to show that the state has applied the statute in a non-generic manner." *United States v. Baldon*, 956 F.3d 1115, 1125 (9th Cir. 2020). Relying on unpublished cases in this context is appropriate to discern the "least serious conduct [§ 245] covers." *Borden*, 593 U.S. at 441.

would believe a battery was likely. *Id.* (quoting *Williams*, 26 Cal. 4th at 797 n.3).

In *People v. Sewell*, No. D080594, 2023 WL 6982260, *1–2 (Cal. Ct. App. Oct. 24, 2023) (unpublished), a defendant "evaded" a police roadblock by driving onto a sidewalk, "striking the bumper of a news van and missing the pedestrians who ran away from the path of his oncoming car." The defendant contended that there was insufficient evidence of mens rea for an assault, arguing that "there is no evidence he was aiming for anyone" or "intended to smash his car into anyone" and that he did not "strike any of the pedestrians" in his path. *Id.* at *4. The court upheld the conviction, relying on *Williams* to explain that assault does not "require proof he intended to use force or cause injury to anyone." *Id.* at *3–4. *See also People v. Lincoln*, No. A168661, 2024 WL 5182309, *2 (Cal. Ct. App. Dec. 19, 2024) (unpublished) ("The evidence that [the defendant] swerved to avoid [the victim], even if credited by the jury, does not alter this analysis.").

This Court has interpreted the mens rea for California assault similarly in the context of a challenge to an unlawful arrest under 42 U.S.C. § 1983. *See Barrett v. Greenup*, 679 F. App'x 525 (9th Cir. 2017) (unpublished). In *Barrett*, a parking officer at a university who observed a driver unlawfully park in handicap spot stepped behind the car to record its license plate number so he could issue a citation. *Id*. The driver asked the officer to "move out of the way" so he could back out of

10

the spot. *Id*. at 526. After the officer "stepped off to the right side of the car," the driver "continued to back out" but ran over the officer's foot. *Id*. Relying on *Williams*, this Court found the officer had probable cause to arrest the driver for a § 245 assault because the driver committed an "intentional act" by "volitionally revers[ing] his car" when he was "aware of [the officer's] presence in the vicinity." *Id*. So even though the driver's request for the officer to move showed he was trying to *avoid* hitting the officer, the mens rea still satisfied *Williams*.

California courts similarly uphold § 245 convictions of individuals who use weapons without knowing they will strike the victim. For instance, in *People v. Camacho*, No. D074237, 2019 WL 3140022, *3 (Cal. Ct. App. July 16, 2019) (unpublished), the defendant threw bricks through the windows of an apartment, knowing the victim was inside. Relying on *Williams*, the court found "ample evidence of the required mental state" for assault, explaining that it "does not matter that [the defendant] did not know exactly where [the victim] was inside the apartment" because he was "not specifically aiming" at the victim. *Id*. In *People v. Calderon*, No. A153038, 2019 WL 1011109, *1 (Cal. Ct. App. Mar. 4, 2019) (unpublished), a California court also upheld a conviction where the defendant held a knife near a victim's face and there was "evidence that the victim was cut by accident." The court nevertheless found the defendant's subjective knowledge "irrelevant" to the mens rea inquiry, stating that "[t]he issue is not whether *he* was aware of the

11

degree of risk of harm involved in his act, the issue is whether a *reasonable person* would be aware of the risk based on the facts known to [the defendant]." *Id.* at *5–6 (emphasis in original).

California has also upheld assault convictions where the defendant deliberately fired a gun *away* from the victim. In *People v. Jordan*, No. D064998, 2015 WL 1850870, *5 (Cal. Ct. App. Apr. 22, 2015) (unpublished), the defendant "fired a single shot towards the ground" to try to stop a fight, and "no one saw him aim the gun at any person." Nevertheless, the court relied on *Williams* to find that a "reasonable person" would know that there were "hard surfaces that could easily cause the bullet to ricochet and hit someone." *Id.* at *6. Similarly, in *People v. Brown*, No. B291376, 2019 WL 3562037, *2–3 (Cal. Ct. App. Aug. 6, 2019) (unpublished), the court relied on *Williams* to find the required mental state where the defendant "fired shots at the ground, and not directly at" the victim. And in *People v. Garcia*, No. F078120, 2021 WL 1134597, *6 (Cal. Ct. App. Mar. 25, 2021) (unpublished), the court again relied on *Williams* to find the required mens rea for assault even though "[t]here was evidence defendant intentionally fired away from" the victim.

In its petition for rehearing, the government incorrectly assumes that a defendant who knows another person is in the vicinity of their intentional act necessarily knows a battery will occur. Government Petition for Rehearing En Banc ("Gov. Pet."), Dkt. 45, at 15–17. For

instance, the government criticizes the *Gomez* panel's reliance on *People v. Aznavoleh*, 210 Cal. App. 4th 1181 (2012), arguing that a driver who "intentionally ran a red light . . . even though he saw a car entering the intersection" engaged in "knowing, not reckless, behavior." *Id.* at 16.

But the government's argument incorrectly presumes that every § 245 defendant is a "reasonable person" who knows a collision will likely occur. Yet *Aznavoleh* explained that while a "reasonable person" must know a battery will occur, the defendant himself need not be "subjectively aware" of such risk—he "need only be aware of what he is doing." 210 Cal. App. 4th at 1190. So if the defendant in *Aznavoleh* saw another car entering the intersection but *unreasonably* believed that he could avoid a collision, he would still be guilty of assault under California law so long as a "reasonable person" would have expected the cars to collide. Indeed, that is precisely how California courts sustained the assault convictions in the cases discussed above.

This "reasonable person" standard is *not* sufficient under *Borden*. *Borden* requires that "the perpetrator" actually know he "direct[ed] his action at, or target[ed], another individual." 593 U.S. at 429. Thus, the mens rea of California assault is broader than the federal crime of violence definition.

13

### 2. Assault may occur even though a defendant was not aware of the victim's presence.

Even if the government *were* correct that knowledge of a victim's presence connotes knowledge of a likely battery, the mens rea of California assault would still exceed *Borden*. That is because, as the government admits, a person who "decides to run a red light, and hits a pedestrian whom he did not see," acts with a mens rea of recklessness as defined by *Borden*. Gov. Pet., Dkt. 45, at 16 (quoting *Borden*, 593 U.S. at 432). But as recent cases show, California routinely upholds assault convictions of defendants who were *not* aware of the victim's presence.

Again, the most common examples occur in traffic accidents. In *People v. Cook*, No. F071479, 2016 WL 5118300, *2 (Cal. Ct. App. Sept. 21, 2016) (unpublished), a driver attempted to evade a police vehicle by driving down an embankment, nearly hitting a jogger in the process. The jogger testified that she "did not think the driver of the pickup saw her or tried to hit her" because he "never looked at her or made eye contact with her." *Id*. The driver argued that he "could not have had the required mental state to commit an assault with a deadly weapon if he neither saw nor intended to hit [the jogger]." *Id*. The court "accept[ed] for the purposes of this argument" that the driver did not see the jogger. *Id*. at *4. Nevertheless, the court relied on *Williams* to find sufficient evidence of the required mental state, holding that "[w]hether [the

14

driver] subjectively was aware of the risk a battery might occur is *irrelevant*, as is the assertion that [he] did not see [the victim] jogging down the roadway." *Id.* (emphasis added).

The same occurred in *People v. Flanigan*, No. A158510, 2020 WL 5494926, *2 (Cal. Ct. App. Sept. 11, 2020) (unpublished). There, the defendant rapidly drove out of a parking garage without stopping and hit a police officer who was "riding his bicycle the wrong way" down a one-way street. The defendant argued that he "lacked the general criminal intent required to prove assault" because he "did not know [the officer] was present when he collided with him." *Id.* at *4. The court "disagree[d]," finding sufficient evidence of an assault mens rea because "[i]t does not matter that appellant might not have been specifically aware of [the officer's] presence before they collided." *Id.*

Another example is *People v. Drennen*, No. F084428, 2023 WL 6937634, *3 (Cal. Ct. App. Oct. 20, 2023) (unpublished), where a defendant backed into an occupied police car that was parked behind him. The defendant argued that "no one saw him look behind him as he reversed his car," so there was "no evidence he knew [the officer] was located in his car's path." *Id.* at *9. But the court held it did not matter "whether defendant was actually aware [the officer] or anyone else was located behind his car when he reversed it." *Id.* Because it was "foreseeable" to a reasonable person that "[p]eople and other cars" would be in a "busy parking lot in the middle of the day," the court

15

relied on *Williams* to conclude that the defendant's lack of "subjective awareness" was "irrelevant." *Id.* at *10.

California courts also uphold assault convictions where a defendant fired a gun through a wall,[4] into a car,[5] or through a fence[6] *without* knowledge that the victim was on the other side. As one judge explained, this reflects California courts' refusal to allow defendants to "escape the consequences" of dangerous acts by making a "bald assertion" that they were not aware of another's presence. *People v. Lathus*, 35 Cal. App. 3d 466, 470 (1973). But California's decision to define its assault mens rea broadly to protect its citizenry does not erase the inevitable consequences of that decision—that it creates a mismatch with a higher standard necessary to impose a federal sentencing enhancement for having been convicted of a crime of violence.

\* \* \*

As these cases show, California courts regularly affirm § 245 convictions when a defendant either tried to avoid using force against

---

[4] *People v. Baugh*, No. B265153, 2016 WL 5462832, *2–3 (Cal. Ct. App. Sept. 29, 2016) (unpublished); *People v. Lopez*, No. H039476, 2016 WL 2643108, *14–15 (Cal. Ct. App. May 10, 2016) (unpublished).

[5] *People v. Laughlin*, No. F086433, No. 2025 WL 24346, *7 (Cal. Ct. App. Jan. 2, 2025) (unpublished); *People v. Montes*, No. B254824, 2015 WL 2438891, *3 (Cal. Ct. App. May 21, 2015) (unpublished).

[6] *People v. Jacobs*, No. F076948, 2020 WL 6343216, *10–11 (Cal. Ct. App. Oct. 29, 2020) (unpublished).

16

another or did not know the victim was present. Thus, § 245 does not require knowledge that force will be used "against another" and lacks the necessary mens rea to be a crime of violence under *Borden*, 593 U.S. at 429.

## II. Under any standard of review, the error here requires remand for resentencing.

Like Mr. Gomez, Amici urge this Court to affirm its "pure question of law" approach. Defendant's Response to Petition for Rehearing En Banc ("Gomez Response"), Dkt. 49, at 12–18. As one scholar has explained, "[a]n unpreserved argument that presents a pure question of law, with no need for further factual development, may be decided by the court of appeals without significant harm to the 'review, not first view' principle." Jeffrey M. Anderson, *Right for Any Reason*, 44 Cardozo L. Rev. 1015, 1070 (2023).

But even if this Court were to overrule its precedent, the error here would still be "plain" under step two of *Olano*, 507 U.S. at 734. Not only do the California cases discussed above match *Borden*'s example of conduct that is *not* a crime of violence, prior precedent that is clearly irreconcilable with an intervening Supreme Court case also establishes error that is plain. Thus, this Court should reject the government's invitation to rely on unpublished memorandum dispositions from this Court, which offer limited assistance in determining the elements of a state crime.

17

### A. Under *Borden*, the error here was plain.

The first two steps of *Olano* require courts to decide 1) whether there was error and 2) whether that error was "plain." *Olano*, 507 U.S. at 733–34. "Plain" error is error that is "clear" or "obvious." *Id.* at 734. To conclude the error here was plain, this Court need look no further than *Borden*'s hypothetical and the § 245 convictions that match it.

In describing conduct that would *not* satisfy the requisite mens rea for a crime of violence, *Borden* imagined a driver who is late to work, "decides to run a red light, and hits a pedestrian *whom he did not see*." 593 U.S. at 432 (emphasis added). Because this driver's conduct was "not opposed to or directed at another," *Borden* explained that the driver had "not used force 'against' another person in the targeted way th[e] [crime of violence] clause requires." *Id.*

But hitting a pedestrian the driver "did not see" is precisely what occurred in several of the California cases described above. In *Cook*, 2016 WL 5118300 at *4, the California court "accept[ed] for the purposes of this argument" that a driver "*did not see*" the jogger he hit, but explained that this fact was legally "irrelevant" to the mens rea of § 245. (Emphasis added). The same occurred in *Flanigan*, 2020 WL 5494926 at *4, where a court held that a defendant who hit a victim while leaving a parking garage had the necessary mens rea for § 245 because "[i]t does not matter that appellant *might not have been specifically aware* of [the victim's] presence before they collided."

18

(Emphasis added). And the same was true in *Drennen*, 2023 WL 6937634 at *9–*10, where it was "irrelevant" whether the defendant was "*actually aware* [the victim] or anyone else was located behind his car when he reversed it." (Emphasis added). Because these cases are indistinguishable from *Borden*'s holding that a driver who "did not see" a pedestrian lacks the necessary mens rea for a crime of violence, 593 U.S. at 432, this symmetry alone shows the error was plain.

Moreover, the fact that *Borden* is "clearly irreconcilable" with *Grajeda* and its progeny provides an independent basis to conclude that the error is plain. *See Miller*, 335 F.3d at 900. *Grajeda* held that § 245 was a crime of violence even though it requires only that a "reasonable person"—who need not be the defendant—know force was likely to result. 581 F.3d at 1194 (quotations omitted); *see also Jimenez-Arzate*, 781 F.3d at 1065 (holding that § 245 is a crime of violence even though a person need not be "subjectively aware" force would be used against another). But this is "clearly irreconcilable" with *Borden*'s holding that hitting a pedestrian one "did not see" falls short of the necessary mens rea to be a crime of violence. 593 U.S. at 432; *Miller*, 335 F.3d at 900.[7]

---

[7] The government contends that *Borden* is not "'clearly irreconcilable' with this Court's precedent" because *Borden* "applied the very same [recklessness] definition" this Court previously adopted in *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (en banc). Gov. Pet. Dkt. 45 at 13–14. But *Fernandez-Ruiz* involved an Arizona statute with a different mens rea than § 245. The "clearly

19

Such "clearly irreconcilable" changes in law regularly qualify as plain error under step two of *Olano*. For instance, in *United States v. Garcia-Lopez*, 903 F.3d 887, 894 (9th Cir. 2018), an intervening Supreme Court decision meant that the error was "'clear' and 'obvious' such that the first two prongs of the [*Olano*] test are met." And in *United States v. Lindsey*, 634 F.3d 541, 550–51 (9th Cir. 2011), this Court held that an intervening Supreme Court case that was clearly irreconcilable with prior precedent meant that "the district court committed an error that was plain"; *see also United States v. Castillo*, 69 F.4th 648, 653 (9th Cir. 2023) (same). Because no meaningful distinction exists between precedent that is "clearly irreconcilable" under *Miller v. Gammie* and error that is "clear and obvious" under *Olano*, this provides an independent basis for finding the error here plain.

The plainness of this error is also apparent given that the Supreme Court has interpreted *Olano*'s plain error prongs more generously in the sentencing context. When applying the third *Olano* prong on substantial rights, for instance, the Supreme Court held that in "most cases," a person who establishes a Guidelines error will have "demonstrated a reasonable probability of a different outcome." *Molina-*

---

irreconcilable" comparison is between *Borden* and *Grajeda*—not *Borden* and *Fernandez-Ruiz*. *See Fernandez-Ruiz*, 466 F.3d at 1125 (analyzing Ariz. Rev. Stat. § 13-1203(A)(1)).

*Martinez v. United States*, 578 U.S. 189, 200 (2016). The Court rejected the government's argument that this would shift the burden to "prove the harmlessness" of every Guidelines error, explaining that it simply meant a defendant "can rely on" the error itself to meet the third prong. *Id.* at 203. So here, in an identical Guidelines context, a miscalculation of the Guidelines range deemed to be error at step one should also permit defendants to "rely on" that error in "most cases." *Id.* at 200.

The Supreme Court similarly rejected the Fifth Circuit's "unduly restrictive" approach to the fourth *Olano* prong of whether an error "seriously affects the fairness, integrity, or public reputation of judicial proceedings," holding that a Guidelines error will satisfy this prong "in the ordinary case." *Rosales-Mireles v. United States*, 585 U.S. 129, 132, 137 (2018). In doing so, the Supreme Court emphasized multiple benefits of applying the correct Guidelines range—the need to "provid[e] certainty and fairness in sentencing," "achiev[e] uniformity and proportionality," and "reflect the nature of the offense and criminal history of the defendant." *Id.* at 140. The Court also noted that application of an accurate Guidelines range is critical to the U.S. Sentencing Commission and the Bureau of Prisons, which "rel[y] on data developed during sentencing proceedings" to revise the Guidelines and designate prisoners. *Id.* at 141, 141 n.2. Given such considerations, the Supreme Court held that "[a] plain Guidelines error that affects a

defendant's substantial rights is precisely the type of error that ordinarily warrants relief under Rule 52(b)." *Id*. at 139.

Because a Guidelines error will satisfy *Olano*'s third prong in "most cases," *Molina-Martinez*, 578 U.S. at 200, and its fourth prong in the "ordinary case," it would make little sense to apply an "unduly restrictive" standard for the second prong and undermine the Supreme Court's holding that such Guidelines errors "ordinarily warrant[ ] relief." *Rosales-Mireles*, 585 U.S. at 132, 137, 139. And because remand for a Guidelines miscalculation is "far less burdensome than a retrial, or other jury proceedings," it "does not demand such a high degree of caution." *Id*. at 143. Moreover, allowing a miscalculated Guidelines range to control the ultimate sentence would undermine the benefits to both the defendant and government agencies that come from applying the correct Guidelines range. *See id*. at 140–41. Because a Guidelines miscalculation is "precisely the type of error that ordinarily warrants relief under Rule 52(b)," this Court should not apply an "unduly restrictive" standard to *Olano*'s second prong. *Id*. at 137, 139.

## B. Non-precedential memorandum dispositions cannot overcome the plainness of California law.

Though the error here was plain under *Olano* step two, the government urges this Court to rely on "unpublished opinions *post-Borden*" to conclude that the error was not "clear" or "obvious." Gov. Pet., Dkt. 45, at 10–11. But none of the cases the government cites for

22

this proposition actually relied on unpublished memorandum dispositions. Nor did they involve prior precedent that was "clearly irreconcilable" with new authority. *Miller*, 335 F.3d at 900.

In *United States v. Wijegoonaratna*, 922 F.3d 983, 991 (9th Cir. 2019), for instance, the alleged plain error did not result from a new Supreme Court decision. Rather, the Court found no error because the appellant had "cited no *controlling* authority" in his favor, and the language of the Sentencing Guidelines was expressly "[t]o the contrary." *Id.* (emphasis added). Similarly, the error in *United States v. Bain*, 925 F.3d 1172, 1177–78 (9th Cir. 2019), did not result from higher intervening authority—instead, it flowed from a *published* opinion issued sixteen years earlier. And in *Puckett v. United States*, 556 U.S. 129, 133 (2009), the Supreme Court did not even conduct a plain error analysis—it considered the separate issue of whether plain error review applied to breach of a plea agreement. None of these cases involved the use of unpublished memorandum dispositions or prior precedent that was "clearly irreconcilable" with a new Supreme Court decision.

Furthermore, the government admits that the "clearly irreconcilable" threshold is a "high standard." Gov. Pet., Dkt. 45 at 20–21. Yet it never explains how prior precedent that is "clearly irreconcilable" with *Borden* would not be "clear" and "obvious" under *Olano*, nor does it cite any authority distinguishing these standards. So if this Court determines that *Borden* is "clearly irreconcilable" with

23

*Grajeda* and its progeny, that determination necessarily controls the plain error analysis at step two—regardless of the existence of any memorandum dispositions.

Practical considerations also weigh against relying on non-precedential memorandum dispositions to claim an error is not plain. "An unpublished disposition is, more or less, a letter from the court to parties familiar with the facts" that is not "suitable for governing future cases." *Hart v. Massanari*, 266 F.3d 1155, 1178 (9th Cir. 2001); *see also* Circuit Rule 36-3 (stating that unpublished decisions are "not precedent"). As Judge Kozinski and Judge Reinhardt warned, "[t]rying to extract from memdispos a precedential value that we didn't put into them" could "damage the court in important and permanent ways." Kozinski, Alex, and Reinhardt, Stephen, "Please Don't Cite This! Why We Don't Allow Citation to Unpublished Dispositions," 20 Cal. Law. 43, 43–44 (June 2000). They explained that most unpublished decisions are "drafted by law clerks with relatively few edits from the judges" or "prepared by our central staff." *Id*. And while a panel of three judges may agree on an outcome, "they might not agree on the precise reasoning or the rule to be applied to future cases." *Id*. Accordingly, such unpublished decisions offer little (if any) assistance in the plain-error context.

This is particularly true when the alleged error turns on a question of *state* law. The question at the heart of every categorical

approach analysis is "whether the elements of the crime of conviction sufficiently match the elements of [the generic federal definition]." *Mathis v. United States*, 579 U.S. 500, 504 (2016). The elements of a state crime are usually apparent from looking at "state court decision[s]," "the statute on its face," and the applicable "jury instructions." *Mathis,* 579 U.S. at 518–19. In rare cases, discerning the elements of a state crime may be difficult, such as when this Court certifies a question to a state Supreme Court.[8] But any "indeterminacy" in the state crime's elements "should prove more the exception than the rule." *Mathis*, 579 U.S. at 519.

Here, the elements of § 245 contain no indeterminacy. California courts have upheld § 245 convictions where a driver did not see the victim—the precise conduct *Borden* held cannot be a crime of violence. *See supra* 13–15, 18–19. Other § 245 convictions have occurred when a defendant was actively trying to *avoid* contact with the victim, rather than "direct[ing] his action at, or target[ing], another individual." *Borden*, 593 U.S. at 429; *supra* 7–13.

Not only do these cases establish clear or obvious error, they confirm that *Borden* is clearly irreconcilable with *Grajeda* and its

---

[8] *See, e.g., United States v. Lawrence,* 905 F.3d 653, 656 (9th Cir. 2018) (certifying question on the elements of robbery to Oregon Supreme Court); *Romero-Millan v. Barr*, 958 F.3d 844 (9th Cir. 2020) (certifying question on the elements of drug possession to Arizona Supreme Court).

progeny, which independently satisfies *Olano*'s second prong. And because a Guidelines miscalculation is "precisely the type of error that ordinarily warrants relief under Rule 52(b)," *Rosales-Mireles*, 585 U.S. at 139, this Court should not allow the existence of non-precedential memorandum dispositions to overcome the clear and obvious conclusion that § 245 is not a crime of violence.

## CONCLUSION

For these reasons, Amici urge this Court to hold that California assault under § 245 is not a crime of violence, and, at a minimum, find plain error under step two of *Olano*.

Respectfully submitted,

DATED: May 19, 2025          *s/ Kara Hartzler*
                                          Kara Hartzler
                                          Vincent J. Brunkow
                                          Kasha Castillo
                                          Federal Defenders of San Diego, Inc.
                                          225 Broadway, Ste. 900
                                          San Diego, California 92101
                                          Kara_Hartzler@fd.org
                                          Vince_Brunkow@fd.org
                                          Kasha_Castillo@fd.org

                                          Attorneys for Amici

**ADDITIONAL COUNSEL**

Fidel Cassino-DuCloux
Federal Public Defender, District of Oregon
101 Southwest Main Street, Room 1700
Portland, OR 97204

Colin Fieman
Federal Public Defender, Western District of Washington
Westlake Center Office Tower
1601 Fifth Avenue, Suite 700
Seattle, WA 98101

Andrea George
Executive Director, Federal Defenders of Eastern Washington and
Idaho
601 West Riverside Avenue, Suite 900
Spokane, WA 99201

Rachel Julagay
Executive Director, Federal Defenders of Montana, Inc.
104 2nd Street South, Suite 301
Great Falls, MT 59401

Salina M. Kanai
Federal Public Defender, District of Hawaii
Prince Kuhio Federal Building
300 Ala Moana Boulevard, Suite 7104
Honolulu, HI 96850

Jodi Linker
Federal Public Defender, Northern District of California
450 Golden Gate Avenue
19th Floor, Room 19-6884
San Francisco, CA 94102

Leilani V. Lujan
Federal Public Defender, District of Guam and the Northern Mariana
Islands
First Hawaiian Bank Building
400 Route 8, Room 501
Mongmong, GU 96910

Jamie McGrady
Federal Public Defender, District of Alaska
188 W Northern Lights Blvd, Suite 700
Anchorage, AK 99503

Cuauhtemoc Ortega
Federal Public Defender, Central District of California
321 East 2nd Street
Los Angeles, California 90012

Nicole Owens
Executive Director, Federal Defender Services of Idaho
702 West Idaho Street, Suite 1000
Boise, ID 83702

Jon M. Sands
Federal Public Defender, District of Arizona
850 West Adams Street, Suite 201
Phoenix, AZ 85007

Rene L. Valladares
Federal Public Defender, District of Nevada
411 E. Bonneville Avenue
Las Vegas, NV 89101

Heather Williams
Federal Public Defender, Eastern District of California
801 I Street, 3rd Floor
Sacramento, CA 95814

## CERTIFICATE OF COMPLIANCE

This brief contains 6,540 words, excluding the items exempted by Fed. R. App. P. 32(f) and including words in photos. This brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). I certify that this brief complies with the word limit of 9th Cir. Rule 32-1.

Respectfully submitted,

DATED: May 19, 2025            *s/Kara Hartzler*
                              Kara Hartzler
                              Federal Defenders of San Diego, Inc.
                              225 Broadway, Suite 900
                              San Diego, California 92101
                              Kara_Hartzler@fd.org

                              Attorneys for Amici